# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CLERK'S CERTIFICATE AND APPEALS COVER SHEET

### ABBREVIATED ELECTRONIC RECORD

Case Caption:          United States of America v. Alex Levin

District Court Number:          15cr10271-WGY

Fee:    Paid?   Yes _____   No _____   Government filer  X    *In Forma Pauperis* Yes _____   No _____

| | | | |
|---|---|---|---|
| Motions Pending | Yes X  No _____ | Sealed documents | Yes X  No _____ |
| *If yes, document #* | 64 | *If yes, document #* | 5,43,59,64,65 |
| *Ex parte* documents | Yes X  No _____ | Transcripts | Yes X  No _____ |
| *If yes, document #* | 64,65 | *If yes, document #* | 54,72,77,78,80 |

Notice of Appeal filed by: Plaintiff/Petitioner  X    Defendant/Respondent _____   Other: _____

Appeal from:

#69 Memorandum and Order, #82 Amended Memorandum and Order, #88 Electronic Order

Other information:

        I, Robert M. Farrell, Clerk of the United States District Court for the District of Massachusetts, do hereby certify that the annexed electronic documents:

## #69, #82, #88, and #89

with the electronic docket sheet, constitute the abbreviated record on appeal in the above entitled case for the Notice of Appeal #  89    filed on May 17, 2016  .

        In testimony whereof, I hereunto set my hand and affix the seal of this Court on  May 18, 2016  .

**ROBERT M. FARRELL**
Clerk of Court

/s/Matthew A. Paine
Deputy Clerk

COURT OF APPEALS DOCKET NUMBER ASSIGNED: _____

**PLEASE RETURN TO THE USDC CLERK'S OFFICE**

APPEAL,CASREF,VICTIM

# United States District Court
## District of Massachusetts (Boston)
## CRIMINAL DOCKET FOR CASE #: 1:15-cr-10271-WGY-1

Case title: USA v. Levin                                   Date Filed: 09/17/2015
Magistrate judge case number: 1:15-mj-02192-MBB

---

Assigned to: Judge William G. Young
Referred to: Magistrate Judge Marianne
B. Bowler

**Defendant (1)**

**Alex Levin**                          represented by   **J. W. Carney , Jr.**
                                                         J. W. Carney, Jr. & Associates
                                                         20 Park Plaza
                                                         Suite 1405
                                                         Boston, MA 02116
                                                         617-933-0350
                                                         Fax: 617-338-5587
                                                         Email: jcarney@carneydefense.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Retained*

                                                         **Joshua Robert Hanye**
                                                         Federal Public Defender's Office
                                                         5th Floor
                                                         51 Sleeper Street
                                                         Boston, MA 02210
                                                         617-223-8061
                                                         Email: joshua_hanye@fd.org
                                                         *TERMINATED: 09/30/2015*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Public Defender or*
                                                         *Community Defender Appointment*

                                                         **Samir Zaganjori**
                                                         J.W. Carney, Jr. & Associates
                                                         20 Park Plaza
                                                         Boston, MA 02116
                                                         617-933-0350
                                                         Email: szaganjori@carneydefense.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

Designation: Retained

**Nathaniel Dolcort-Silver**
J. W. Carney, Jr. & Associates
20 Park Plaza
Suite 1405
Boston, MA 02116
617-933-0350
Email: nsilver@carneydefense.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18:2252A(a)(5)(B) and (b)(2)...POSSESSION OF CHILD PORNOGRAPHY (1) | |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| 18:2252A(a)(5)(B)- POSSESSION OF CHILD PORNOGRAPHY | |

---

**Plaintiff**

**USA**                    represented by    **David G. Tobin**
United States Attorneys Office
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3392
Fax: 617-748-3965
Email: David.Tobin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Jordi deLlano**

United States Attorney's Office MA
Suite 9200
1 Courthouse Way
Boston, MA 02210
(617) 748-3155
Email: jordi.de.llano.campos@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/12/2015 | 1 | COMPLAINT as to Alex Levin (1). (Attachments: # 1 JS45, # 2 Affidavit) (Moore, Kellyann) [1:15-mj-02192-MBB] (Entered: 08/12/2015) |
| 08/12/2015 | 3 | ELECTRONIC Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler:Initial Appearance as to Alex Levin held on 8/12/2015. Court advises the defendant of his rights and the charges. Government states the maximum penalties and moves for detention. Matter continued. Defendant remanded to the USMS. ( Detention Hearing set for 8/17/2015 03:15 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler.) (Attorneys present: Tobin, Hanye. )Court Reporter Name and Contact or digital recording information: Digital Recording - For transcripts or CDs contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Garvin, Brendan) [1:15-mj-02192-MBB] (Entered: 08/14/2015) |
| 08/13/2015 | 2 | ELECTRONIC NOTICE of Case Assignment as to Alex Levin; Magistrate Judge Marianne B. Bowler assigned to case. (Abaid, Kimberly) [1:15-mj-02192-MBB] (Entered: 08/13/2015) |
| 08/17/2015 | 4 | ELECTRONIC Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler:Detention Hearing as to Alex Levin held on 8/17/2015. Court reviews financial affidavit and appoints FPD provisionally. Government calls Michael Sullivan, cross, redirect, recross. Court hears argument. Court finds PC and matter is continued pending the completion of probation's investigation. Defendant remanded to the USMS. (Attorneys present: Tobin, Hanye. )Court Reporter Name and Contact or digital recording information: Digital Recording - For transcripts or CDs contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Garvin, Brendan) Modified on 8/19/2015 (Garvin, Brendan). [1:15-mj-02192-MBB] (Entered: 08/19/2015) |
| 08/20/2015 | 6 | ELECTRONIC NOTICE OF HEARING as to Alex Levin Detention Hearing set for 8/21/2015 02:30 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. (Garvin, Brendan) [1:15-mj-02192-MBB] (Entered: 08/20/2015) |
| 08/21/2015 | 7 | ELECTRONIC Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler:Detention Hearing as to Alex Levin held on 8/21/2015. Defendant calls Gregory Levin, cross. Defendant calls Gabrielle Levin, cross. Defendant ordered detained but counsel may return with a suitable package. Defendant remanded to the USMS. (Attorneys present: Tobin, Hanye. )Court Reporter Name and Contact or digital recording information: Digital Recording - For transcripts or CDs contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Garvin, Brendan) [1:15-mj-02192-MBB] |

| | | |
|---|---|---|
| | | (Entered: 08/24/2015) |
| 09/17/2015 | 8 | INDICTMENT as to Alex Levin (1) count(s) 1. (Attachments: # 1 JS45)(Alves-Baptista, Antonia) (Entered: 09/17/2015) |
| 09/17/2015 | 9 | ELECTRONIC NOTICE of Case Assignment as to Alex Levin; Judge William G. Young assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Marianne B. Bowler. (Abaid, Kimberly) (Entered: 09/17/2015) |
| 09/17/2015 | 10 | Judge William G. Young: ELECTRONIC ORDER entered. Order Referring Case to Magistrate Judge Marianne B. Bowler Reason for referral: Bail and Arraignment as to Alex Levin (Alves-Baptista, Antonia) (Entered: 09/17/2015) |
| 09/23/2015 | 11 | ELECTRONIC NOTICE OF HEARING as to Alex Levin Arraignment set for 10/1/2015 02:30 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. (Garvin, Brendan) (Entered: 09/23/2015) |
| 09/28/2015 | 12 | NOTICE OF ATTORNEY APPEARANCE: J. W. Carney, Jr appearing for Alex Levin. Type of Appearance: Retained. (Carney, J.) (Entered: 09/28/2015) |
| 09/28/2015 | 13 | NOTICE OF ATTORNEY APPEARANCE: Samir Zaganjori appearing for Alex Levin. Type of Appearance: Retained. (Zaganjori, Samir) (Entered: 09/28/2015) |
| 09/29/2015 | 14 | MOTION to Withdraw as Attorney by Joshua R. Hanye as to Alex Levin. (Hanye, Joshua) (Entered: 09/29/2015) |
| 09/29/2015 | 15 | ELECTRONIC NOTICE OF RESCHEDULING as to Alex Levin Arraignment set for 10/7/2015 02:00 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. (Garvin, Brendan) (Entered: 09/29/2015) |
| 09/30/2015 | 16 | MOTION Review Detention as to Alex Levin. (Carney, J.) (Entered: 09/30/2015) |
| 09/30/2015 | 17 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered granting 14 Motion to Withdraw as Attorney Attorney Joshua Robert Hanye terminated as to Alex Levin (1) (Garvin, Brendan) (Entered: 09/30/2015) |
| 10/07/2015 | 18 | ELECTRONIC Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler:Arraignment as to Alex Levin held on 10/7/2015. Government states the maximum penalties, anticipates a trial lasting three days and estimates calling six witnesses. Plea entered by Alex Levin Not Guilty on count one. Docket entry 16 is denied without prejudice to be renewed upon receipt of an updated report from PTS regarding the suitability of the new proposed third party custodian. Defendant remanded to the USMS. (Attorneys present: Tobin, Carney. )Court Reporter Name and Contact or digital recording information: Digital Recording - For transcripts or CDs contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Garvin, Brendan) (Entered: 10/09/2015) |
| 10/07/2015 | 19 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered denying 16 Motion as to Alex Levin without prejudice as stated on the record in open court. (Garvin, Brendan) (Entered: 10/09/2015) |
| 10/14/2015 | 20 | Case as to Alex Levin no longer referred to Magistrate Judge Marianne B. Bowler. (Gaudet, Jennifer) (Entered: 10/14/2015) |

| | | |
|---|---|---|
| 10/14/2015 | 21 | Judge William G. Young: ORDER entered. SCHEDULING ORDER as to Alex Levin. Initial Status Conference set for 11/18/2015 02:30 PM in Courtroom 18 before Judge William G. Young. (Gaudet, Jennifer) (Entered: 10/14/2015) |
| 11/02/2015 | 22 | MOTION Reconsider Review of Detention as to Alex Levin. (Carney, J.) (Entered: 11/02/2015) |
| 11/02/2015 | 23 | MOTION for Release from Custody *with Conditions* as to Alex Levin. (Carney, J.) (Entered: 11/02/2015) |
| 11/03/2015 | 24 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered granting 22 Motion as to Alex Levin (1) (Garvin, Brendan) (Entered: 11/03/2015) |
| 11/16/2015 | 25 | ELECTRONIC NOTICE OF RESCHEDULING as to Alex Levin. Initial Status Conference reset for 11/20/2015 02:00 PM in Courtroom 18 before Judge William G. Young. (Gaudet, Jennifer) (Entered: 11/16/2015) |
| 11/19/2015 | 26 | ELECTRONIC NOTICE OF HEARING as to Alex Levin Detention Hearing set for 12/3/2015 03:00 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. (Garvin, Brendan) (Entered: 11/19/2015) |
| 11/20/2015 | 27 | Electronic Clerk's Notes for proceedings held before Judge William G. Young: Initial Status Conference as to Alex Levin held on 11/20/2015. The Court sets a tentative trial date of April 4, 2016 at 9:00 AM. A final pretrial conference will be held on 3/7/2016 at 2:00 PM. An Order for Excludable Delay will enter from the date of indictment to trial date for the reasons stated on the record. Scheduling Order to issue. (Attorneys present: Ausa Tobin, Defense counsel Carney. )Court Reporter Name and Contact or digital recording information: Richard Romanow at bulldog@richromanow.com. (Gaudet, Jennifer) (Entered: 11/24/2015) |
| 11/24/2015 | 28 | Judge William G. Young: ORDER entered. SCHEDULING ORDER as to Alex Levin. Jury Trial set for 4/4/2016 09:00 AM in Courtroom 18 before Judge William G. Young. Final Pretrial Conference set for 3/7/2016 02:00 PM in Courtroom 18 before Judge William G. Young. (Gaudet, Jennifer) (Entered: 11/24/2015) |
| 12/02/2015 | 29 | Amended MOTION for Release from Custody *with Conditions* as to Alex Levin. (Carney, J.) (Entered: 12/02/2015) |
| 12/03/2015 | 30 | MOTION to Withdraw Document 23 MOTION for Release from Custody *with Conditions* as to Alex Levin. (Carney, J.) (Entered: 12/03/2015) |
| 12/03/2015 | 31 | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered withdrawing 23 Motion for Release from Custody as to Alex Levin (1) (Garvin, Brendan) (Entered: 12/03/2015) |
| 12/03/2015 | 32 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Detention Hearing as to Alex Levin held on 12/3/2015. Docket entry 23 is withdrawn on the record, docket entry 30 is allowed. Court hears argument on detention and orders production of further information from PTS. (Attorneys present: Tobin, Carney. )Court Reporter Name and Contact or digital recording information: Digital Recording - For transcripts or CDs contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Garvin, Brendan) |

|  |  | (Entered: 12/07/2015) |
|---|---|---|
| 01/27/2016 | 33 | Second MOTION for Release from Custody as to Alex Levin. (Carney, J.) (Entered: 01/27/2016) |
| 01/27/2016 | 34 | MOTION Review Proposed Residences as to Alex Levin. (Carney, J.) (Entered: 01/27/2016) |
| 01/28/2016 | 35 | Judge William G. Young: ELECTRONIC ORDER entered. Order Referring Case to Magistrate Judge Marianne B. Bowler as to Alex Levin 34 MOTION Review Proposed Residences , 33 Second MOTION for Release from Custody (Paine, Matthew) Motions referred to Marianne B. Bowler. (Entered: 01/28/2016) |
| 01/31/2016 | 36 | MOTION for Protective Order as to Alex Levin by USA. (Attachments: # 1 Text of Proposed Order)(Tobin, David) (Entered: 01/31/2016) |
| 02/01/2016 | 37 | Judge William G. Young: ELECTRONIC ORDER entered granting 36 Motion for Protective Order as to Alex Levin (1) (Paine, Matthew) (Entered: 02/01/2016) |
| 02/01/2016 | 38 | Judge William G. Young: ORDER entered. STIPULATED PROTECTIVE ORDER as to Alex Levin (Paine, Matthew) (Entered: 02/01/2016) |
| 02/03/2016 |  | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered granting 34 Motion as to Alex Levin (1). (Bowler, Marianne) (Entered: 02/03/2016) |
| 02/03/2016 |  | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered finding as moot 29 Motion for Release from Custody as to Alex Levin (1), in light of the amended conditions proposed in Docket Entry # 33. (Bowler, Marianne) (Entered: 02/03/2016) |
| 02/12/2016 | 39 | Assented to MOTION for Extension of Time to February 18, 2016 to File Motion to Suppress as to Alex Levin. (Carney, J.) (Entered: 02/12/2016) |
| 02/17/2016 | 40 | Judge William G. Young: ELECTRONIC ORDER entered granting 39 Assented to MOTION for Extension of Time to February 18, 2016 to File Motion to Suppress. (Paine, Matthew) (Entered: 02/17/2016) |
| 02/18/2016 | 41 | MOTION to Seal *Defendant's Motion to Suppress Evidence* as to Alex Levin. (Carney, J.) (Entered: 02/18/2016) |
| 02/19/2016 | 42 | Judge William G. Young: ELECTRONIC ORDER entered granting 41 MOTION to Seal Defendant's Motion to Suppress Evidence as to Alex Levin (1) (Paine, Matthew) (Entered: 02/19/2016) |
| 02/19/2016 | 44 | MOTION to Suppress as to Alex Levin. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Paine, Matthew) Modified on 4/1/2016 to unseal document pursuant to this Court's Order on 3/25/2016 (Gaudet, Jennifer). (Entered: 02/19/2016) |
| 02/25/2016 | 46 | MOTION to Expedite *Hearing* as to Alex Levin. (Carney, J.) (Entered: 02/25/2016) |

| 02/29/2016 | 47 | ELECTRONIC NOTICE OF HEARING as to Alex Levin Detention Hearing set for 3/14/2016 02:00 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. (Garvin, Brendan) (Entered: 02/29/2016) |
|---|---|---|
| 03/04/2016 | 48 | ELECTRONIC NOTICE OF RESCHEDULING as to Alex Levin Detention Hearing set for 3/7/2016 03:00 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. (Garvin, Brendan) (Entered: 03/04/2016) |
| 03/06/2016 | 49 | NOTICE OF ATTORNEY APPEARANCE Jordi deLlano appearing for USA. (deLlano, Jordi) (Entered: 03/06/2016) |
| 03/07/2016 | | Magistrate Judge Marianne B. Bowler: ELECTRONIC ORDER entered finding as moot 46 Motion to Expedite as to Alex Levin (1) and denying 33 Motion for Release from Custody as to Alex Levin (1) without prejudice to renew pending the proposal of a living situation and third party custodian which meet with the approval of Pretrial Services/Probation. (Bowler, Marianne) (Entered: 03/07/2016) |
| 03/07/2016 | 50 | Electronic Clerk's Notes for proceedings held before Judge William G. Young: Final Pretrial Conference as to Alex Levin held on 3/7/2016. Defendant is present. The Court sets a hearing on the pending motion to suppress for March 25, 2016 at 2:00 PM. The trial upon motion of the defendant is reset to 6/13/2016 at 9:00 AM. Time is excluded from time of indictment to the new trial date. The government shall disclose those documents as required by L.R. 116.1 on or before 5/16/2016 and disclose their witnesses in chief, etc. on or before 6/6/2016. The defendant shall file same on or before 6/8/2016. Any motions in limine, etc. shall be filed or on before 6/10/2016. Defendant is remanded to custody. (Jury Trial reset for 6/13/2016 09:00 AM in Courtroom 18 before Judge William G. Young.) (Motion Hearing set for 3/25/2016 02:00 PM in Courtroom 18 before Judge William G. Young.) (Attorneys present: Ausa Tobin, deLlano, Carney and Zaganjori for the defendant. )Court Reporter Name and Contact or digital recording information: Richard Romanow at bulldog@richromanow.com. (Gaudet, Jennifer) (Entered: 03/08/2016) |
| 03/07/2016 | 53 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Detention Hearing as to Alex Levin held on 3/7/2016. Court hears argument on the motion. Court finds docket entry 46 as moot and denies docket entry 33 without prejudice. Defendant remanded to the USMS.(Attorneys present: Tobin, Carney, Zaganjori. )Court Reporter Name and Contact or digital recording information: Digital Recording - For transcripts or CDs contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Garvin, Brendan) (Entered: 03/09/2016) |
| 03/08/2016 | 51 | Judge William G. Young: ELECTRONIC ORDER entered. ORDER ON EXCLUDABLE DELAY as to Alex Levin. Time excluded from 9/17/2015 until 6/13/2016. Reason for entry of order on excludable delay: 18 USC 3161(h)(7)(A) Interests of justice. (Gaudet, Jennifer) (Entered: 03/08/2016) |
| 03/08/2016 | 52 | Judge William G. Young: ORDER entered. PRETRIAL ORDER as to Alex Levin. (Gaudet, Jennifer) (Entered: 03/08/2016) |
| 03/14/2016 | 54 | Transcript of Detention Hearing as to Alex Levin held on March 7, 2016, before Magistrate Judge Marianne B. Bowler. Court Reporter: No Reporter Used. Digital Recording transcribed by Judy Bond. The Transcript may be purchased |

|  |  | through Judy Bond at bond.court.reporting@comcast.net, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 4/4/2016. Redacted Transcript Deadline set for 4/14/2016. Release of Transcript Restriction set for 6/13/2016. (Scalfani, Deborah) (Main Document 54 replaced on 3/15/2016) (Scalfani, Deborah). (Entered: 03/14/2016) |
|---|---|---|
| 03/14/2016 | 55 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 03/14/2016) |
| 03/18/2016 | 56 | MOTION for Release from Custody as to Alex Levin. (Attachments: # 1 Exhibit)(Carney, J.) (Entered: 03/18/2016) |
| 03/21/2016 | 57 | Case as to Alex Levin no longer referred to Magistrate Judge Marianne B. Bowler. (Gaudet, Jennifer) (Entered: 03/21/2016) |
| 03/21/2016 | 58 | ELECTRONIC NOTICE OF HEARING ON MOTION as to Alex Levin 56 MOTION for Release from Custody : Motion Hearing set for 3/25/2016 02:00 PM in Courtroom 18 before Judge William G. Young. (Gaudet, Jennifer) (Entered: 03/21/2016) |
| 03/21/2016 | 60 | RESPONSE to Motion by USA as to Alex Levin re 44 MOTION to Suppress (Attachments: # 1 Attachment - 1, # 2 Attachment - 2)(Paine, Matthew) Modified on 4/1/2016 to unseal document persuant to this Court's Order on 3/25/2016(Gaudet, Jennifer). (Entered: 03/22/2016) |
| 03/25/2016 | 62 | Electronic Clerk's Notes for proceedings held before Judge William G. Young: Motion Hearing as to Alex Levin held on 3/28/2016 re 56 MOTION for Release from Custody filed by Alex Levin. Court is in session. Defendant present. Court hears argument on motions. Government to provide requested warrant information to the court within one week. The Court hears arguments re 56 Motion for release from Custody, Appeal of Magistrate Judge's Order. The Court enters an Order denying 56 Motion. Defendant remanded to USMS custody. Court is in recess. (Attorneys present: Carney, Tobin, Dellano. )Court Reporter Name and Contact or digital recording information: Richard Romanow at bulldog@richromanow.com. (Hohler, Daniel) Modified on 3/28/2016 to reflect proper date of proceeding of 3/25/2016(Hohler, Daniel). Modified on 4/8/2016 to add ruling on the motion for release from custody 56 (Gaudet, Jennifer). (Entered: 03/28/2016) |
| 03/25/2016 |  | Document unsealed as to Alex Levin. 44 MOTION to Suppress, 60 Response to Motion (Gaudet, Jennifer) (Entered: 04/01/2016) |
| 04/01/2016 | 63 | RESPONSE TO COURT ORDER by USA as to Alex Levin (Tobin, David) (Entered: 04/01/2016) |
| 04/06/2016 | 66 | Third MOTION for Release from Custody *with Conditions* as to Alex Levin. (Carney, J.) (Entered: 04/06/2016) |
| 04/11/2016 | 67 | Judge William G. Young: ELECTRONIC ORDER entered. Order Referring Case to Magistrate Judge Marianne B. Bowler as to Alex Levin 66 Third MOTION for Release from Custody *with Conditions* (Paine, Matthew) Motions |

| | | referred to Marianne B. Bowler. (Entered: 04/11/2016) |
|---|---|---|
| 04/11/2016 | 68 | ELECTRONIC NOTICE OF HEARING ON MOTION as to Alex Levin 66 Third MOTION for Release from Custody *with Conditions* : Motion Hearing set for 4/21/2016 02:00 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler. (Garvin, Brendan) (Entered: 04/11/2016) |
| 04/20/2016 | 69 | Judge William G. Young: ORDER entered. MEMORANDUM AND ORDER "Based on the foregoing analysis, the Court concludes that the NIT Warrant was issued without jurisdiction and thus was void ab initio. It follows that the resulting search was conducted as though there were no warrant at all. Since warrantless searches are presumptively unreasonable, and the good-faith exception is inapplicable, the evidence must be excluded. Accordingly, Levins motion to suppress, ECF No. 44 , is GRANTED. SO ORDERED." (Sonnenberg, Elizabeth) (Entered: 04/20/2016) |
| 04/21/2016 | 70 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Detention Hearing as to Alex Levin held on 4/21/2016. Court hears argument on release, court continues the matter for PTS to investigate further. Defendant remanded to the USMS. ( Detention Hearing set for 4/26/2016 03:30 PM in Courtroom 25 before Magistrate Judge Marianne B. Bowler.) (Attorneys present: Tobin, Zaganjori. )Court Reporter Name and Contact or digital recording information: Digital Recording - For transcripts or CDs contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Garvin, Brendan) (Entered: 04/25/2016) |
| 04/25/2016 | 71 | NOTICE OF ATTORNEY APPEARANCE: Nathaniel Dolcort-Silver appearing for Alex Levin. Type of Appearance: Retained. (Dolcort-Silver, Nathaniel) (Entered: 04/25/2016) |
| 04/26/2016 | 72 | Transcript of Motion Hearing as to Alex Levin held on March 25, 2016, before Judge William G. Young. Court Reporter Name and Contact Information: Richard Romanow at bulldog@richromanow.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 5/17/2016. Redacted Transcript Deadline set for 5/27/2016. Release of Transcript Restriction set for 7/25/2016. (Scalfani, Deborah) (Entered: 04/26/2016) |
| 04/26/2016 | 73 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 04/26/2016) |
| 04/26/2016 | 74 | Electronic Clerk's Notes for proceedings held before Magistrate Judge Marianne B. Bowler: Detention Hearing as to Alex Levin held on 4/26/2016. Defendant is released on unsecured bond and conditions. Defendant remanded to the USMS to be released after processing. (Attorneys present: Silver, DeLlano. )Court Reporter Name and Contact or digital recording information: Digital Recording - For transcripts or CDs contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Garvin, Brendan) (Entered: 04/28/2016) |
| 04/26/2016 | 75 | Appearance Bond Entered as to Alex Levin (Garvin, Brendan) (Entered: 04/28/2016) |

| 04/26/2016 | 76 | Magistrate Judge Marianne B. Bowler: ORDER entered. ORDER Setting Conditions of Release as to Alex Levin. (Garvin, Brendan) (Entered: 04/28/2016) |
|---|---|---|
| 05/02/2016 | 77 | Transcript of Detention Hearing as to Alex Levin held on August 17, 2015, before Magistrate Judge Marianne B. Bowler. Court Reporter: No Reporter Used. Digital Recording transcribed by Judy Bond. The Transcript may be purchased through Judy Bond at bond.court.reporting@comcast.net, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 5/23/2016. Redacted Transcript Deadline set for 6/2/2016. Release of Transcript Restriction set for 8/1/2016. (Scalfani, Deborah) (Entered: 05/02/2016) |
| 05/02/2016 | 78 | Transcript of Detention Hearing as to Alex Levin held on August 21, 2015, before Magistrate Judge Marianne B. Bowler. Court Reporter: No Reporter Used. Digital Recording transcribed by Judy Bond. The Transcript may be purchased through Judy Bond at bond.court.reporting@comcast.net, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 5/23/2016. Redacted Transcript Deadline set for 6/2/2016. Release of Transcript Restriction set for 8/1/2016. (Scalfani, Deborah) (Entered: 05/02/2016) |
| 05/02/2016 | 79 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 05/02/2016) |
| 05/04/2016 | 80 | Transcript of Detention Hearing as to Alex Levin held on April 26, 2016, before Magistrate Judge Marianne B. Bowler. Court Reporter Name: No Reporter Used. Digital Recording transcribed by Judy Bond. The Transcript may be purchased through Judy Bond at bond.court.reporting@comcast.net, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 5/25/2016. Redacted Transcript Deadline set for 6/6/2016. Release of Transcript Restriction set for 8/2/2016. (Scalfani, Deborah) (Entered: 05/04/2016) |
| 05/04/2016 | 81 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 05/04/2016) |
| 05/05/2016 | 82 | Judge William G. Young: ORDER entered. AMENDED MEMORANDUM AND ORDER (Amendment found on page 19) (Sonnenberg, Elizabeth) (Entered: 05/05/2016) |
| 05/10/2016 | 83 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Alex Levin Appeal of order: 76 Order Setting Conditions of Release (Attachments: # 1 Exhibit Detention Hearing Transcript)(Carney, J.) (Entered: 05/10/2016) |
| 05/11/2016 | 84 | Opposition by USA as to Alex Levin re 66 Third MOTION for Release from Custody *with Conditions* (Tobin, David) (Entered: 05/11/2016) |

| 05/12/2016 | 85 | Judge William G. Young: ELECTRONIC ORDER entered: ALLOWED re 83 Appeal of Magistrate Judge Decision to District Court - Magistrate Judge Order filed by Alex Levin (Paine, Matthew) (Entered: 05/12/2016) |
| 05/13/2016 | 86 | MOTION for Reconsideration re 82 Memorandum & Order as to Alex Levin by USA. (Attachments: # 1 Exhibit Attachment A)(Tobin, David) (Entered: 05/13/2016) |
| 05/16/2016 | 87 | NOTICE by USA as to Alex Levin re 86 MOTION for Reconsideration re 82 Memorandum & Order (Tobin, David) (Entered: 05/16/2016) |
| 05/17/2016 | 88 | Judge William G. Young: ELECTRONIC ORDER entered denying 86 Motion for Reconsideration as to Alex Levin (1) (Paine, Matthew) (Entered: 05/17/2016) |
| 05/17/2016 | 89 | NOTICE OF APPEAL (Interlocutory re 69 MEMORANDUM AND ORDER, 82 AMENDED MEMORANDUM AND ORDER, 88 ELECTRONIC ORDER by USA as to Alex Levin Fee Status: US Government. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf.** US District Court Clerk to deliver official record to Court of Appeals by 6/6/2016. (Attachments: # 1 Certification)(deLlano, Jordi) (Modified on 5/17/2016 to Correct Docket Text and CM/ECF Document Link) (Paine, Matthew). (Entered: 05/17/2016) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
UNITED STATES OF AMERICA,       )
                                )
                                )
                                )
                                )         CRIMINAL ACTION
              v.                )         NO. 15-10271-WGY
                                )
ALEX LEVIN,                     )
                                )
              Defendant.        )
_____)
```

YOUNG, D.J.                                          April 20, 2016

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

Alex Levin is charged with possession of child pornography.
Compl. 1, ECF No. 1.  The government obtained evidence of
Levin's alleged crime in three steps.  First, it seized control
of a website that distributed the illicit material at issue
("Website A").  Next, it obtained a series of search warrants
that allowed the government to identify individual users who
were accessing content on Website A.  One of these warrants
involved the deployment of a Network Investigative Technique
(the "NIT Warrant").  Finally, the government searched[1] the
computers of certain of these individuals, including Levin.

---

[1] The government has waived any argument that its
investigative conduct here did not amount to a search by failing
to raise this argument in its memorandum.  The Court therefore
assumes that Levin had a reasonable expectation of privacy as to

Levin has moved to suppress the evidence obtained as a result of the issuance of the NIT Warrant, arguing that the NIT Warrant is void for want of jurisdiction under the Federal Magistrates Act, 28 U.S.C. § 636(a), and additionally that it violated Federal Rule of Criminal Procedure 41(b).  Def.'s Mot. Suppress Evidence ("Def.'s Mot.") 5-6, ECF No. 44.  The government contends that the NIT Warrant was valid and that, in any event, suppression is not an appropriate remedy on these facts.  Gov't's Resp. Def.'s Mot. Suppress ("Gov't's Resp.") 1, ECF No. 60.

## II.  FACTUAL BACKGROUND

This case involves a far-reaching and highly publicized investigation conducted by the Federal Bureau of Investigation in early 2015 to police child pornography.[2]  The investigation focused on Website A, which was accessible to users only through

---

the information obtained through the execution of the various warrants.

[2] For coverage of this investigation, see, for example, Ellen Nakashima, This is How the Government is Catching People Who Use Child Porn Sites, Wash. Post, Jan 21, 2016, https://www.washingtonpost.com/world/national-security/how-the-government-is-using-malware-to-ensnare-child-porn-users/2016/01/21/fb8ab5f8-bec0-11e5-83d4-42e3bceea902_story.html; Mary-Ann Russon, FBI Crack Tor and Catch 1,500 Visitors to Biggest Child Pornography Website on the Dark Web, Int'l Bus. Times, Jan. 6, 2016, http://www.ibtimes.co.uk/fbi-crack-tor-catch-1500-visitors-biggest-child-pornography-website-dark-web-1536417.

the "Tor" network -- software designed to preserve users'
anonymity by masking their IP addresses.[3]  See Def.'s Mot., Ex.
3, Aff. Supp. Application Search Warrant ("Aff. Supp. NIT
Warrant") 10-12, ECF No. 44-3.

   As an initial step in their investigation, FBI agents
seized control of Website A in February 2015.  See id. at 21-23.
Rather than immediately shutting it down, agents opted to run
the site out of a government facility in the Eastern District of
Virginia for two weeks in order to identify -- and ultimately,
to prosecute -- users of Website A.  See id. at 23.  To do this

---

[3] "Tor," which stands for "The Onion Router," is "the main
browser people use to access" the "Darknet" -- "a specific part
of th[e] hidden Web where you can operate in total anonymity."
Going Dark: The Internet Behind the Internet, Nat'l Pub. Radio,
May 25, 2014, http://www.npr.org/sections/alltechconsidered/
2014/05/25/315821415/going-dark-the-internet-behind-the-
internet.  Tor itself is lawful and has various legitimate uses.
See id.  Indeed, it was developed by the United States Navy,
which continues to use it "as a means of communicating with
spies and informants[.]"  John Lanchester, When Bitcoin Grows
Up, 28 London R. Books No. 8, http://www.lrb.co.uk/v38/n08/john-
lanchester/when-bitcoin-grows-up.  Tor has, however, produced
difficulties for law enforcement officials, "especially those
pursuing child pornography, Internet fraud and black markets,"
since it allows criminals to evade detection.  Martin Kaste,
When a Dark Web Volunteer Gets Raided by the Police, Nat'l Pub.
Radio, April 4, 2016, http://www.npr.org/sections/alltechconside
red/2016/04/04/4729 92023/when-a-dark-web-volunteer-gets-raided-
by-the-police; see also Lanchester, supra (describing Tor as
"the single most effective web tool for terrorists, criminals
and paedos" and noting that it "gives anonymity and geographical
unlocatability to all its users").  At the same time, its legal
users have raised concerns about the privacy implications of
government "sting" operations on the Tor network.  See Kaste,
supra.

required the deployment of certain investigative tools.  See id.
at 23-24.

　　To that end, the government sought and obtained a series of
warrants.  First, on February 20, 2015, the government procured
an order pursuant to Title III from a district judge in the
Eastern District of Virginia permitting the government to
intercept communications between Website A users.  Def.'s Mot.,
Ex. 2 ("Title III Warrant"), ECF No. 44-2.  Second, also on that
date, the government obtained a warrant from a magistrate judge
in the Eastern District of Virginia to implement a Network
Investigative Technique ("NIT") that would allow the government
covertly to transmit computer code to Website A users.[4]  NIT
Warrant, ECF No. 44-3.  This computer code then generated a
communication from those users' computers to the government-
operated server containing various identifying information,
including those users' IP addresses.[5]  See Aff. Supp. NIT Warrant
24-26.

_____

[4] For a discussion of the government's recent use of these
types of warrants, see Brian L. Owsley, Beware of Government
Agents Bearing Trojan Horses, 48 Akron L. Rev. 315 (2015).

[5] The affidavit the government submitted in support of its
application for the NIT Warrant describes this process:

　　In the normal course of operation, websites send
　　content to visitors.  A user's computer downloads that
　　content and uses it to display web pages on the user's
　　computer.  Under the NIT authorized by this warrant,

Through the use of the NIT, government agents determined
that a Website A user called "Manakaralupa" had accessed several
images of child pornography in early March 2015, and they traced
the IP address of that user to Levin's home address in Norwood,
Massachusetts.  Def.'s Mot., Ex. 1 ("Residential Warrant"), Aff.
Supp. Application for Search Warrant ("Aff. Supp. Residential

---

[Website A], which will be located . . . in the
Eastern District of Virginia, would augment that
content with additional computer instructions.  When a
user's computer successfully downloads those
instructions from [Website A] . . . the instructions,
which comprise the NIT, are designed to cause the
user's 'activating' computer to transmit certain
information to a computer controlled by or known to
the government.

Aff. Supp. NIT Warrant 24.  The particular information seized
pursuant to the NIT Warrant included:

1. the 'activating' computer's actual IP address, and
the date and time that the NIT determines what that IP
address is;
2. a unique identifier generated by the NIT (e.g., a
series of numbers, letters, and/or special characters)
to distinguish data from that of other 'activating'
computers, that will be sent with and collected by the
NIT;
3. the type of operating system running on the
computer, including type (e.g., Windows), version
(e.g., Windows 7), and architecture (e.g., x 86);
4. information about whether the NIT has already been
delivered to the 'activating' computer;
5. the 'activating' computer's Host Name;
6. the 'activating' computer's active operating system
username; and
7. the 'activating' computer's media access control
('MAC') address[.]

NIT Warrant, Attach. B (Information to be Seized).

[5]

Warrant") 11-12, ECF No. 44-1.  On August 11, 2015, law
enforcement officials obtained a third and final warrant (the
"Residential Warrant") from Magistrate Judge Bowler in this
District to search Levin's home.  See Residential Warrant.
Agents executed the Residential Warrant on August 12, 2015, and
in their search of Levin's computer, identified eight media
files allegedly containing child pornography.  See Compl., Ex.
2, Aff. Supp. Application Criminal Compl. ¶ 7, ECF No. 1-2.

Levin was subsequently indicted on one count of possession
of child pornography, 18 U.S.C. § 2252A(a)(5)(B).  Indictment,
ECF No. 8.  He has since moved to suppress all evidence seized
pursuant to the NIT Warrant and the Residential Warrant.[6]  Def.'s
Mot.  After holding a hearing on March 25, 2016, the Court took
Levin's motion under advisement.  See Elec. Clerk's Notes, ECF
No. 62.

**III. ANALYSIS**

In support of his motion to suppress, Levin contends that
the NIT Warrant violated the territorial restrictions on the
issuing magistrate judge's authority,[7] and further that the

---

[6] The government does not contest Levin's argument that
absent the NIT Warrant, it would not have had probable cause to
support its Residential Warrant application, see Def.'s Mot. 14.
For the sake of simplicity, the Court uses the phrase "evidence
seized pursuant to the NIT Warrant" to include evidence seized
pursuant to the Residential Warrant because all of that evidence
is derivative of the NIT Warrant.

[ 6 ]

evidence obtained pursuant to the NIT Warrant must be suppressed
in light of law enforcement agents' deliberate disregard for the
applicable rules and the prejudice Levin suffered as a
consequence.  See Def.'s Mot. 6-7.  The government refutes each
of these arguments, and additionally argues that the good-faith
exception to the exclusionary rule renders suppression
inappropriate.  See Gov't's Resp. 1.

### A.    Magistrate Judge's Authority Under the Federal Magistrates Act and Rule 41(b)

Levin argues that the issuance of the NIT Warrant ran afoul
of both Section 636(a) of the Federal Magistrates Act and Rule
41(b) of the Federal Rules of Criminal Procedure.  See Def.'s
Mot. 5-7, 12.  The conduct underlying each of these alleged
violations is identical: the magistrate judge's issuance of a
warrant to search property located outside of her judicial

---

[7] A more precise characterization of Levin's challenge would
be that the magistrate judge who issued the NIT Warrant had no
authority to do so under the relevant statutory framework and
federal rules -- not that the issuance of the warrant "violated"
these provisions, by, for example, failing to comply with
procedural requirements.  In the Court's view, this distinction
is meaningful, see infra Part III(B)(1), though it is one that
neither the parties nor other courts evaluating similar
challenges seem to appreciate, see, e.g., United States v.
Michaud, No. 3:15-cr-05351-RJB, 2016 WL 337263 at *5-*7 (W.D.
Wash. Jan. 28, 2016) (discussing whether the NIT Warrant
"violates" Federal Rule of Criminal Procedure 41(b)).  In the
interest of consistency with the parties' briefings and prior
caselaw, however, the Court continues the tradition of referring
to actions by a magistrate judge that fall outside the scope of
her authority as "violations" of the provisions that confer such
authority.

district.  See id.  Moreover, because Section 636(a) expressly incorporates any authorities granted to magistrate judges by the Federal Rules of Criminal Procedure, see infra Part III(A)(1), the Court's analyses of whether the NIT Warrant was statutorily permissible and whether it was allowed under Rule 41(b) are necessarily intertwined.

### 1.    Federal Magistrates Act

Section 636(a) of the Federal Magistrates Act establishes "jurisdictional limitations on the power of magistrate judges[.]"  United States v. Krueger, 809 F.3d 1109, 1122 (10th Cir. 2015) (Gorsuch, J., concurring).  It provides, in relevant part:

> (a) Each United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law--
>
> > (1) all powers and duties conferred or imposed . . . by law or by the Rules of Criminal Procedure[.]

28 U.S.C. § 636(a).  Levin argues that the magistrate judge's issuance of a warrant to search property outside of her judicial district violated the territorial restrictions provided in the first paragraph of Section 636(a).  Def.'s Mot. 12.  In other words, because the NIT Warrant approved a search of property outside the Eastern District of Virginia ("the district in which sessions are held by the court that appointed the magistrate"),

[ 8 ]

and neither of the other clauses in the first paragraph of
Section 636(a) applies, Levin contends that the magistrate judge
lacked jurisdiction to issue it.  See id.  The government, for
its part, notes that Levin does not meaningfully distinguish
between the requirements of the statute and of Rule 41(b), and
advances the same arguments to support the magistrate judge's
authority to issue the NIT Warrant under Section 636(a) and
under Rule 41(b).  Gov't's Resp. 21.

       As discussed in more detail infra Part III(A)(2)(i), the
Court is persuaded by Levin's argument that the NIT Warrant
indeed purported to authorize a search of property located
outside the district where the issuing magistrate judge sat.
The magistrate judge had no jurisdiction to issue such a warrant
under the first paragraph of Section 636(a).  The Court also
concludes that Section 636(a)(1) is inapposite because Rule
41(b) did not confer on the magistrate judge authority to issue
the NIT Warrant Levin challenges here, see infra Part III(A)(2),
and the government points to no other "law or . . . Rule[] of
Criminal Procedure" on which the magistrate judge could have
based its jurisdiction pursuant to Section 636(a)(1), see infra
note 11.  Consequently, the Court holds that the Federal
Magistrates Act did not authorize the magistrate judge to issue
the NIT Warrant here.

       **2.   Rule 41(b)**

[ 9 ]

Rule 41(b), titled "Authority to Issue a Warrant,"

provides as follows:

At the request of a federal law enforcement officer or an attorney for the government:

(1) a magistrate judge with authority in the district -- or if none is reasonably available, a judge of a state court of record in the district -- has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

(3) a magistrate judge -- in an investigation of domestic terrorism or international terrorism -- with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both; and

(5) a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:

(A) a United States territory, possession, or commonwealth;

(B) the premises -- no matter who owns them -- of a United States diplomatic or consular mission in a foreign state, including any appurtenant

[10]

> building, part of a building, or land used for
> the mission's purposes; or
>
> (C) a residence and any appurtenant land owned or
> leased by the United States and used by United
> States personnel assigned to a United States
> diplomatic or consular mission in a foreign
> state.

Fed. R. Crim. P. 41(b).

The government argues for a liberal construction of Rule 41(b) that would authorize the type of search that occurred here pursuant to the NIT Warrant.  See Gov't's Resp. 18-20.  Specifically, it argues that subsections (1), (2), and (4) of Rule 41(b) are each sufficient to support the magistrate judge's issuance of the NIT Warrant.  Id.  This Court is unpersuaded by the government's arguments.  Because the NIT Warrant purported to authorize a search of property located outside the Eastern District of Virginia, and because none of the exceptions to the general territorial limitation of Rule 41(b)(1) applies, the Court holds that the magistrate judge lacked authority under Rule 41(b) to issue the NIT Warrant.

### i.  Rule 41(b)(1)

The government advances two distinct lines of argument as to why Rule 41(b)(1) authorizes the NIT Warrant.  One is that all of the property that was searched pursuant to the NIT Warrant was actually located within the Eastern District of Virginia, where the magistrate judge sat: since Levin -- as a

user of Website A -- "retrieved the NIT from a server in the
Eastern District of Virginia, and the NIT sent [Levin's] network
information back to a server in that district," the government
argues the search it conducted pursuant to the NIT Warrant
properly can be understood as occurring within the Eastern
District of Virginia.  Gov't's Resp. 20.  This is nothing but a
strained, after-the-fact rationalization.  In its explanation of
the "Place to be Searched," the NIT Warrant made clear that the
NIT would be used to "obtain[] information" from various
"activating computers[.]"[8]  NIT Warrant 32.  As is clear from
Levin's case -- his computer was located in Massachusetts -- at
least some of the activating computers were located outside of
the Eastern District of Virginia.  That the Website A server is
located in the Eastern District of Virginia is, for purposes of
Rule 41(b)(1), immaterial, since it is not the server itself
from which the relevant information was sought.  See United
States v. Michaud, No. 3:15-cr-05351-RJB, 2016 WL 337263 at *6
(W.D. Wash. Jan. 28, 2016) (examining the permissibility of the

---

[8] That the cover page of the NIT Warrant application
indicated that the property to be searched was located in the
Eastern District of Virginia, see NIT Warrant 1, does not alter
this conclusion.  See Michaud, 2016 WL 337263 at *4 (observing
that to read this NIT Warrant as authorizing a search of
property located exclusively within the Eastern District of
Virginia, on the basis of its cover page, is "an overly narrow
reading of the NIT Warrant that ignores the sum total of its
content.").

same NIT Warrant and concluding that Rule 41(b)(1) did not authorize the search "because the object of the search and seizure was Mr. Michaud's computer, not located in the Eastern District of Virginia").

The government's other argument is that where, as here, it is impossible to identify in advance the location of the property to be searched, Rule 41(b)(1) ought be interpreted to allow "a judge in the district with the strongest known connection to the search" to issue a warrant.  See Gov't's Resp. 20.  This argument fails, though, because it adds words to the Rule.  See Lopez-Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir. 1999) ("Courts have an obligation to refrain from embellishing statutes by inserting language that Congress opted to omit.").

### ii.  Rule 41(b)(2)

Rule 41(b)(2) confers on magistrate judges the authority "to issue a warrant of a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed."  Fed. R. Crim. P. 41(b)(2).  The government argues that because the NIT (i.e., the computer code used to generate the identifying information from users' computers) was located in the Eastern District of Virginia at the time the warrant was issued, this subsection applies.  Gov't's Resp. 19.  As discussed above, however, the

[13]

actual property to be searched was not the NIT nor the server on which it was located, but rather the users' computers. Therefore, Rule 41(b)(2) is inapposite.

### iii. Rule 41(b)(4)

The Court is similarly unpersuaded by the government's argument regarding Rule 41(b)(4), which authorizes magistrate judges in a particular district "to issue a warrant to install within the district a tracking device," even where the person or property on whom the device is installed later moves outside the district, see Fed. R. Crim. P. 41(b)(4).  The government likens the transmittal of the NIT to Website A users' computers to the installation of a tracking device in a container holding contraband, insofar as each permits the government to identify the location of illegal material that has moved outside the relevant jurisdiction.  Gov't's Resp. 19-20.  This analogy does not persuade the Court that the NIT properly may be considered a tracking device, regardless of where the "installation" occurred.[9]

---

[9] Indeed, as the court pointed out in Michaud, which involved the same NIT Warrant:

> If the 'installation' occurred on the government-controlled computer, located in the Eastern District of Virginia, applying the tracking device exception breaks down, because [users of Website A] never controlled the government-controlled computer, unlike a car with a tracking device leaving a particular district.  If the installation occurred on [the

## B.    Suppression

Having concluded that neither the Federal Magistrates Act
nor Rule 41(b) authorized the issuance of the NIT Warrant, the
Court now turns to the question of whether suppression of the
evidence obtained pursuant to the NIT Warrant is an appropriate
remedy.  Levin argues that this evidence ought be suppressed
because the magistrate judge lacked jurisdiction to issue the
NIT Warrant and because Levin was prejudiced by the Rule 41
violation.  Def.'s Mot. 13-14.  The government argues that even
if the issuance of the NIT Warrant was not sanctioned by Rule 41
or Section 636(a), suppression is too extreme a remedy, as any
violation of the relevant rule or statute was merely ministerial
and there was no resulting prejudice to Levin.  Gov't's Resp.

---

individual Website A user's] computer, applying the
tracking device exception again fails, because [the
user's] computer was never physically located within
the Eastern District of Virginia.

2016 WL 337263 at *6.  In any case, the Court is persuaded by
the Southern District of Texas's interpretation of
"installation."  See In re Warrant to Search a Target Computer
at Premises Unknown, 958 F.Supp.2d 753, 758 (S.D. Tex. 2013)
(rejecting government's application for a warrant remotely to
extract identifying information from a computer in an unknown
location, noting that "there is no showing that the installation
of the 'tracking device' (i.e. the software) would take place
within this district.  To the contrary, the software would be
installed on a computer whose location could be anywhere on the
planet.").  Under that approach, the "installation" of the NIT
occurred not within the Eastern District of Virginia, where the
server is located, but rather at the site of each user's
computer.  See id.

[15]

16. Further, the government contends that the good-faith exception to the exclusionary rule ought preclude suppression of the evidence seized.  <u>Id.</u> at 21-23.

The Court concludes that the violation at issue here is distinct from the technical Rule 41 violations that have been deemed insufficient to warrant suppression in past cases, and, in any event, Levin was prejudiced by the violation.  Moreover, the Court holds that the good-faith exception is inapplicable because the warrant at issue here was void <u>ab initio</u>.

### 1.    Nature of the Rule 41 Violation

A violation of Rule 41 that is purely technical or ministerial gives rise to suppression only where the defendant demonstrates that he suffered prejudice as a result of the violation.  <u>See</u> <u>United States</u> v. <u>Bonner</u>, 808 F.2d 864, 869 (1st Cir. 1986).  The government apparently submits that all Rule 41 violations "are essentially ministerial," and accordingly that suppression is an inappropriate remedy absent a showing of prejudice.  Gov't's Resp. 16 (citing <u>United States</u> v. <u>Burgos-Montes</u>, 786 F.3d 92, 109 (1st Cir. 2015)).

Rule 41, however, has both procedural and substantive provisions -- and the difference matters.  Courts faced with violations of Rule 41's <u>procedural</u> requirements have generally found such violations to be merely ministerial or technical, and

—

as a result have determined suppression to be unwarranted.[10]  By
contrast, this case involves a violation of Rule 41(b), which is
"a substantive provision[.]"  United States v. Berkos, 543 F.3d
392, 398 (7th Cir. 2008); see also United States v. Krueger, 809
F.3d 1109, 1115 n.7 (10th Cir. 2015) (noting that Rule 41(b)(1)
"is unique from other provisions of Rule 41 because it
implicates substantive judicial authority," and accordingly
concluding that past cases involving violations of other
subsections of Rule 41 "offer limited guidance") (internal
quotation marks and citation omitted).  Thus, it does not follow
from cases involving violations of Rule 41's procedural
provisions that the Rule 41(b) violation at issue here -- which
involves the authority of the magistrate judge to issue the
warrant, and consequently, the underlying validity of the

---

[10] These violations implicate the various subsections of
Rule 41, with the exception of subsection (b).  See, e.g.,
Burgos-Montes, 786 F.3d at 108-09 (magistrate judge's "failure .
. . to define the time period of the search when the form itself
provides that the search is to be completed within [10 days],
and . . . failure to designate a magistrate to whom the form
should be returned" was technical violation of Rule 41(e));
Bonner, 808 F.2d at 869 (officers' failure to comply with Rule
41(f) requirement of leaving a copy of the warrant at the place
to be searched was ministerial and did not call for suppression
of resulting evidence); United States v. Dauphinee, 538 F.2d 1,
3 (1st Cir. 1976) ("The various procedural steps required by
Rule 41(d) are basically ministerial[,]" and therefore
suppression of evidence obtained in violation of that provision
was not warranted absent showing of prejudice); United States v.
Pryor, 652 F.Supp. 1353, 1365-66, (D. Me. 1987) (violation of
Rule 41(c)'s procedural requirements regarding nighttime
searches did not call for suppression).

[17]

warrant -- was simply ministerial.  See United States v. Glover,
736 F.3d 509, 515 (D.C. Cir. 2013) (concluding that a Rule 41(b)
violation constitutes a "jurisdictional flaw" that cannot "be
excused as a 'technical defect'").

Because the violation here involved "substantive judicial
authority" rather than simply "the procedures for obtaining and
issuing warrants," Krueger, 809 F.3d at 1115 n.7, the Court
cannot conclude that it was merely ministerial; in fact, because
Rule 41(b) did not grant her authority to issue the NIT warrant,
the magistrate judge was without jurisdiction to do so.[11]  The
government characterizes Levin's challenge as targeting "the
location of the search, not probable cause or the absence of
judicial approval."  Gov't's Resp. 16.  Here, however, because
the magistrate judge lacked authority, and thus jurisdiction, to
issue the NIT Warrant, there simply was no judicial approval.
See United States v. Houston, 965 F.Supp.2d 855, 902 n.12 (E.D.
Tenn. 2013) ("A search warrant issued by an individual without

_____

[11] For the magistrate judge to have had jurisdiction to
issue the warrant under Section 636(a), she must have had
authority to do so under Rule 41(b), as the government has
pointed to no alternative statutory authority or federal rule
that could serve as the basis for such jurisdiction.  Moreover,
the government's argument regarding courts' inherent authority
to issue warrants, see Gov't's Resp. 20-21, does not extend to
magistrate judges, whose authority derives from -- and is
bounded by -- the specific statutory provisions and rules
discussed herein.

legal authority to do so is 'void _ab initio_'") (quoting United States v. Master, 614 F.3d 236, 241 (6th Cir. 2010)); United States v. Peltier, 344 F.Supp.2d 539, 548 (E.D. Mich. 2004) ("A search warrant signed by a person who lacks the authority to issue it is void as a matter of law.") (citation omitted); cf. State v. Surowiecki, 440 A.2d 798, 799 (Mont. 1981) ("[A] lawful signature on the search warrant by the person authorized to issue it [is] essential to its issuance[,]" such that an unsigned warrant is void under state law and confers no authority to act, despite existence of probable cause).

NITs, while raising serious concerns,[12] are legitimate law enforcement tools. Indeed, perhaps magistrate judges should have the authority to issue these types of warrants. See In re Warrant to Search a Target Computer at Premises Unknown, 958 F.Supp.2d at 761 (noting that "there may well be a good reason

---

[12] The Court expresses no opinion on the use of this particular police tactic under these circumstances, but notes that its use in the context of investigating and prosecuting child pornography has given rise to significant debate. See, e.g., The Ethics of a Child Pornography Sting, N.Y. Times, Jan. 27, 2016, http://www.nytimes.com/roomfordebate/2016/01/27/the-ethics-of-a-child-pornography-sting. The continuing harm to the victims of this hideous form of child abuse is the distribution of the photographs and videos in which the victims appear. See, e.g., United States v. Kearney, 672 F.3d 81, 94 (1st Cir. 2012) (internal citations omitted). Unlike those undercover stings where the government buys contraband drugs to catch the dealers, here the government disseminated the child obscenity to catch the purchasers -- something akin to the government itself selling drugs to make the sting.

[19]

to update the territorial limits of [Rule 41] in light of

advancing computer search technology").[13]  Today, however, no

───────────────

[13] Whether magistrate judges should have the authority to issue warrants to search property located outside of their districts under circumstances like the ones presented here has been the subject of recent deliberations by the Advisory Committee on Criminal Rules.  See Memorandum from Hon. Reena Raggi, Advisory Committee on Criminal Rules, to Hon. Jeffrey S. Sutton, Chair, Committee on Rules of Practice and Procedure ("Raggi Mem.") (May 5, 2014); Letter from Mythili Raman, Acting Assistant Attorney General, to Hon. Reena Raggi, Chair, Advisory Committee on the Criminal Rules ("Raman Letter") (Sept. 18, 2013); cf. Zach Lerner, A Warrant to Hack: An Analysis of the Proposed Amendments to Rule 41 of the Federal Rules of Criminal Procedure, 18 Yale J. L. & Tech. 26 (2016).  As Levin points out in his motion, see Def.'s Mot. 18-19, the following proposed amendment to Rule 41(b) is currently under consideration:

> (6) a magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district if:
>
> > (A) the district where the media or information is located has been concealed through technological means; or
> >
> > (B) in an investigation of a violation of 18 U.S.C. § 1030(a)(5), the media are protected computers that have been damaged without authorization and are located in five or more districts.

Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure 337-38 ("Proposed Rule 41 Amendment"), Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (August 2014), http://www.uscourts.gov/file/preliminary-draft-proposed-amendments-federal-rules-appellate-bankruptcy-civil-and-criminal.

magistrate judge has the authority to issue this NIT warrant.

Accordingly, the warrant here was void.

### 2. Prejudice

Even were the Court to conclude that the Rule 41(b)

violation was ministerial, suppression would still be

appropriate, as Levin has demonstrated that he suffered

prejudice.  See Burgos-Montes, 786 F.3d at 109 (a Rule 41

violation "does not require suppression unless the defendant can

demonstrate prejudice") (emphasis added); cf. Krueger, 809 F.3d

at 1117 (affirming district court's order granting defendant's

motion to suppress "[b]ecause [the defendant] met his burden of

establishing prejudice and because suppression furthers the

purpose of the exclusionary rule by deterring law enforcement

from seeking and obtaining warrants that clearly violate Rule

---

Proponents of the amendment contend that it ought be
adopted in order "to address two increasingly common
situations: (1) where the warrant sufficiently describes
the computer to be searched but the district within which
that computer is located is unknown, and (2) where the
investigation requires law enforcement to coordinate
searches of numerous computers in numerous districts."
Raman Letter 1.

While the Advisory Committee on Criminal Rules
unanimously approved the proposed amendment, Raggi Mem. 5,
it has drawn criticism from stakeholders ranging from the
American Civil Liberties Union, see Letter from American
Civil Liberties Union to Members of the Advisory Committee
on Criminal Rules (Oct. 31, 2014), to Google, see Letter
from Richard Salgado, Director, Law Enforcement and
Information Security, Google Inc., to Judicial Conference
Advisory Committee on Criminal Rules (Feb. 13, 2015).

41(b)(1)").  "To show prejudice, defendants must show that they were subjected to a search that might not have occurred or would not have been so abrasive had Rule 41[] been followed."[14] <u>Bonner</u>, 808 F.2d at 869.  Here, had Rule 41(b) been followed, the magistrate judge[15] would not have issued the NIT Warrant, and therefore the search conducted pursuant to that Warrant might

---

[14] Courts outside this district faced with Rule 41(b) violations have considered (and in some cases, adopted) alternative formulations of the prejudice inquiry.  <u>See, e.g.</u>, <u>Krueger</u>, 809 F.3d at 1116 (evaluating government's proposed prejudice standard, "which would preclude defendants from establishing prejudice in this context so long as the [g]overnment hypothetically could have obtained the warrant from a different federal magistrate judge with warrant-issuing authority under the Rule"); <u>Michaud</u>, 2016 WL 337263 at *6-7.  In <u>Michaud</u>, the court reasoned that the most "sensible interpretation" of the prejudice standard in this context is asking "whether the evidence obtained from a warrant that violates Rule 41(b) <u>could have</u> been available by other lawful means[.]"  2016 WL 337263 at *6 (emphasis added).  This Court respectfully declines to follow the <u>Michaud</u> court's approach, instead adhering to the prejudice standard generally applicable to Rule 41 violations.  <u>Cf.</u> <u>Krueger</u>, 809 F.3d at 1116 (rejecting government's proposed prejudice standard, which "would preclude defendants from establishing prejudice in this context so long as the Government hypothetically could have obtained the warrant from a different federal magistrate judge with warrant-issuing authority under the Rule[,]" reasoning that "[w]hen it comes to something as basic as who can issue a warrant, we simply cannot accept such a speculative approach" and that instead the standard "should be anchored to the facts as they actually occurred").

[15] This is not to say that a district judge could not have issued the NIT Warrant, since Rule 41(b) and Section 636(a) bear only on the authority of magistrate judges to issue warrants.  <u>See</u> <u>infra</u> Part III(B)(4).

not have occurred.[16]  See Krueger, 809 F.3d at 1116 (holding that
defendant suffered prejudice as a result of having been
subjected to a search that violated Rule 41(b), since that
search "might not have occurred because the Government would not
have obtained [the warrant] had Rule 41(b)(1) been followed.").
Contrast United States v. Scott, 83 F.Supp.2d 187, 203 (D. Mass.
2000) (Rule 41(d) violation did not prejudice defendant, since
"the nature of the search would not have changed even if [the
defendant] had been given a copy of the warrant prior to the
search, as required under the rules); United States v. Jones,
949 F.Supp.2d 316, 323 (D. Mass. 2013) (Saris, C.J.) (law
enforcement officer's failure to leave the defendant with a copy
of the warrant, as required by Rule 41(f), was not prejudicial).

To rebut Levin's prejudice argument, the government appears
to ignore the NIT Warrant altogether, baldly stating that
"[w]here there is probable cause, judicial approval, and the
computer server which the defendant accessed to view child
pornography was physically located in the jurisdiction where the
issuing magistrate was located, there can be no prejudice to the

---

[16] It follows from this that the government might not have
obtained the evidence it seized pursuant to the Residential
Warrant, since the application for that warrant was based on
information it acquired through the execution of the NIT
Warrant.  As the government itself points out, it "had no way to
know where the defendant was without first using the NIT[.]"
Gov't's Resp. 15.

defendant." Gov't's Resp. 16. Simply put, this is not the
standard for determining prejudice, and the government directs
the Court to no authority to support its assertion. Moreover,
as discussed above, the Rule 41(b) violation here had the effect
of vitiating the purported judicial approval so, even by this
standard, the government's argument against prejudice must fail.

### 3. Good-Faith Exception

Finally, the government argues that, even if the NIT
Warrant violated the Federal Magistrates Act and Rule 41(b), the
Court ought not exclude the evidence seized pursuant to the NIT
Warrant because the law enforcement officers here acted in good
faith. See Gov't's Resp. 21 (citing United States v. Leon, 468
U.S. 897, 918, 926 (1984)). Whether the good-faith exception
applies where a warrant was void is a question of first
impression in this Circuit, and an unresolved question more
broadly. See Wayne R. LaFave, Search and Seizure: A Treatise on
the Fourth Amendment, § 1.3(f) n.60 ("It is unclear whether the
[Leon good-faith] rule extends to a warrant 'that was
essentially void ab initio' because of 'the issuing court's lack
of jurisdiction to authorize the search in the first
instance.'") (quoting United States v. Baker, 894 F.2d 1144,
1147 (10th Cir. 1990)). This Court holds that it does not.

In Leon, the Supreme Court held that suppression was
unwarranted where evidence was obtained pursuant to a search

warrant that was later determined to be unsupported by probable cause, since the executing officers acted in objectively reasonable reliance on the warrant's validity.  See 468 U.S. at 922.  In reaching this conclusion, the Supreme Court observed that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate judge's determination."  Id. at 914 (internal quotation marks and citation omitted).

Leon contains not the slightest suggestion, however, that the same deference ought apply when magistrate judges determine their own jurisdiction.  Indeed, the Supreme Court's conclusion presupposes that the issuing magistrate judge was authorized to issue the challenged warrant.  Cf. United States v. Houston, No. 3:13-09-DCR, 2014 WL 259085 at *26 n.14 (E.D. Tenn. Jan. 23, 2014) (where a warrant is "void ab initio . . . the [c]ourt never reaches the question of whether the search warrant is supported by probable cause") (internal citation omitted).  Moreover, Leon deals explicitly with a "subsequently invalidated warrant," 468 U.S. at 918 (emphasis added), rather than a warrant that was void at the time of its issuance.  The latter

raises qualitatively different concerns, as several post-<u>Leon</u> courts have recognized.[17]

Over the years since <u>Leon</u>, the Supreme Court has expanded the good-faith exception to contexts beyond those <u>Leon</u> specifically addressed.[18]  None of the Supreme Court's post-<u>Leon</u> good-faith cases, however, involved a warrant that was void <u>ab initio</u>, and therefore none direct the conclusion that the good-

---

[17] Courts interpreting the scope of <u>Leon</u> have repeatedly held or acknowledged in dicta that where evidence is obtained pursuant to a warrant that is void <u>ab initio</u>, the good-faith exception has no application.  <u>See, e.g.</u>, <u>State</u> v. <u>Wilson</u>, 618 N.W.2d 513, 520 (S.D. 2000) (holding that good-faith exception could not save evidence obtained pursuant to warrant issued by state judge acting outside territorial jurisdiction, since "[a]ctions by a police officer cannot be used to create jurisdiction, even when done in good faith"); <u>State</u> v. <u>Nunez</u>, 634 A.2d 1167, 1171 (R.I. 1993) (stating in dicta that <u>Leon</u> good-faith exception "would be inapplicable to this case because" it involved a warrant issued by a retired judge without authority to do so, and thus was "void <u>ab initio</u>"); <u>Commonwealth</u> v. <u>Shelton</u>, 766 S.W.2d 628, 629-30 (Ky. 1989) (noting in dicta that <u>Leon</u> would not be applicable since "in the case at bar, we are not confronted with a technical deficiency; but rather a question of jurisdiction"); <u>United States</u> v. <u>Vinnie</u>, 683 F.Supp. 285, 288-89 (D. Mass. 1988) (Skinner, J.) (holding <u>Leon</u>'s good-faith exception inapplicable since the case involved not the "determination of what quantum of evidence constitutes probable cause" but rather "the more fundamental problem of a magistrate judge acting without subject matter jurisdiction").

[18] <u>Leon</u>, along with its companion case, <u>Massachusetts</u> v. <u>Sheppard</u>, 468 U.S. 981 (1984), "contemplated two circumstances: one in which a warrant is issued and is subsequently found to be unsupported by probable cause and the other in which a warrant is supported by probable cause, but is technically deficient." <u>Vinnie</u>, 683 F.Supp. at 288.

faith exception ought apply to this case.[19]  This Court is aware
of only one federal circuit court to address the question of
whether Leon's good-faith exception applies in these
circumstances: the Sixth Circuit.  See Master, 614 F.3d 236;
United States v. Scott, 260 F.3d 512 (6th Cir. 2001).  Scott
involved a search warrant issued by a retired judge who lacked
authority to do so.  260 F.3d at 513.  After holding that such
warrant was necessarily void ab initio, id. at 515, the court
concluded that, "[d]espite the dearth of case law, we are
confident that Leon did not contemplate a situation where a

_____

[19] The good-faith exception has been held to apply where
officers execute a warrant in reliance on existing law.  See
Davis v. United States, 131 S. Ct. 2419 (2011) (good-faith
exception precluded suppression of evidence obtained through a
search incident to arrest that was proper under binding
appellate precedent at the time of the search but which was
later held to be unlawful); Illinois v. Krull, 480 U.S. 340
(1987) (good-faith exception applied to a warrantless
administrative search conducted pursuant to a statute later
found to be unconstitutional, where the officer's reliance on
the constitutionality of the statute was objectively
reasonable).  Unlike in those cases, here there was no
"intervening change in the law that made the good-faith
exception relevant."  United States v. Wurie, 728 F.3d 1 (1st
Cir. 2013).
    The Supreme Court has also applied the good-faith exception
in circumstances involving one-off mistakes of fact that
implicate the validity of a warrant at the time of its
execution.  See Herring v. United States, 555 U.S. 135 (2009)
(good-faith exception applied to evidence improperly obtained as
a result of law enforcement's negligent record-keeping
practices); Arizona v. Evans, 514 U.S. 1 (1995) (evidence seized
in violation of the Fourth Amendment as a result of a clerical
error on the part of court personnel was covered by good-faith
exception and thus did not warrant suppression).  Here, in
contrast, the warrant was void at its inception.

warrant is issued by a person lacking the requisite legal authority."  Id.

Nine years later, the Sixth Circuit effectively reversed itself in Master, which involved a warrant issued by a state judge to search property outside his district, which was unauthorized under Tennessee law.  614 F.3d at 239.  The court held that the warrant was invalid for the same reason as was the warrant in Scott,[20] id. at 240, but that the good-faith exception to the exclusionary rule applied because Scott's reasoning was "no longer clearly consistent with current Supreme Court doctrine."  Id. at 242.  In particular, it noted that "[t]he Supreme Court has effectively created a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, 'the benefits of deterrence must outweigh the costs.'"  Id. at 243 (quoting Herring v. United States, 555 U.S. 135, 142 (2009)).

The Master court read the Supreme Court's recent good-faith cases too broadly.[21]  This Court is persuaded instead by the

---

[20] The difference between the issuer of the warrant in Scott and in Master -- namely, a retired judge with "no authority to approve any warrants," and an active judge with authority to issue warrants within his district, respectively -- was "immaterial" for the purpose of determining whether the warrant was valid.  Master, 614 F.3d at 240.

[21] Even in Master, it should be noted, the court acknowledged that the recent Supreme Court cases addressing the

rationale in Scott and cases applying the holding of that
decision, see, e.g., United States v. Neering, 194 F.Supp.2d 620
(E.D. Mich. 2002) (warrant issued by an official who was not
properly appointed and therefore lacked issuing authority was
void, and under Scott, the good-faith exception did not apply).
Neither Hudson nor Herring -- both of which the Master court
cited in support of its conclusion that Scott's holding is no
longer tenable, see 614 F.3d at 242 -- requires the conclusion
that the good-faith exception applies to evidence seized
pursuant to a warrant that was void ab initio.[22]

---

good-faith exception "do[] not directly overrule our previous
decision in Scott."  614 F.3d at 243.

　　[22] In Hudson, 547 U.S. 586 (2006), the Supreme Court held
that suppression was not an appropriate remedy for a violation
of the knock-and-announce rule.  See id. at 599.  In reaching
this conclusion, the plurality explicitly distinguished the
interests protected by the warrant requirement and the knock-
and-announce requirement.  See id. at 593.  With respect to the
warrant requirement, it noted that "[u]ntil a valid warrant has
issued, citizens are entitled to shield their persons, houses,
papers, and effects . . . from the government's scrutiny[,]" and
that "[e]xclusion of the evidence obtained by a warrantless
search vindicates that entitlement."  Id. (internal quotation
marks and citations omitted) (emphasis added).  As no valid
warrant was ever issued here, and the government does not argue
that an exception to the warrant requirement applies, exclusion
is appropriate.
　　Herring, too, is distinguishable.  There, law enforcement
officers executed an arrest warrant that had been rescinded.
555 U.S. at 138.  The Supreme Court held that since the mistake
was attributable to "isolated negligence attenuated from the
arrest" -- specifically, a recordkeeping error -- the good-faith
exception to the exclusionary rule applied.  Id. at 137.
Although that case makes much of the connection between the
exclusionary rule and the goal of deterrence and culpability of

Because a warrant that was void at the outset is akin to no warrant at all, cases involving the application of the good-faith exception to evidence seized pursuant to a warrantless search are especially instructive.  In <u>United States</u> v. <u>Curzi</u>, 867 F.2d 36 (1st Cir. 1989), the First Circuit declined to "recognize[] a good-faith exception in respect to warrantless searches."  <u>Id.</u> at 44.[23]  To hold that the good-faith exception is applicable here would collapse the distinction between a voidable and a void warrant.  But this distinction is meaningful: the former involves "judicial error," such as "misjudging the sufficiency of the evidence or the warrant

---

law enforcement, <u>see</u> <u>id.</u> at 141-43, it says nothing about whether the same calculus ought apply where there was never jurisdiction to issue a valid warrant in the first place.

[23] While no case has directly disturbed this holding, the First Circuit has since held that the good-faith exception may exempt from exclusion evidence seized pursuant to an unconstitutional warrantless search "'conducted in objectively reasonable reliance on binding appellate precedent[.]'"  <u>United States</u> v. <u>Sparks</u>, 711 F.3d 58, 62 (1st Cir. 2013) (quoting <u>Davis</u>, 131 S.Ct. at 2434).  Cases like <u>Sparks</u>, though, are readily distinguishable: the officers in <u>Sparks</u> were entitled to rely on circuit precedent indicating that they could conduct the challenged search without a warrant; by contrast, here no binding appellate precedent authorized the officers to undertake the search either without a warrant or pursuant to one that was void at the outset.  To determine whether the good-faith exception applied in <u>Sparks</u>, the court asked: "what universe of cases can the police rely on?  And how clearly must those cases govern the current case for that reliance to be objectively reasonable?"  711 F.3d at 64.  Such questions are wholly inapposite here.

application's fulfillment of the statutory requirements[,]"
while the latter involves "judicial authority," i.e., a judge
"act[ing] outside of the law, outside of the authority granted
to judges in the first place."  State v. Hess, 770 N.W.2d 769,
776 (Ct. App. Wis. 2009) (emphasis added); cf. Scott, 260 F.3d
at 515 ("Leon presupposed that the warrant was issued by a
magistrate or judge clothed in the proper legal authority,
defining the issue as whether the exclusionary rule applied to
'evidence obtained by officers acting in reasonable reliance on
a search warrant issued by a detached and neutral magistrate but
ultimately found to be unsupported by probable cause.'")
(quoting Leon, 468 U.S. at 900); State v. Vickers, 964 P.2d 756,
762 (Mont. 1998) (distinguishing Leon and concluding that "[i]f
a search warrant is void ab initio, the inquiry stops and all
other issues pertaining to the validity of the search warrant,
such as whether the purpose of the exclusionary rule is served,
are moot.").  Were the good-faith exception to apply here,
courts would have to tolerate evidence obtained when an officer
submitted something that reasonably looked like a valid warrant
application, to someone who, to the officer, appeared to have
authority to approve that warrant application.  Cf. Krueger, 809
F.3d at 1126 (Gorsuch, J., concurring).  This Court holds that

[31]

such an expansion of the good-faith exception is improvident, and not required by current precedent.[24]

Even were the Court to hold that the good-faith exception could apply to circumstances involving a search pursuant to a warrant issued without jurisdiction, it would decline to rule such exception applicable here.  For one, it was not objectively reasonable for law enforcement -- particularly "a veteran FBI agent with 19 years of federal law enforcement experience[,]" Gov't's Resp. 7-8 -- to believe that the NIT Warrant was properly issued considering the plain mandate of Rule 41(b). See Glover, 736 F.3d at 516 ("[I]t is quite a stretch to label the government's actions in seeking a warrant so clearly in violation of Rule 41 as motivated by 'good faith.'"); cf. United States v. McKeever, 894 F.2d 712, 717 (5th Cir. 1990) (good-faith exception did not apply where sheriff "who was the prime mover in obtaining and executing the search . . . knew both that

---

[24] While the exclusionary rule has its detractors, see, e.g., Akhil Reed Amar, Fourth Amendment First Principles, 107 Harv. L. Rev. 757, 785-800 (1994) (arguing that suppression is an "awkward and embarrassing remedy" that is unsupported by the text of the Fourth Amendment), "when a criminal conviction is predicated on a violation of the Constitution's criminal procedure requirements, including the Fourth Amendment, the conviction works an ongoing deprivation of liberty without due process," Richard M. Re, The Due Process Exclusionary Rule, 127 Harv. L. Rev. 1885, 1887 (2014); see also Carol S. Steiker, Second Thoughts About First Principles, 107 Harv. L. Rev. 820, 848-852 (1994).

he had to obtain a warrant from a court of record . . . and that
[the issuing judge] was not a judge of a court of record.").[25]

Moreover, even analyzed under <u>Herring</u>, the conduct at issue here
can be described as "systemic error or reckless disregard of

---

[25] In its oral argument opposing this motion, Elec. Clerk's
Notes, ECF No. 62, the government indicated that the particular
officers executing the search cannot be charged with the
knowledge that the warrant was issued in violation of the
Federal Magistrates Act and Rule 41(b).  But it would be
incongruous to view these officers' conduct in isolation.  As
Professor Amsterdam articulated:

> [S]urely it is unreal to treat the offending officer
> as a private malefactor who just happens to receive a
> government paycheck.  It is the government that sends
> him out on the streets with the job of repressing
> crime and of gathering criminal evidence in order to
> repress it.  It is the government that motivates him
> to conduct searches and seizures as a part of his job,
> empowers him and equips him to conduct them.  If it
> also receives the products of those searches and
> seizures without regard to their constitutionality and
> uses them as the means of convicting people whom the
> officer conceives it to be his job to get convicted,
> it is not merely tolerating but inducing
> unconstitutional searches and seizures.

Anthony G. Amsterdam, <u>Perspectives on the Fourth Amendment</u>,
58 Minn. L. Rev. 349, 432 (1974).

constitutional requirements,"[26] 555 U.S. at 147, and the Court
thus concludes that suppression is appropriate.[27]

### 4. Policy Ramifications

Notwithstanding the Court's doctrinal analysis -- which has
now concluded -- the Court is mindful of the thorny practical
questions this motion raises. The government asserts that to
hold that the magistrate judge lacked authority to issue the NIT

---

[26] The Supreme Court does not define "systemic negligence,"
Herring, 555 U.S. at 144, or "systemic error," id. at 147, and
the former, at least, is apparently a new term in the Supreme
Court's lexicon, see Wayne R. Lafave, The Smell of Herring: A
Critique of the Supreme Court's Latest Assault on the
Exclusionary Rule, 99 J. Crim. L. & Criminology 757, 784 (2009).
It is difficult to ascertain the frequency with which similar
warrants -- i.e., warrants to conduct remote searches of
property located outside a magistrate judge's judicial district
-- are granted, since these warrants are typically issued and
remain under seal. See Owsley, supra note 4, at 4-5.
Nonetheless, it is clear to the Court that this is far from the
sole instance in which the government has sought and obtained an
NIT warrant. See id. (listing cases involving NIT warrants or
similar); Gov't's Resp. 23.

[27] The Court acknowledges that suppression is an extreme
remedy, and consequently it considered whether, on this occasion
-- but never again under these circumstances -- the evidence at
issue ought be let in under the good-faith exception. See State
v. Hardy, No. 16964, 1998 WL 543368, at *6-7 (Ct. App. Ohio Aug.
28, 1998) (Fain, J., concurring in the judgment) (concluding
that good-faith exception should apply to evidence obtained
pursuant to a warrant issued without proper jurisdiction, but
noting that "[o]nce we allow time for reasonable police officers
within this jurisdiction to become acquainted with the
territorial limits upon a magistrate judge's authority to issue
search warrants, however, claims of good-faith exceptions to the
warrant requirement are likely to be unavailing."). Upon
further deliberation, however, the Court concluded that to hold
that Leon's good-faith exception applies here, where there never
existed a valid warrant, would stretch that exception too far.

Warrant, and accordingly to suppress the evidence obtained
pursuant thereto, would create "an insurmountable legal barrier"
to law enforcement efforts in this realm.  Gov't's Resp. 16.
The Court is unmoved by the government's argument for two
reasons.

First, it cannot fairly be said that the legal barrier to
obtaining this type of NIT Warrant from a magistrate judge is
"insurmountable," because the government itself has come up with
a way of surmounting it -- namely, to change Rule 41(b), see
supra note 13.

Second, it does not follow from this opinion that there was
no way for the government to have obtained the NIT Warrant.
Section 636(a) and Rule 41(b) limit the territorial scope of
magistrate judges -- they say nothing about the authority of
district judges to issue warrants to search property located
outside their judicial districts.  Indeed, the quotation from
United States v. Villegas, 899 F.2d 1324 (2d Cir. 1990),
included in the government's own brief, is revealing: "Rule 41
does not define the extent of the court's power to issue a
search warrant. . . . Given the Fourth Amendment's warrant
requirements and assuming no statutory prohibition, the courts
must be deemed to have inherent power to issue a warrant when
the requirements of that Amendment are met."  Gov't's Resp. 20-
21 (quoting Villegas, 899 F.2d at 1334).  With respect to

[35]

district judges, neither Rule 41(b) nor Section 636(a) of the Federal Magistrates Act restricts their inherent authority to issue warrants consistent with the Fourth Amendment.  See Krueger, 809 F.3d at 1125 n.6 (noting that analysis of a magistrate judge's lack of statutory authority to issue warrants to search outside his district has no bearing on "the statutory authorities of a district judge to issue a warrant for an out-of-district search[,]" and pointing out that "[u]nlike magistrates, the jurisdiction of district courts is usually defined by subject matter and parties rather than strictly by geography."); cf. Matter of Application and Affidavit for a Search Warrant, 923 F.2d 324, 326 (4th Cir. 1991) (contrasting a district judge's "inherent power" with a magistrate's power, which is either delegated by a district judge or expressly provided by statute).[28]

---

[28] Surprisingly, a number of courts have apparently understood Rule 41(b) to apply to district judges.  See, e.g., United States v. Golson, 743 F.3d 44, 51 (3d Cir. 2014) ("Rule 41(b) grants the authority to issue search warrants to federal judges and judges of state courts of record."); Glover, 736 F.3d at 515 (concluding that a warrant issued by a district judge to search property outside that judge's district violated Rule 41(b)(2)); cf. United States v. Krawiec, 627 F.2d 577, 580 (1st Cir. 1980) (indicating that all "federal warrants" are required to comply with Rule 41).  On its face, however, Rule 41(b) applies only to "a magistrate judge" and "a judge of a state court of record."  The authority of district judges to issue warrants arises elsewhere, see Villegas, 899 F.2d at 1334; 18 U.S.C. § 3102, and district judges are not subject to the limitations set forth in Rule 41(b).

The magistrate judge who issued this warrant sits primarily in Alexandria, Virginia.  See NIT Warrant.  Four district judges and three senior judges sit routinely in that courthouse.  See Alexandria Courthouse, United States District Court Eastern District of Virginia, http://www.vaed.uscourts.gov/locations/ale.htm (last visited Apr. 20, 2016).  Here, the government had already involved one of those district judges in its investigation, albeit to obtain the Title III warrant.  See Title III Warrant.

Of course, were the government to present its NIT Warrant application to a district judge, it would still have to meet the requirements of the Fourth Amendment, which guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched."  U.S. Const. amend. IV.  Of special concern here is the particularity requirement, since, as the government points out, "the defendant's use of the Tor hidden service made it impossible for investigators to know what other districts, if any, the execution of the warrant would take place in," Gov't's Resp. 20.[29]  While this Court need not decide whether the

_____

[29] Indeed, objectors to the proposed amendment to Rule 41(b), see supra note 13, have argued that a warrant that permitted law enforcement to remotely search computers at unknown locations would violate the Fourth Amendment's particularity requirement.  See, e.g., Written Statement of the

particularity requirement was met here, it notes that despite the difficulty highlighted by the government, at least two courts have determined that this precise warrant was sufficiently particular to pass constitutional muster. See United States v. Epich, No. 15-CR-163-PP, 2016 WL 953269, at *2 (E.D. Wis. Mar. 14, 2016); United States v. Michaud, No. 3:15-cr-05351-RJB, 2016 WL 337263 at *4-*5 (W.D. Wash. Jan. 28, 2016). But cf. In re Warrant to Search a Target Computer at Premises Unknown, 958 F.Supp.2d at 755-58 (warrant to "surreptitiously install[] software designed . . . to extract certain stored electronic records" from "an unknown computer at an unknown location" did not satisfy Fourth Amendment particularity requirement).

**IV. CONCLUSION**

Based on the foregoing analysis, the Court concludes that the NIT Warrant was issued without jurisdiction and thus was void ab initio. It follows that the resulting search was conducted as though there were no warrant at all. Since warrantless searches are presumptively unreasonable, and the good-faith exception is inapplicable, the evidence must be excluded. Accordingly, Levin's motion to suppress, ECF No. 44, is GRANTED.

---

Center for Democracy & Technology Before the Judicial Conference Advisory Committee on Criminal Rules 2, Oct. 24, 2014.

[38]

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
UNITED STATES OF AMERICA,       )
                               )
                               )
                               )
                               )          CRIMINAL ACTION
            v.                  )          NO. 15-10271-WGY
                               )
ALEX LEVIN,                     )
                               )
                Defendant.      )
_____)
```

YOUNG, D.J.                                          May 5, 2016

**AMENDED MEMORANDUM & ORDER**

## I.    INTRODUCTION

Alex Levin is charged with possession of child pornography.
Compl. 1, ECF No. 1.  The government obtained evidence of
Levin's alleged crime in three steps.  First, it seized control
of a website that distributed the illicit material at issue
("Website A").  Next, it obtained a series of search warrants
that allowed the government to identify individual users who
were accessing content on Website A.  One of these warrants
involved the deployment of a Network Investigative Technique
(the "NIT Warrant").  Finally, the government searched[1] the
computers of certain of these individuals, including Levin.

---

[1] The government has waived any argument that its
investigative conduct here did not amount to a search by failing
to raise this argument in its memorandum.  The Court therefore
assumes that Levin had a reasonable expectation of privacy as to

Levin has moved to suppress the evidence obtained as a
result of the issuance of the NIT Warrant, arguing that the NIT
Warrant is void for want of jurisdiction under the Federal
Magistrates Act, 28 U.S.C. § 636(a), and additionally that it
violated Federal Rule of Criminal Procedure 41(b).  Def.'s Mot.
Suppress Evidence ("Def.'s Mot.") 5-6, ECF No. 44.  The
government contends that the NIT Warrant was valid and that, in
any event, suppression is not an appropriate remedy on these
facts.  Gov't's Resp. Def.'s Mot. Suppress ("Gov't's Resp.") 1,
ECF No. 60.

## II.  FACTUAL BACKGROUND

This case involves a far-reaching and highly publicized
investigation conducted by the Federal Bureau of Investigation
in early 2015 to police child pornography.[2]  The investigation
focused on Website A, which was accessible to users only through

---

the information obtained through the execution of the various
warrants.

[2] For coverage of this investigation, see, for example,
Ellen Nakashima, This is How the Government is Catching People
Who Use Child Porn Sites, Wash. Post, Jan 21, 2016,
https://www.washingtonpost.com/world/national-security/how-the-
government-is-using-malware-to-ensnare-child-porn-
users/2016/01/21/fb8ab5f8-bec0-11e5-83d4-
42e3bceea902_story.html; Mary-Ann Russon, FBI Crack Tor and
Catch 1,500 Visitors to Biggest Child Pornography Website on the
Dark Web, Int'l Bus. Times, Jan. 6, 2016,
http://www.ibtimes.co.uk/fbi-crack-tor-catch-1500-visitors-
biggest-child-pornography-website-dark-web-1536417.

the "Tor" network -- software designed to preserve users'
anonymity by masking their IP addresses.[3]  See Def.'s Mot., Ex.
3, Aff. Supp. Application Search Warrant ("Aff. Supp. NIT
Warrant") 10-12, ECF No. 44-3.

    As an initial step in their investigation, FBI agents
seized control of Website A in February 2015.  See id. at 21-23.
Rather than immediately shutting it down, agents opted to run
the site out of a government facility in the Eastern District of
Virginia for two weeks in order to identify -- and ultimately,
to prosecute -- users of Website A.  See id. at 23.  To do this

---

[3] "Tor," which stands for "The Onion Router," is "the main
browser people use to access" the "Darknet" -- "a specific part
of th[e] hidden Web where you can operate in total anonymity."
Going Dark: The Internet Behind the Internet, Nat'l Pub. Radio,
May 25, 2014, http://www.npr.org/sections/alltechconsidered/
2014/05/25/315821415/going-dark-the-internet-behind-the-
internet.  Tor itself is lawful and has various legitimate uses.
See id.  Indeed, it was developed by the United States Navy,
which continues to use it "as a means of communicating with
spies and informants[.]"  John Lanchester, When Bitcoin Grows
Up, 28 London R. Books No. 8, http://www.lrb.co.uk/v38/n08/john-
lanchester/when-bitcoin-grows-up.  Tor has, however, produced
difficulties for law enforcement officials, "especially those
pursuing child pornography, Internet fraud and black markets,"
since it allows criminals to evade detection.  Martin Kaste,
When a Dark Web Volunteer Gets Raided by the Police, Nat'l Pub.
Radio, April 4, 2016, http://www.npr.org/sections/alltechconside
red/2016/04/04/4729 92023/when-a-dark-web-volunteer-gets-raided-
by-the-police; see also Lanchester, supra (describing Tor as
"the single most effective web tool for terrorists, criminals
and paedos" and noting that it "gives anonymity and geographical
unlocatability to all its users").  At the same time, its legal
users have raised concerns about the privacy implications of
government "sting" operations on the Tor network.  See Kaste,
supra.

required the deployment of certain investigative tools.  See id.
at 23-24.

To that end, the government sought and obtained a series of
warrants.  First, on February 20, 2015, the government procured
an order pursuant to Title III from a district judge in the
Eastern District of Virginia permitting the government to
intercept communications between Website A users.  Def.'s Mot.,
Ex. 2 ("Title III Warrant"), ECF No. 44-2.  Second, also on that
date, the government obtained a warrant from a magistrate judge
in the Eastern District of Virginia to implement a Network
Investigative Technique ("NIT") that would allow the government
covertly to transmit computer code to Website A users.[4]  NIT
Warrant, ECF No. 44-3.  This computer code then generated a
communication from those users' computers to the government-
operated server containing various identifying information,
including those users' IP addresses.[5]  See Aff. Supp. NIT Warrant
24-26.

-------------------

[4] For a discussion of the government's recent use of these
types of warrants, see Brian L. Owsley, Beware of Government
Agents Bearing Trojan Horses, 48 Akron L. Rev. 315 (2015).

[5] The affidavit the government submitted in support of its
application for the NIT Warrant describes this process:

    In the normal course of operation, websites send
    content to visitors.  A user's computer downloads that
    content and uses it to display web pages on the user's
    computer.  Under the NIT authorized by this warrant,

Through the use of the NIT, government agents determined
that a Website A user called "Manakaralupa" had accessed several
images of child pornography in early March 2015, and they traced
the IP address of that user to Levin's home address in Norwood,
Massachusetts.  Def.'s Mot., Ex. 1 ("Residential Warrant"), Aff.
Supp. Application for Search Warrant ("Aff. Supp. Residential

---

> [Website A], which will be located . . . in the
> Eastern District of Virginia, would augment that
> content with additional computer instructions.  When a
> user's computer successfully downloads those
> instructions from [Website A] . . . the instructions,
> which comprise the NIT, are designed to cause the
> user's 'activating' computer to transmit certain
> information to a computer controlled by or known to
> the government.

Aff. Supp. NIT Warrant 24.  The particular information seized
pursuant to the NIT Warrant included:

> 1. the 'activating' computer's actual IP address, and
> the date and time that the NIT determines what that IP
> address is;
> 2. a unique identifier generated by the NIT (e.g., a
> series of numbers, letters, and/or special characters)
> to distinguish data from that of other 'activating'
> computers, that will be sent with and collected by the
> NIT;
> 3. the type of operating system running on the
> computer, including type (e.g., Windows), version
> (e.g., Windows 7), and architecture (e.g., x 86);
> 4. information about whether the NIT has already been
> delivered to the 'activating' computer;
> 5. the 'activating' computer's Host Name;
> 6. the 'activating' computer's active operating system
> username; and
> 7. the 'activating' computer's media access control
> ('MAC') address[.]

NIT Warrant, Attach. B (Information to be Seized).

Warrant") 11-12, ECF No. 44-1.  On August 11, 2015, law
enforcement officials obtained a third and final warrant (the
"Residential Warrant") from Magistrate Judge Bowler in this
District to search Levin's home.  See Residential Warrant.
Agents executed the Residential Warrant on August 12, 2015, and
in their search of Levin's computer, identified eight media
files allegedly containing child pornography.  See Compl., Ex.
2, Aff. Supp. Application Criminal Compl. ¶ 7, ECF No. 1-2.

    Levin was subsequently indicted on one count of possession
of child pornography, 18 U.S.C. § 2252A(a)(5)(B).  Indictment,
ECF No. 8.  He has since moved to suppress all evidence seized
pursuant to the NIT Warrant and the Residential Warrant.[6]  Def.'s
Mot.  After holding a hearing on March 25, 2016, the Court took
Levin's motion under advisement.  See Elec. Clerk's Notes, ECF
No. 62.

**III. ANALYSIS**

    In support of his motion to suppress, Levin contends that
the NIT Warrant violated the territorial restrictions on the
issuing magistrate judge's authority,[7] and further that the

---

    [6] The government does not contest Levin's argument that
absent the NIT Warrant, it would not have had probable cause to
support its Residential Warrant application, see Def.'s Mot. 14.
For the sake of simplicity, the Court uses the phrase "evidence
seized pursuant to the NIT Warrant" to include evidence seized
pursuant to the Residential Warrant because all of that evidence
is derivative of the NIT Warrant.

evidence obtained pursuant to the NIT Warrant must be suppressed
in light of law enforcement agents' deliberate disregard for the
applicable rules and the prejudice Levin suffered as a
consequence.  See Def.'s Mot. 6-7.  The government refutes each
of these arguments, and additionally argues that the good-faith
exception to the exclusionary rule renders suppression
inappropriate.  See Gov't's Resp. 1.

### A.    Magistrate Judge's Authority Under the Federal Magistrates Act and Rule 41(b)

Levin argues that the issuance of the NIT Warrant ran afoul
of both Section 636(a) of the Federal Magistrates Act and Rule
41(b) of the Federal Rules of Criminal Procedure.  See Def.'s
Mot. 5-7, 12.  The conduct underlying each of these alleged
violations is identical: the magistrate judge's issuance of a
warrant to search property located outside of her judicial

---

[7] A more precise characterization of Levin's challenge would
be that the magistrate judge who issued the NIT Warrant had no
authority to do so under the relevant statutory framework and
federal rules -- not that the issuance of the warrant "violated"
these provisions, by, for example, failing to comply with
procedural requirements.  In the Court's view, this distinction
is meaningful, see infra Part III(B)(1), though it is one that
neither the parties nor other courts evaluating similar
challenges seem to appreciate, see, e.g., United States v.
Michaud, No. 3:15-cr-05351-RJB, 2016 WL 337263 at *5-*7 (W.D.
Wash. Jan. 28, 2016) (discussing whether the NIT Warrant
"violates" Federal Rule of Criminal Procedure 41(b)).  In the
interest of consistency with the parties' briefings and prior
caselaw, however, the Court continues the tradition of referring
to actions by a magistrate judge that fall outside the scope of
her authority as "violations" of the provisions that confer such
authority.

district.  See id.  Moreover, because Section 636(a) expressly incorporates any authorities granted to magistrate judges by the Federal Rules of Criminal Procedure, see infra Part III(A)(1), the Court's analyses of whether the NIT Warrant was statutorily permissible and whether it was allowed under Rule 41(b) are necessarily intertwined.

### 1.  Federal Magistrates Act

Section 636(a) of the Federal Magistrates Act establishes "jurisdictional limitations on the power of magistrate judges[.]"  United States v. Krueger, 809 F.3d 1109, 1122 (10th Cir. 2015) (Gorsuch, J., concurring).  It provides, in relevant part:

> (a) Each United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law--
>
> > (1) all powers and duties conferred or imposed . . . by law or by the Rules of Criminal Procedure[.]

28 U.S.C. § 636(a).  Levin argues that the magistrate judge's issuance of a warrant to search property outside of her judicial district violated the territorial restrictions provided in the first paragraph of Section 636(a).  Def.'s Mot. 12.  In other words, because the NIT Warrant approved a search of property outside the Eastern District of Virginia ("the district in which sessions are held by the court that appointed the magistrate"),

and neither of the other clauses in the first paragraph of
Section 636(a) applies, Levin contends that the magistrate judge
lacked jurisdiction to issue it.  <u>See</u> <u>id.</u>  The government, for
its part, notes that Levin does not meaningfully distinguish
between the requirements of the statute and of Rule 41(b), and
advances the same arguments to support the magistrate judge's
authority to issue the NIT Warrant under Section 636(a) and
under Rule 41(b).  Gov't's Resp. 21.

As discussed in more detail <u>infra</u> Part III(A)(2)(i), the
Court is persuaded by Levin's argument that the NIT Warrant
indeed purported to authorize a search of property located
outside the district where the issuing magistrate judge sat.
The magistrate judge had no jurisdiction to issue such a warrant
under the first paragraph of Section 636(a).  The Court also
concludes that Section 636(a)(1) is inapposite because Rule
41(b) did not confer on the magistrate judge authority to issue
the NIT Warrant Levin challenges here, <u>see</u> <u>infra</u> Part III(A)(2),
and the government points to no other "law or . . . Rule[] of
Criminal Procedure" on which the magistrate judge could have
based its jurisdiction pursuant to Section 636(a)(1), <u>see</u> <u>infra</u>
note 11.  Consequently, the Court holds that the Federal
Magistrates Act did not authorize the magistrate judge to issue
the NIT Warrant here.

**2.   Rule 41(b)**

[ 9 ]

Rule 41(b), titled "Authority to Issue a Warrant,"

provides as follows:

At the request of a federal law enforcement officer or an attorney for the government:

(1) a magistrate judge with authority in the district -- or if none is reasonably available, a judge of a state court of record in the district -- has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

(3) a magistrate judge -- in an investigation of domestic terrorism or international terrorism -- with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both; and

(5) a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:

(A) a United States territory, possession, or commonwealth;

(B) the premises -- no matter who owns them -- of a United States diplomatic or consular mission in a foreign state, including any appurtenant

[10]

> building, part of a building, or land used for
> the mission's purposes; or
>
> (C) a residence and any appurtenant land owned or
> leased by the United States and used by United
> States personnel assigned to a United States
> diplomatic or consular mission in a foreign
> state.

Fed. R. Crim. P. 41(b).

The government argues for a liberal construction of Rule 41(b) that would authorize the type of search that occurred here pursuant to the NIT Warrant. <u>See</u> Gov't's Resp. 18-20. Specifically, it argues that subsections (1), (2), and (4) of Rule 41(b) are each sufficient to support the magistrate judge's issuance of the NIT Warrant. <u>Id.</u> This Court is unpersuaded by the government's arguments. Because the NIT Warrant purported to authorize a search of property located outside the Eastern District of Virginia, and because none of the exceptions to the general territorial limitation of Rule 41(b)(1) applies, the Court holds that the magistrate judge lacked authority under Rule 41(b) to issue the NIT Warrant.

### i.   Rule 41(b)(1)

The government advances two distinct lines of argument as to why Rule 41(b)(1) authorizes the NIT Warrant. One is that all of the property that was searched pursuant to the NIT Warrant was actually located within the Eastern District of Virginia, where the magistrate judge sat: since Levin -- as a

user of Website A -- "retrieved the NIT from a server in the
Eastern District of Virginia, and the NIT sent [Levin's] network
information back to a server in that district," the government
argues the search it conducted pursuant to the NIT Warrant
properly can be understood as occurring within the Eastern
District of Virginia.  Gov't's Resp. 20.  This is nothing but a
strained, after-the-fact rationalization.  In its explanation of
the "Place to be Searched," the NIT Warrant made clear that the
NIT would be used to "obtain[] information" from various
"activating computers[.]"[8]  NIT Warrant 32.  As is clear from
Levin's case -- his computer was located in Massachusetts -- at
least some of the activating computers were located outside of
the Eastern District of Virginia.  That the Website A server is
located in the Eastern District of Virginia is, for purposes of
Rule 41(b)(1), immaterial, since it is not the server itself
from which the relevant information was sought.  See United
States v. Michaud, No. 3:15-cr-05351-RJB, 2016 WL 337263 at *6
(W.D. Wash. Jan. 28, 2016) (examining the permissibility of the

---

[8] That the cover page of the NIT Warrant application
indicated that the property to be searched was located in the
Eastern District of Virginia, see NIT Warrant 1, does not alter
this conclusion.  See Michaud, 2016 WL 337263 at *4 (observing
that to read this NIT Warrant as authorizing a search of
property located exclusively within the Eastern District of
Virginia, on the basis of its cover page, is "an overly narrow
reading of the NIT Warrant that ignores the sum total of its
content.").

same NIT Warrant and concluding that Rule 41(b)(1) did not authorize the search "because the object of the search and seizure was Mr. Michaud's computer, not located in the Eastern District of Virginia").

The government's other argument is that where, as here, it is impossible to identify in advance the location of the property to be searched, Rule 41(b)(1) ought be interpreted to allow "a judge in the district with the strongest known connection to the search" to issue a warrant. See Gov't's Resp. 20. This argument fails, though, because it adds words to the Rule. See Lopez-Soto v. Hawayek, 175 F.3d 170, 173 (1st Cir. 1999) ("Courts have an obligation to refrain from embellishing statutes by inserting language that Congress opted to omit.").

### ii. Rule 41(b)(2)

Rule 41(b)(2) confers on magistrate judges the authority "to issue a warrant of a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed." Fed. R. Crim. P. 41(b)(2). The government argues that because the NIT (i.e., the computer code used to generate the identifying information from users' computers) was located in the Eastern District of Virginia at the time the warrant was issued, this subsection applies. Gov't's Resp. 19. As discussed above, however, the

[13]

actual property to be searched was not the NIT nor the server on which it was located, but rather the users' computers. Therefore, Rule 41(b)(2) is inapposite.

### iii. Rule 41(b)(4)

The Court is similarly unpersuaded by the government's argument regarding Rule 41(b)(4), which authorizes magistrate judges in a particular district "to issue a warrant to install within the district a tracking device," even where the person or property on whom the device is installed later moves outside the district, see Fed. R. Crim. P. 41(b)(4). The government likens the transmittal of the NIT to Website A users' computers to the installation of a tracking device in a container holding contraband, insofar as each permits the government to identify the location of illegal material that has moved outside the relevant jurisdiction. Gov't's Resp. 19-20. This analogy does not persuade the Court that the NIT properly may be considered a tracking device, regardless of where the "installation" occurred.[9]

_____

[9] Indeed, as the court pointed out in Michaud, which involved the same NIT Warrant:

If the 'installation' occurred on the government-controlled computer, located in the Eastern District of Virginia, applying the tracking device exception breaks down, because [users of Website A] never controlled the government-controlled computer, unlike a car with a tracking device leaving a particular district. If the installation occurred on [the

**B.    Suppression**

Having concluded that neither the Federal Magistrates Act
nor Rule 41(b) authorized the issuance of the NIT Warrant, the
Court now turns to the question of whether suppression of the
evidence obtained pursuant to the NIT Warrant is an appropriate
remedy.  Levin argues that this evidence ought be suppressed
because the magistrate judge lacked jurisdiction to issue the
NIT Warrant and because Levin was prejudiced by the Rule 41
violation.  Def.'s Mot. 13-14.  The government argues that even
if the issuance of the NIT Warrant was not sanctioned by Rule 41
or Section 636(a), suppression is too extreme a remedy, as any
violation of the relevant rule or statute was merely ministerial
and there was no resulting prejudice to Levin.  Gov't's Resp.

---

individual Website A user's] computer, applying the
tracking device exception again fails, because [the
user's] computer was never physically located within
the Eastern District of Virginia.

2016 WL 337263 at *6.  In any case, the Court is persuaded by
the Southern District of Texas's interpretation of
"installation."  See In re Warrant to Search a Target Computer
at Premises Unknown, 958 F.Supp.2d 753, 758 (S.D. Tex. 2013)
(rejecting government's application for a warrant remotely to
extract identifying information from a computer in an unknown
location, noting that "there is no showing that the installation
of the 'tracking device' (i.e. the software) would take place
within this district.  To the contrary, the software would be
installed on a computer whose location could be anywhere on the
planet.").  Under that approach, the "installation" of the NIT
occurred not within the Eastern District of Virginia, where the
server is located, but rather at the site of each user's
computer.  See id.

16.   Further, the government contends that the good-faith
exception to the exclusionary rule ought preclude suppression of
the evidence seized.  Id. at 21-23.

     The Court concludes that the violation at issue here is
distinct from the technical Rule 41 violations that have been
deemed insufficient to warrant suppression in past cases, and,
in any event, Levin was prejudiced by the violation.  Moreover,
the Court holds that the good-faith exception is inapplicable
because the warrant at issue here was void ab initio.

### 1.   Nature of the Rule 41 Violation

     A violation of Rule 41 that is purely technical or
ministerial gives rise to suppression only where the defendant
demonstrates that he suffered prejudice as a result of the
violation.  See United States v. Bonner, 808 F.2d 864, 869 (1st
Cir. 1986).  The government apparently submits that all Rule 41
violations "are essentially ministerial," and accordingly that
suppression is an inappropriate remedy absent a showing of
prejudice.  Gov't's Resp. 16 (citing United States v. Burgos-
Montes, 786 F.3d 92, 109 (1st Cir. 2015)).

     Rule 41, however, has both procedural and substantive
provisions -- and the difference matters.  Courts faced with
violations of Rule 41's procedural requirements have generally
found such violations to be merely ministerial or technical, and

[16]

as a result have determined suppression to be unwarranted.[10]  By
contrast, this case involves a violation of Rule 41(b), which is
"a substantive provision[.]"  United States v. Berkos, 543 F.3d
392, 398 (7th Cir. 2008); see also United States v. Krueger, 809
F.3d 1109, 1115 n.7 (10th Cir. 2015) (noting that Rule 41(b)(1)
"is unique from other provisions of Rule 41 because it
implicates substantive judicial authority," and accordingly
concluding that past cases involving violations of other
subsections of Rule 41 "offer limited guidance") (internal
quotation marks and citation omitted).  Thus, it does not follow
from cases involving violations of Rule 41's procedural
provisions that the Rule 41(b) violation at issue here -- which
involves the authority of the magistrate judge to issue the
warrant, and consequently, the underlying validity of the

_____

[10] These violations implicate the various subsections of
Rule 41, with the exception of subsection (b).  See, e.g.,
Burgos-Montes, 786 F.3d at 108-09 (magistrate judge's "failure .
. . to define the time period of the search when the form itself
provides that the search is to be completed within [10 days],
and . . . failure to designate a magistrate to whom the form
should be returned" was technical violation of Rule 41(e));
Bonner, 808 F.2d at 869 (officers' failure to comply with Rule
41(f) requirement of leaving a copy of the warrant at the place
to be searched was ministerial and did not call for suppression
of resulting evidence); United States v. Dauphinee, 538 F.2d 1,
3 (1st Cir. 1976) ("The various procedural steps required by
Rule 41(d) are basically ministerial[,]" and therefore
suppression of evidence obtained in violation of that provision
was not warranted absent showing of prejudice); United States v.
Pryor, 652 F.Supp. 1353, 1365-66, (D. Me. 1987) (violation of
Rule 41(c)'s procedural requirements regarding nighttime
searches did not call for suppression).

warrant -- was simply ministerial.  See United States v. Glover,
736 F.3d 509, 515 (D.C. Cir. 2013) (concluding that a Rule 41(b)
violation constitutes a "jurisdictional flaw" that cannot "be
excused as a 'technical defect'").

Because the violation here involved "substantive judicial
authority" rather than simply "the procedures for obtaining and
issuing warrants," Krueger, 809 F.3d at 1115 n.7, the Court
cannot conclude that it was merely ministerial; in fact, because
Rule 41(b) did not grant her authority to issue the NIT warrant,
the magistrate judge was without jurisdiction to do so.[11]  The
government characterizes Levin's challenge as targeting "the
location of the search, not probable cause or the absence of
judicial approval."  Gov't's Resp. 16.  Here, however, because
the magistrate judge lacked authority, and thus jurisdiction, to
issue the NIT Warrant, there simply was no judicial approval.
See United States v. Houston, 965 F.Supp.2d 855, 902 n.12 (E.D.
Tenn. 2013) ("A search warrant issued by an individual without

---

[11] For the magistrate judge to have had jurisdiction to
issue the warrant under Section 636(a), she must have had
authority to do so under Rule 41(b), as the government has
pointed to no alternative statutory authority or federal rule
that could serve as the basis for such jurisdiction.  Moreover,
the government's argument regarding courts' inherent authority
to issue warrants, see Gov't's Resp. 20-21, does not extend to
magistrate judges, whose authority derives from -- and is
bounded by -- the specific statutory provisions and rules
discussed herein.

legal authority to do so is 'void <u>ab initio</u>'") (quoting <u>United
States</u> v. <u>Master</u>, 614 F.3d 236, 241 (6th Cir. 2010)); <u>United
States</u> v. <u>Peltier</u>, 344 F.Supp.2d 539, 548 (E.D. Mich. 2004) ("A
search warrant signed by a person who lacks the authority to
issue it is void as a matter of law.") (citation omitted); <u>cf.</u>
<u>State</u> v. <u>Surowiecki</u>, 440 A.2d 798, 799 (Conn. 1981) ("[A] lawful
signature on the search warrant by the person authorized to
issue it [is] essential to its issuance[,]" such that an
unsigned warrant is void under state law and confers no
authority to act, despite existence of probable cause).

NITs, while raising serious concerns,[12] are legitimate law
enforcement tools.  Indeed, perhaps magistrate judges should
have the authority to issue these types of warrants.  <u>See</u> <u>In re
Warrant to Search a Target Computer at Premises Unknown</u>, 958
F.Supp.2d at 761 (noting that "there may well be a good reason

---

[12] The Court expresses no opinion on the use of this
particular police tactic under these circumstances, but notes
that its use in the context of investigating and prosecuting
child pornography has given rise to significant debate.  <u>See,
e.g.</u>, <u>The Ethics of a Child Pornography Sting</u>, N.Y. Times, Jan.
27, 2016, http://www.nytimes.com/roomfordebate/2016/01/27/the-
ethics-of-a-child-pornography-sting.  The continuing harm to the
victims of this hideous form of child abuse is the distribution
of the photographs and videos in which the victims appear.  <u>See,
e.g.</u>, <u>United States</u> v. <u>Kearney</u>, 672 F.3d 81, 94 (1st Cir. 2012)
(internal citations omitted).  Unlike those undercover stings
where the government buys contraband drugs to catch the dealers,
here the government disseminated the child obscenity to catch
the purchasers -- something akin to the government itself
selling drugs to make the sting.

to update the territorial limits of [Rule 41] in light of

advancing computer search technology").[13]  Today, however, no

---

[13] Whether magistrate judges should have the authority to issue warrants to search property located outside of their districts under circumstances like the ones presented here has been the subject of recent deliberations by the Advisory Committee on Criminal Rules.  See Memorandum from Hon. Reena Raggi, Advisory Committee on Criminal Rules, to Hon. Jeffrey S. Sutton, Chair, Committee on Rules of Practice and Procedure ("Raggi Mem.") (May 5, 2014); Letter from Mythili Raman, Acting Assistant Attorney General, to Hon. Reena Raggi, Chair, Advisory Committee on the Criminal Rules ("Raman Letter") (Sept. 18, 2013); cf. Zach Lerner, A Warrant to Hack: An Analysis of the Proposed Amendments to Rule 41 of the Federal Rules of Criminal Procedure, 18 Yale J. L. & Tech. 26 (2016).  As Levin points out in his motion, see Def.'s Mot. 18-19, the following proposed amendment to Rule 41(b) is currently under consideration:

(6)  a magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district if:

(A)  the district where the media or information is located has been concealed through technological means; or

(B)  in an investigation of a violation of 18 U.S.C. § 1030(a)(5), the media are protected computers that have been damaged without authorization and are located in five or more districts.

Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure 337-38 ("Proposed Rule 41 Amendment"), Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (August 2014), http://www.uscourts.gov/file/preliminary-draft-proposed-amendments-federal-rules-appellate-bankruptcy-civil-and-criminal.

magistrate judge has the authority to issue this NIT warrant.
Accordingly, the warrant here was void.

### 2.   Prejudice

Even were the Court to conclude that the Rule 41(b)
violation was ministerial, suppression would still be
appropriate, as Levin has demonstrated that he suffered
prejudice.  See Burgos-Montes, 786 F.3d at 109 (a Rule 41
violation "does not require suppression unless the defendant can
demonstrate prejudice") (emphasis added); cf. Krueger, 809 F.3d
at 1117 (affirming district court's order granting defendant's
motion to suppress "[b]ecause [the defendant] met his burden of
establishing prejudice and because suppression furthers the
purpose of the exclusionary rule by deterring law enforcement
from seeking and obtaining warrants that clearly violate Rule

_____

Proponents of the amendment contend that it ought be
adopted in order "to address two increasingly common
situations: (1) where the warrant sufficiently describes
the computer to be searched but the district within which
that computer is located is unknown, and (2) where the
investigation requires law enforcement to coordinate
searches of numerous computers in numerous districts."
Raman Letter 1.
While the Advisory Committee on Criminal Rules
unanimously approved the proposed amendment, Raggi Mem. 5,
it has drawn criticism from stakeholders ranging from the
American Civil Liberties Union, see Letter from American
Civil Liberties Union to Members of the Advisory Committee
on Criminal Rules (Oct. 31, 2014), to Google, see Letter
from Richard Salgado, Director, Law Enforcement and
Information Security, Google Inc., to Judicial Conference
Advisory Committee on Criminal Rules (Feb. 13, 2015).

41(b)(1)").  "To show prejudice, defendants must show that they

were subjected to a search that might not have occurred or would

not have been so abrasive had Rule 41[] been followed."[14]

Bonner, 808 F.2d at 869.  Here, had Rule 41(b) been followed,

the magistrate judge[15] would not have issued the NIT Warrant, and

therefore the search conducted pursuant to that Warrant might

_____

[14] Courts outside this district faced with Rule 41(b)
violations have considered (and in some cases, adopted)
alternative formulations of the prejudice inquiry.  See, e.g.,
Krueger, 809 F.3d at 1116 (evaluating government's proposed
prejudice standard, "which would preclude defendants from
establishing prejudice in this context so long as the
[g]overnment hypothetically could have obtained the warrant from
a different federal magistrate judge with warrant-issuing
authority under the Rule"); Michaud, 2016 WL 337263 at *6-7.  In
Michaud, the court reasoned that the most "sensible
interpretation" of the prejudice standard in this context is
asking "whether the evidence obtained from a warrant that
violates Rule 41(b) could have been available by other lawful
means[.]"  2016 WL 337263 at *6 (emphasis added).  This Court
respectfully declines to follow the Michaud court's approach,
instead adhering to the prejudice standard generally applicable
to Rule 41 violations.  Cf. Krueger, 809 F.3d at 1116 (rejecting
government's proposed prejudice standard, which "would preclude
defendants from establishing prejudice in this context so long
as the Government hypothetically could have obtained the warrant
from a different federal magistrate judge with warrant-issuing
authority under the Rule[,]" reasoning that "[w]hen it comes to
something as basic as who can issue a warrant, we simply cannot
accept such a speculative approach" and that instead the
standard "should be anchored to the facts as they actually
occurred").

[15] This is not to say that a district judge could not have
issued the NIT Warrant, since Rule 41(b) and Section 636(a) bear
only on the authority of magistrate judges to issue warrants.
See infra Part III(B)(4).

[22]

not have occurred.[16] See Krueger, 809 F.3d at 1116 (holding that
defendant suffered prejudice as a result of having been
subjected to a search that violated Rule 41(b), since that
search "might not have occurred because the Government would not
have obtained [the warrant] had Rule 41(b)(1) been followed.").
Contrast United States v. Scott, 83 F.Supp.2d 187, 203 (D. Mass.
2000) (Rule 41(d) violation did not prejudice defendant, since
"the nature of the search would not have changed even if [the
defendant] had been given a copy of the warrant prior to the
search, as required under the rules); United States v. Jones,
949 F.Supp.2d 316, 323 (D. Mass. 2013) (Saris, C.J.) (law
enforcement officer's failure to leave the defendant with a copy
of the warrant, as required by Rule 41(f), was not prejudicial).

To rebut Levin's prejudice argument, the government appears
to ignore the NIT Warrant altogether, baldly stating that
"[w]here there is probable cause, judicial approval, and the
computer server which the defendant accessed to view child
pornography was physically located in the jurisdiction where the
issuing magistrate was located, there can be no prejudice to the

---

[16] It follows from this that the government might not have
obtained the evidence it seized pursuant to the Residential
Warrant, since the application for that warrant was based on
information it acquired through the execution of the NIT
Warrant.  As the government itself points out, it "had no way to
know where the defendant was without first using the NIT[.]"
Gov't's Resp. 15.

defendant." Gov't's Resp. 16. Simply put, this is not the standard for determining prejudice, and the government directs the Court to no authority to support its assertion. Moreover, as discussed above, the Rule 41(b) violation here had the effect of vitiating the purported judicial approval so, even by this standard, the government's argument against prejudice must fail.

### 3. Good-Faith Exception

Finally, the government argues that, even if the NIT Warrant violated the Federal Magistrates Act and Rule 41(b), the Court ought not exclude the evidence seized pursuant to the NIT Warrant because the law enforcement officers here acted in good faith. See Gov't's Resp. 21 (citing United States v. Leon, 468 U.S. 897, 918, 926 (1984)). Whether the good-faith exception applies where a warrant was void is a question of first impression in this Circuit, and an unresolved question more broadly. See Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 1.3(f) n.60 ("It is unclear whether the [Leon good-faith] rule extends to a warrant 'that was essentially void ab initio' because of 'the issuing court's lack of jurisdiction to authorize the search in the first instance.'") (quoting United States v. Baker, 894 F.2d 1144, 1147 (10th Cir. 1990)). This Court holds that it does not.

In Leon, the Supreme Court held that suppression was unwarranted where evidence was obtained pursuant to a search

warrant that was later determined to be unsupported by probable cause, since the executing officers acted in objectively reasonable reliance on the warrant's validity.  See 468 U.S. at 922.  In reaching this conclusion, the Supreme Court observed that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate judge's determination."  Id. at 914 (internal quotation marks and citation omitted).

Leon contains not the slightest suggestion, however, that the same deference ought apply when magistrate judges determine their own jurisdiction.  Indeed, the Supreme Court's conclusion presupposes that the issuing magistrate judge was authorized to issue the challenged warrant.  Cf. United States v. Houston, No. 3:13-09-DCR, 2014 WL 259085 at *26 n.14 (E.D. Tenn. Jan. 23, 2014) (where a warrant is "void ab initio . . . the [c]ourt never reaches the question of whether the search warrant is supported by probable cause") (internal citation omitted).  Moreover, Leon deals explicitly with a "subsequently invalidated warrant," 468 U.S. at 918 (emphasis added), rather than a warrant that was void at the time of its issuance.  The latter

raises qualitatively different concerns, as several post-<u>Leon</u> courts have recognized.[17]

Over the years since <u>Leon</u>, the Supreme Court has expanded the good-faith exception to contexts beyond those <u>Leon</u> specifically addressed.[18]  None of the Supreme Court's post-<u>Leon</u> good-faith cases, however, involved a warrant that was void <u>ab initio</u>, and therefore none direct the conclusion that the good-

---

[17] Courts interpreting the scope of <u>Leon</u> have repeatedly held or acknowledged in dicta that where evidence is obtained pursuant to a warrant that is void <u>ab initio</u>, the good-faith exception has no application.  <u>See, e.g.</u>, <u>State</u> v. <u>Wilson</u>, 618 N.W.2d 513, 520 (S.D. 2000) (holding that good-faith exception could not save evidence obtained pursuant to warrant issued by state judge acting outside territorial jurisdiction, since "[a]ctions by a police officer cannot be used to create jurisdiction, even when done in good faith"); <u>State</u> v. <u>Nunez</u>, 634 A.2d 1167, 1171 (R.I. 1993) (stating in dicta that <u>Leon</u> good-faith exception "would be inapplicable to this case because" it involved a warrant issued by a retired judge without authority to do so, and thus was "void <u>ab initio</u>"); <u>Commonwealth</u> v. <u>Shelton</u>, 766 S.W.2d 628, 629-30 (Ky. 1989) (noting in dicta that <u>Leon</u> would not be applicable since "in the case at bar, we are not confronted with a technical deficiency; but rather a question of jurisdiction"); <u>United States</u> v. <u>Vinnie</u>, 683 F.Supp. 285, 288-89 (D. Mass. 1988) (Skinner, J.) (holding <u>Leon</u>'s good-faith exception inapplicable since the case involved not the "determination of what quantum of evidence constitutes probable cause" but rather "the more fundamental problem of a magistrate judge acting without subject matter jurisdiction").

[18] <u>Leon</u>, along with its companion case, <u>Massachusetts</u> v. <u>Sheppard</u>, 468 U.S. 981 (1984), "contemplated two circumstances: one in which a warrant is issued and is subsequently found to be unsupported by probable cause and the other in which a warrant is supported by probable cause, but is technically deficient." <u>Vinnie</u>, 683 F.Supp. at 288.

[26]

faith exception ought apply to this case.[19]  This Court is aware
of only one federal circuit court to address the question of
whether Leon's good-faith exception applies in these
circumstances: the Sixth Circuit.  See Master, 614 F.3d 236;
United States v. Scott, 260 F.3d 512 (6th Cir. 2001).  Scott
involved a search warrant issued by a retired judge who lacked
authority to do so.  260 F.3d at 513.  After holding that such
warrant was necessarily void ab initio, id. at 515, the court
concluded that, "[d]espite the dearth of case law, we are
confident that Leon did not contemplate a situation where a

---

[19] The good-faith exception has been held to apply where
officers execute a warrant in reliance on existing law.  See
Davis v. United States, 131 S. Ct. 2419 (2011) (good-faith
exception precluded suppression of evidence obtained through a
search incident to arrest that was proper under binding
appellate precedent at the time of the search but which was
later held to be unlawful); Illinois v. Krull, 480 U.S. 340
(1987) (good-faith exception applied to a warrantless
administrative search conducted pursuant to a statute later
found to be unconstitutional, where the officer's reliance on
the constitutionality of the statute was objectively
reasonable).  Unlike in those cases, here there was no
"intervening change in the law that made the good-faith
exception relevant."  United States v. Wurie, 728 F.3d 1 (1st
Cir. 2013).
    The Supreme Court has also applied the good-faith exception
in circumstances involving one-off mistakes of fact that
implicate the validity of a warrant at the time of its
execution.  See Herring v. United States, 555 U.S. 135 (2009)
(good-faith exception applied to evidence improperly obtained as
a result of law enforcement's negligent record-keeping
practices); Arizona v. Evans, 514 U.S. 1 (1995) (evidence seized
in violation of the Fourth Amendment as a result of a clerical
error on the part of court personnel was covered by good-faith
exception and thus did not warrant suppression).  Here, in
contrast, the warrant was void at its inception.

warrant is issued by a person lacking the requisite legal authority." Id.

Nine years later, the Sixth Circuit effectively reversed itself in Master, which involved a warrant issued by a state judge to search property outside his district, which was unauthorized under Tennessee law. 614 F.3d at 239. The court held that the warrant was invalid for the same reason as was the warrant in Scott,[20] id. at 240, but that the good-faith exception to the exclusionary rule applied because Scott's reasoning was "no longer clearly consistent with current Supreme Court doctrine." Id. at 242. In particular, it noted that "[t]he Supreme Court has effectively created a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, 'the benefits of deterrence must outweigh the costs.'" Id. at 243 (quoting Herring v. United States, 555 U.S. 135, 142 (2009)).

The Master court read the Supreme Court's recent good-faith cases too broadly.[21] This Court is persuaded instead by the

---

[20] The difference between the issuer of the warrant in Scott and in Master -- namely, a retired judge with "no authority to approve any warrants," and an active judge with authority to issue warrants within his district, respectively -- was "immaterial" for the purpose of determining whether the warrant was valid. Master, 614 F.3d at 240.

[21] Even in Master, it should be noted, the court acknowledged that the recent Supreme Court cases addressing the

rationale in Scott and cases applying the holding of that
decision, see, e.g., United States v. Neering, 194 F.Supp.2d 620
(E.D. Mich. 2002) (warrant issued by an official who was not
properly appointed and therefore lacked issuing authority was
void, and under Scott, the good-faith exception did not apply).
Neither Hudson nor Herring -- both of which the Master court
cited in support of its conclusion that Scott's holding is no
longer tenable, see 614 F.3d at 242 -- requires the conclusion
that the good-faith exception applies to evidence seized
pursuant to a warrant that was void ab initio.[22]

---

good-faith exception "do[] not directly overrule our previous
decision in Scott."  614 F.3d at 243.

[22] In Hudson, 547 U.S. 586 (2006), the Supreme Court held
that suppression was not an appropriate remedy for a violation
of the knock-and-announce rule.  See id. at 599.  In reaching
this conclusion, the plurality explicitly distinguished the
interests protected by the warrant requirement and the knock-
and-announce requirement.  See id. at 593.  With respect to the
warrant requirement, it noted that "[u]ntil a valid warrant has
issued, citizens are entitled to shield their persons, houses,
papers, and effects . . . from the government's scrutiny[,]" and
that "[e]xclusion of the evidence obtained by a warrantless
search vindicates that entitlement."  Id. (internal quotation
marks and citations omitted) (emphasis added).  As no valid
warrant was ever issued here, and the government does not argue
that an exception to the warrant requirement applies, exclusion
is appropriate.
     Herring, too, is distinguishable.  There, law enforcement
officers executed an arrest warrant that had been rescinded.
555 U.S. at 138.  The Supreme Court held that since the mistake
was attributable to "isolated negligence attenuated from the
arrest" -- specifically, a recordkeeping error -- the good-faith
exception to the exclusionary rule applied.  Id. at 137.
Although that case makes much of the connection between the
exclusionary rule and the goal of deterrence and culpability of

Because a warrant that was void at the outset is akin to no warrant at all, cases involving the application of the good-faith exception to evidence seized pursuant to a warrantless search are especially instructive.  In United States v. Curzi, 867 F.2d 36 (1st Cir. 1989), the First Circuit declined to "recognize[] a good-faith exception in respect to warrantless searches."  Id. at 44.[23]  To hold that the good-faith exception is applicable here would collapse the distinction between a voidable and a void warrant.  But this distinction is meaningful: the former involves "judicial error," such as "misjudging the sufficiency of the evidence or the warrant

---

law enforcement, see id. at 141-43, it says nothing about whether the same calculus ought apply where there was never jurisdiction to issue a valid warrant in the first place.

[23] While no case has directly disturbed this holding, the First Circuit has since held that the good-faith exception may exempt from exclusion evidence seized pursuant to an unconstitutional warrantless search "'conducted in objectively reasonable reliance on binding appellate precedent[.]'"  United States v. Sparks, 711 F.3d 58, 62 (1st Cir. 2013) (quoting Davis, 131 S.Ct. at 2434).  Cases like Sparks, though, are readily distinguishable: the officers in Sparks were entitled to rely on circuit precedent indicating that they could conduct the challenged search without a warrant; by contrast, here no binding appellate precedent authorized the officers to undertake the search either without a warrant or pursuant to one that was void at the outset.  To determine whether the good-faith exception applied in Sparks, the court asked: "what universe of cases can the police rely on?  And how clearly must those cases govern the current case for that reliance to be objectively reasonable?"  711 F.3d at 64.  Such questions are wholly inapposite here.

application's fulfillment of the statutory requirements[,]"
while the latter involves "judicial <u>authority</u>," <u>i.e.</u>, a judge
"act[ing] outside of the law, outside of the authority granted
to judges in the first place."  <u>State</u> v. <u>Hess</u>, 770 N.W.2d 769,
776 (Ct. App. Wis. 2009) (emphasis added); <u>cf.</u> <u>Scott</u>, 260 F.3d
at 515 ("<u>Leon</u> presupposed that the warrant was issued by a
magistrate or judge clothed in the proper legal authority,
defining the issue as whether the exclusionary rule applied to
'evidence obtained by officers acting in reasonable reliance on
a search warrant <u>issued by a detached and neutral magistrate</u> but
ultimately found to be unsupported by probable cause.'")
(quoting <u>Leon</u>, 468 U.S. at 900); <u>State</u> v. <u>Vickers</u>, 964 P.2d 756,
762 (Mont. 1998) (distinguishing <u>Leon</u> and concluding that "[i]f
a search warrant is void <u>ab initio</u>, the inquiry stops and all
other issues pertaining to the validity of the search warrant,
such as whether the purpose of the exclusionary rule is served,
are moot.").  Were the good-faith exception to apply here,
courts would have to tolerate evidence obtained when an officer
submitted something that reasonably looked like a valid warrant
application, to someone who, to the officer, appeared to have
authority to approve that warrant application.  <u>Cf.</u> <u>Krueger</u>, 809
F.3d at 1126 (Gorsuch, J., concurring).  This Court holds that

[31]

such an expansion of the good-faith exception is improvident, and not required by current precedent.[24]

Even were the Court to hold that the good-faith exception _could_ apply to circumstances involving a search pursuant to a warrant issued without jurisdiction, it would decline to rule such exception applicable here.  For one, it was not objectively reasonable for law enforcement -- particularly "a veteran FBI agent with 19 years of federal law enforcement experience[,]" Gov't's Resp. 7-8 -- to believe that the NIT Warrant was properly issued considering the plain mandate of Rule 41(b).  See Glover, 736 F.3d at 516 ("[I]t is quite a stretch to label the government's actions in seeking a warrant so clearly in violation of Rule 41 as motivated by 'good faith.'"); cf. United States v. McKeever, 894 F.2d 712, 717 (5th Cir. 1990) (good-faith exception did not apply where sheriff "who was the prime mover in obtaining and executing the search . . . knew both that

---

[24] While the exclusionary rule has its detractors, see, e.g., Akhil Reed Amar, Fourth Amendment First Principles, 107 Harv. L. Rev. 757, 785-800 (1994) (arguing that suppression is an "awkward and embarrassing remedy" that is unsupported by the text of the Fourth Amendment), "when a criminal conviction is predicated on a violation of the Constitution's criminal procedure requirements, including the Fourth Amendment, the conviction works an ongoing deprivation of liberty without due process," Richard M. Re, The Due Process Exclusionary Rule, 127 Harv. L. Rev. 1885, 1887 (2014); see also Carol S. Steiker, Second Thoughts About First Principles, 107 Harv. L. Rev. 820, 848-852 (1994).

he had to obtain a warrant from a court of record . . . and that [the issuing judge] was not a judge of a court of record.").[25]

Moreover, even analyzed under <u>Herring</u>, the conduct at issue here can be described as "systemic error or reckless disregard of

---

[25] In its oral argument opposing this motion, Elec. Clerk's Notes, ECF No. 62, the government indicated that the particular officers executing the search cannot be charged with the knowledge that the warrant was issued in violation of the Federal Magistrates Act and Rule 41(b).  But it would be incongruous to view these officers' conduct in isolation.  As Professor Amsterdam articulated:

> [S]urely it is unreal to treat the offending officer as a private malefactor who just happens to receive a government paycheck.  It is the government that sends him out on the streets with the job of repressing crime and of gathering criminal evidence in order to repress it.  It is the government that motivates him to conduct searches and seizures as a part of his job, empowers him and equips him to conduct them.  If it also receives the products of those searches and seizures without regard to their constitutionality and uses them as the means of convicting people whom the officer conceives it to be his job to get convicted, it is not merely tolerating but inducing unconstitutional searches and seizures.

Anthony G. Amsterdam, <u>Perspectives on the Fourth Amendment</u>, 58 Minn. L. Rev. 349, 432 (1974).

constitutional requirements,"[26] 555 U.S. at 147, and the Court thus concludes that suppression is appropriate.[27]

### 4.    Policy Ramifications

Notwithstanding the Court's doctrinal analysis -- which has now concluded -- the Court is mindful of the thorny practical questions this motion raises.  The government asserts that to hold that the magistrate judge lacked authority to issue the NIT

---

[26] The Supreme Court does not define "systemic negligence," Herring, 555 U.S. at 144, or "systemic error," id. at 147, and the former, at least, is apparently a new term in the Supreme Court's lexicon, see Wayne R. Lafave, The Smell of Herring: A Critique of the Supreme Court's Latest Assault on the Exclusionary Rule, 99 J. Crim. L. & Criminology 757, 784 (2009). It is difficult to ascertain the frequency with which similar warrants -- i.e., warrants to conduct remote searches of property located outside a magistrate judge's judicial district -- are granted, since these warrants are typically issued and remain under seal.  See Owsley, supra note 4, at 4-5. Nonetheless, it is clear to the Court that this is far from the sole instance in which the government has sought and obtained an NIT warrant.  See id. (listing cases involving NIT warrants or similar); Gov't's Resp. 23.

[27] The Court acknowledges that suppression is an extreme remedy, and consequently it considered whether, on this occasion -- but never again under these circumstances -- the evidence at issue ought be let in under the good-faith exception.  See State v. Hardy, No. 16964, 1998 WL 543368, at *6-7 (Ct. App. Ohio Aug. 28, 1998) (Fain, J., concurring in the judgment) (concluding that good-faith exception should apply to evidence obtained pursuant to a warrant issued without proper jurisdiction, but noting that "[o]nce we allow time for reasonable police officers within this jurisdiction to become acquainted with the territorial limits upon a magistrate judge's authority to issue search warrants, however, claims of good-faith exceptions to the warrant requirement are likely to be unavailing.").  Upon further deliberation, however, the Court concluded that to hold that Leon's good-faith exception applies here, where there never existed a valid warrant, would stretch that exception too far.

Warrant, and accordingly to suppress the evidence obtained
pursuant thereto, would create "an insurmountable legal barrier"
to law enforcement efforts in this realm.  Gov't's Resp. 16.
The Court is unmoved by the government's argument for two
reasons.

First, it cannot fairly be said that the legal barrier to
obtaining this type of NIT Warrant from a magistrate judge is
"insurmountable," because the government itself has come up with
a way of surmounting it -- namely, to change Rule 41(b), see
supra note 13.

Second, it does not follow from this opinion that there was
no way for the government to have obtained the NIT Warrant.
Section 636(a) and Rule 41(b) limit the territorial scope of
magistrate judges -- they say nothing about the authority of
district judges to issue warrants to search property located
outside their judicial districts.  Indeed, the quotation from
United States v. Villegas, 899 F.2d 1324 (2d Cir. 1990),
included in the government's own brief, is revealing: "Rule 41
does not define the extent of the court's power to issue a
search warrant. . . . Given the Fourth Amendment's warrant
requirements and assuming no statutory prohibition, the courts
must be deemed to have inherent power to issue a warrant when
the requirements of that Amendment are met."  Gov't's Resp. 20-
21 (quoting Villegas, 899 F.2d at 1334).  With respect to

district judges, neither Rule 41(b) nor Section 636(a) of the Federal Magistrates Act restricts their inherent authority to issue warrants consistent with the Fourth Amendment.  See Krueger, 809 F.3d at 1125 n.6 (noting that analysis of a magistrate judge's lack of statutory authority to issue warrants to search outside his district has no bearing on "the statutory authorities of a district judge to issue a warrant for an out-of-district search[,]" and pointing out that "[u]nlike magistrates, the jurisdiction of district courts is usually defined by subject matter and parties rather than strictly by geography."); cf. Matter of Application and Affidavit for a Search Warrant, 923 F.2d 324, 326 (4th Cir. 1991) (contrasting a district judge's "inherent power" with a magistrate's power, which is either delegated by a district judge or expressly provided by statute).[28]

---

[28] Surprisingly, a number of courts have apparently understood Rule 41(b) to apply to district judges.  See, e.g., United States v. Golson, 743 F.3d 44, 51 (3d Cir. 2014) ("Rule 41(b) grants the authority to issue search warrants to federal judges and judges of state courts of record."); Glover, 736 F.3d at 515 (concluding that a warrant issued by a district judge to search property outside that judge's district violated Rule 41(b)(2)); cf. United States v. Krawiec, 627 F.2d 577, 580 (1st Cir. 1980) (indicating that all "federal warrants" are required to comply with Rule 41).  On its face, however, Rule 41(b) applies only to "a magistrate judge" and "a judge of a state court of record."  The authority of district judges to issue warrants arises elsewhere, see Villegas, 899 F.2d at 1334; 18 U.S.C. § 3102, and district judges are not subject to the limitations set forth in Rule 41(b).

The magistrate judge who issued this warrant sits primarily in Alexandria, Virginia.  <u>See</u> NIT Warrant.  Four district judges and three senior judges sit routinely in that courthouse.  <u>See</u> <u>Alexandria Courthouse, United States District Court Eastern</u> <u>District of Virginia</u>, http://www.vaed.uscourts.gov/locations/al e.htm (last visited Apr. 20, 2016).  Here, the government had already involved one of those district judges in its investigation, albeit to obtain the Title III warrant.  <u>See</u> Title III Warrant.

Of course, were the government to present its NIT Warrant application to a district judge, it would still have to meet the requirements of the Fourth Amendment, which guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched."  U.S. Const. amend. IV.  Of special concern here is the particularity requirement, since, as the government points out, "the defendant's use of the Tor hidden service made it impossible for investigators to know what other districts, if any, the execution of the warrant would take place in," Gov't's Resp. 20.[29]  While this Court need not decide whether the

---

[29] Indeed, objectors to the proposed amendment to Rule 41(b), <u>see</u> <u>supra</u> note 13, have argued that a warrant that permitted law enforcement to remotely search computers at unknown locations would violate the Fourth Amendment's particularity requirement.  <u>See, e.g.</u>, <u>Written Statement of the</u>

particularity requirement was met here, it notes that despite
the difficulty highlighted by the government, at least two
courts have determined that this precise warrant was
sufficiently particular to pass constitutional muster.  See
United States v. Epich, No. 15-CR-163-PP, 2016 WL 953269, at *2
(E.D. Wis. Mar. 14, 2016); United States v. Michaud, No. 3:15-
cr-05351-RJB, 2016 WL 337263 at *4-*5 (W.D. Wash. Jan. 28,
2016).  But cf. In re Warrant to Search a Target Computer at
Premises Unknown, 958 F.Supp.2d at 755-58 (warrant to
"surreptitiously install[] software designed . . . to extract
certain stored electronic records" from "an unknown computer at
an unknown location" did not satisfy Fourth Amendment
particularity requirement).

**IV.  CONCLUSION**

Based on the foregoing analysis, the Court concludes that
the NIT Warrant was issued without jurisdiction and thus was
void ab initio.  It follows that the resulting search was
conducted as though there were no warrant at all.  Since
warrantless searches are presumptively unreasonable, and the
good-faith exception is inapplicable, the evidence must be
excluded.  Accordingly, Levin's motion to suppress, ECF No. 44,
is GRANTED.

---

Center for Democracy & Technology Before the Judicial Conference
Advisory Committee on Criminal Rules 2, Oct. 24, 2014.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## United States District Court

## District of Massachusetts

### Notice of Electronic Filing

The following transaction was entered on 5/17/2016 at 9:54 AM EDT and filed on 5/17/2016

**Case Name:**     USA v. Levin
**Case Number:**    1:15-cr-10271-WGY
**Filer:**
**Document Number:** 88(No document attached)


**Docket Text:**
**Judge William G. Young: ELECTRONIC ORDER entered denying [86] Motion for Reconsideration as to Alex Levin (1) (Paine, Matthew)**


**1:15-cr-10271-WGY-1 Notice has been electronically mailed to:**

J. W. Carney, Jr    jcarney@carneydefense.com

David G. Tobin    David.Tobin@usdoj.gov, CaseView.ECF@usdoj.gov, Sandy.Cheung@usdoj.gov, Sylvia.Cooper@usdoj.gov, usama.ecf@usdoj.gov

Samir Zaganjori    szaganjori@carneydefense.com

Jordi deLlano    jordi.de.llano.campos@usdoj.gov, caseview.ecf@usdoj.gov, melissa.johnson3@usdoj.gov, sylvia.cooper@usdoj.gov, usma.ecf@usdoj.gov

Nathaniel Dolcort-Silver    nsilver@carneydefense.com

**1:15-cr-10271-WGY-1 Notice will not be electronically mailed to:**

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **v.** | **)** | **Criminal No. 15-10271-WGY** |
| | **)** | |
| **ALEX LEVIN,** | **)** | |
| **Defendant** | **)** | |

## NOTICE OF APPEAL

Notice is hereby given that the United States of America (the prosecution in the above-captioned case) hereby appeals to the United States Court of Appeals for the First Circuit from the district court's (Young, J.) April 20, 2016 *Memorandum & Order* suppressing evidence to be used in the trial against the defendant, Alex Levin [Docket entry 69 (docketed on April 20, 2016)]; from the court's May 5, 2016 *Amended Memorandum & Order* [Docket entry 82 (docketed on May 5, 2016)]; and from the court's May 17, 2016 denial of the government's motion for reconsideration [Docket entry 88 (docketed on May 17, 2016)].

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:   /s/ *Jordi de Llano*
JORDI DE LLANO
Assistant U.S. Attorney

## Certificate of Service

I hereby certify that on May 17, 2016, this Notice of Appeal filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Jordi de Llano*
JORDI DE LLANO
Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
                                     )
v.                                )       **Criminal No. 15-10271-WGY**
                                       )
ALEX LEVIN, )
         Defendant )

## CERTIFICATION

The government has filed a notice of appeal of the district court's (Young, J.) April 20, 2016 *Memorandum & Order* suppressing evidence to be used in the trial against the defendant, Alex Levin [Docket entry 69 (docketed on April 20, 2016)]; from the court's May 5, 2016 *Amended Memorandum & Order* [Docket entry 82 (docketed on May 5, 2016)], and from the court's May 17, 2016 denial of the government's motion for reconsideration [Docket entry 88 (docketed on May 17, 2016)]. Pursuant to 18 U.S.C. §3731, the United States Attorney hereby certifies to the district court that the appeal is not taken for the purpose of delay and that the evidence is substantial proof of a fact material in the proceeding.

Respectfully submitted,

*Carmen M. Ortiz*

CARMEN M. ORTIZ
United States Attorney