No. 16-1567

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————

UNITED STATES OF AMERICA,
APPELLANT

v.

ALEX LEVIN,
DEFENDANT-APPELLEE

———————

ON APPEAL FROM AN ORDER SUPPRESSING EVIDENCE
IN A CRIMINAL CASE, ENTERED IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

———————

APPELLEE'S OPENING BRIEF

———————

J. W. CARNEY, JR., ESQ.
NATHANIEL DOLCORT-SILVER, ESQ.
J. W. CARNEY, JR. & ASSOCIATES
20 PARK PLAZA, SUITE 1405
BOSTON, MA 02116
(617) 933-0350

### TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................iii

REQUEST FOR ORAL ARGUMENT.................................1

STATEMENT OF THE ISSUES..................................1

STATEMENT OF THE CASE...................................1

    A. Suppression Proceedings ...........................1

    B. Background of 2016 Amendment to Rule 41(b) ........2

SUMMARY OF THE ARGUMENT.................................4

ARGUMENT................................................5

  I.    THE EVIDENCE SHOULD BE SUPPRESSED BECAUSE THE NIT
       WARRANT LACKED PARTICULARITY ......................5

  II.   THE MAGISTRATE JUDGE LACKED AUTHORITY UNDER FED. R.
       CRIM. P. 41(b) AND 28 U.S.C. § 636(a) TO ISSUE THE
       NIT WARRANT .......................................9

    A. Rule 41(b) did not authorize the NIT Warrant .......9

      1. The NIT is not a tracking device ............10

      2. The NIT was not installed within the Eastern
        District of Virginia ........................13

    B. Section 636(a) of Title 28 of the United States Code
      did not authorize the NIT Warrant .................14

  III. THE VIOLATIONS OF RULE 41(b) AND SECTION 636(a)
      ARE SUBSTANTIVE AND REQUIRE SUPPRESSION ..........16

    A. The violations of Section 636(a) and Rule 41(b)
      were substantive .................................17

    B. The defendant is not required to show prejudice
      for a substantive violation of Rule 41 .........19

C. Even if the defendant was required to show prejudice, he has done so here ...................20

D. The good-faith exception is not applicable to a warrant that is void ab initio ...................22

E. The prosecution has failed to meet its burden of showing that the agents acted in good faith ......28

    1. The prosecution failed to establish good-faith even after being invited to supplement the record ....................................29

    2. There is ample evidence that law enforcement was aware of the limitations imposed by Rule 41(b) ......................................30

    3. Blame cannot be placed on the magistrate judge. ...............................................36

    4. Balancing under *Herring* still calls for suppression....................................37

IV. SUPPRESSION IS REQUIRED IF THE VIOLATION OF RULE 41(b) IS CHARACTERIZED AS TECHNICAL WHERE THE DEFENDANT SUFFERED PREJUDICE AND THE AGENST DID NOT ACT IN GOOD-FAITH ................................40

CONCLUSION...............................................41

CERTIFICATE OF COMPLIANCE................................42

CERTIFICATE OF SERVICE..................................43

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Arizona v. Evans*,
    514 U.S. 1 (1995).....................................24

*Commonwealth v. Shelton*,
    766 S.W.2d 628 (Ky. 1989)............................28

*Dalia v. United States,*
    441 U.S. 238 (1979).................................17

*Davis v. United States*,
    564 U.S. 229 (2011).................................24

*Ex Parte Bollman and Ex Parte Swartwout*,
    4 Cranch 75 (1806)..................................23

*Gomez v. United States*,
    490 U.S. 858 (1989).............................25, 26

*Herring v. United States*,
    555 U.S. 135 (2009)............................*passim*

*Hudson v. Michigan*,
    574 U.S. 586 (2006).................................27

*Illinois v. Krull*,
    480 U.S. 340 (1987).................................24

*In re Warrant to Search a*
*Target Computer at Premises Unknown*,
    758 F.Supp.2d 753 (S.D. Tex. 2013)..............*passim*

*State v. Nunez*,
    634 A.2d 1167 (R.I. 1993)...........................28

*State v. Vickers*,
290 Mont. 356, 964 P.2d 756 (Mont. 1998).................25

*State v. Wilson*,
2000 S.D. 133, 618 N.W.2d 513 (S.D. 2000)..................28

*Steagald v. United States*,
451 U.S. 204 (1981)........................................6

*United States v. Alberts*,
    721 F.2d 636 (8th Cir. 1983)..........................7

*United States v. Arterbury,*
    No. 15-CR-182, (N.D. Okla. Apr. 25, 2016)............25

*United States v. Barber,*
    184 F.Supp.3d 1013 (D. Kan. 2016)................18, 27

*United States v. Bonner*,
    808 F.2d 864 (1st Cir. 1986).....................*passim*

*United States v. Brunette*,
    256 F.3d 14 (1st Cir. 2001)..........................28

*United States v. Burgos-Montes*,
    786 f.3d 92 (1st Cir. 2015).....................20, 21

*United States v. Croghan,*
    No. 15-CR-48, 2016 WL 4992195
    (S.D. Iowa Sept. 19, 2016).....................12, 25

*United States v. Cruzi*,
    867 F.2d 36 (1st Cir. 1989)..........................25

*United States v. Evans*,
    469 F.Supp.2d 893 (D. Mont. 2007)...................27

*United States v. Fuccillo*,
    808 F.2d 173 (1st Cir. 1987).........................29

*United States v. Glover*,
    736 F.3d 509 (D.C. Cir. 2013).......................19

*United States v. Houston*,
    965 F.Supp.2d 855 (E.D. Tenn. 2013)..................18

*United States v. Johnson*,
    26 F.3d 669 (7th Cir. 1994)...........................8

*United States v. Kearney*,
    672 F.3d 81 (1st Cir. 2012)..........................39

*United States v. Krueger*,
    809 F.3d 1109 (10th Cir. 2015)..................*passim*

*United States v. Leon*,
    468 U.S. 897 (1984)..............................*passim*

*United States v. Marx*,
    635 F.2d 436 (1st Cir. 1981)....................16, 40

*United States v. Master*,
    614 F.3d 236 (6th Cir. 2010)....................18, 26

*United States v. Master*,
491 Fed.Appx. 593 (6th Cir. 2012)........................32

*United States v. Meade*,
    110 F.3d 190 (1st Cir. 1997).........................31

*United States v. Michaud*,
    No. 3:15-CR-05351, 2016 WL 337263
      (W.D. Wash. Jan. 28, 2016)...........................13

*United States v. New York Tel. Co.*,
    434 U.S. 159 (1977)..............................10, 11

*United States v. Peltier,*
    344 F.Supp.2d 539 (E.D. Mich. 2004).................18

*United States v. Pennington*,
    287 F.3d 739 (8th Cir. 2002).........................8

*United States v. Reilly*,
    76 F.3d 1271 (2nd Cir. 1996)......................36, 37

*United States v. Ricciardelli*,
    998 F.2d 8 (1st Cir. 1993).......................*passim*

*Untied States v. Scott*,
    260 F.3d 512 (6th Cir. 2001)....................16, 26

*United States v. Syphers*,
    426 F.3d 461 (1st Cir. 2005).......................28

*United States v. Torres*,
    No. 5:16-CR-285, 2016 WL 4821223
    (W.D. Tex. Sept. 9, 2016).........................13

*United States v. Vigeant*,
    176 F.3d 565 (1st Cir. 1999)....................28, 36

*United States v. Villegas*,
    899 F.2d 1324 (2nd Cir. 1990)......................15

*United States v. Workman*,
    No. 15-CR-00397, 2016 WL 5791209
    (D. Colo. Sep. 6, 2016)....................12, 25, 37

### CONSTITUTIONAL AMENDMENTS

*U.S. Const. Amend. IV*...............................*passim*

### STATUTES AND RULES

Fed. R. Crim. P. 41(b)...............................*passim*

18 U.S.C. § 3117(b).................................10, 11

28 U.S.C. § 636(a)...................................*passim*

<u>OTHER AUTHORITIES</u>

Anthony G. Amsterdam, *Perspectives on the
Fourth Amendment*, 58 Minn. L. Rev. 349, 432 (1974)........31

Senate Report No. 99-541 (Electronic Communications
Privacy Act of 1986) (Oct. 17, 1986)......................11

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

The defendant moves, pursuant to Local Rule 34.0, that oral argument be permitted. The legal issues presented by this case have divided federal district courts and have not been addressed by this Court or any other circuit court.

## STATEMENT OF ISSUES

1.  The district court did not err in holding that a magistrate judge was precluded by Rule 41(b) from issuing a search warrant in Virginia that would be executed in Massachusetts.

2.  The district court did not err in holding that the appropriate remedy was suppression where the error violated the Fourth Amendment, the defendant was prejudiced, and the law enforcement agents and DOJ attorneys were not acting in good faith since they knew that the search warrant likely would be void *ab initio.*

## STATEMENT OF THE CASE

### A. Suppression proceedings

The defendant accepts the prosecution's statement of the suppression proceedings and adds the following facts:

The district court asserted that the number of times NIT warrants had been issued in the past, the dates on which they were issued, and which magistrate judges had issued them, were

1

relevant to whether the prosecution could claim good-faith. M.H. 13-14 (JA:169-70).[1] The district court ordered the prosecution to provide this information. *Id.* The court noted that it did not need any of the details regarding the various investigations. *Id.* The prosecution responded to the court's order by stating that it could not comply because federal law enforcement agencies do not keep a database of NIT warrants, which are issued and remain under seal. *Response to Court Order* (JA:181-82).

B. **Background of 2016 amendment to Rule 41(b)**

In April 2013, a decision was issued from the Southern District of Texas that denied a warrant request to conduct a remote access search of a computer in an unknown location. *In re Warrant to Search a Target Computer at Premises Unknown*, 758 F.Supp.2d 753 (S.D. Tex. 2013) ("*In re Warrant*"). That decision prompted the Department of Justice to formally request an amendment to the Federal Rules of Criminal Procedure.[2]

---

[1] Citations are as follows: the district court decision is cited as "Dist. Ct."; the addendum is cited as "Add"; the joint appendix is cited as "JA"; the prosecution's brief is cited as "G. Br"; and the supplemental appendix is cited as "SA".

[2] The amendment request and documents relating to the amendment process are chronicled in the Agenda from the April 7-8, 2014 meeting of the Advisory Committee on Criminal Rules. Tab 4, pages 155-266. Available at: http://www.uscourts.gov/sites/default/files/fr_import/CR2014-04.pdf. The documents cited in this brief are included in the Supplemental Appendix (SA).

2

Mythili Raman, the Acting Attorney General, recommended an amendment to Rule 41(b) in a September 2013 letter to the Advisory Committee on Criminal Rules ("Rules Committee") that would authorize a magistrate judge to issue a warrant to conduct a remote access search of a computer where the location of the computer is unknown. Letter from Mythili Raman to Rules Committee (Sept. 18, 2013) (SA:1-5). The letter cites *In re Warrant*, *supra*, and states that "a magistrate judge may decline to issue" a search warrant where the location of the computer is unknown. *Id.* (SA:2).

Judge Reena Raggi, of the United States Court of Appeals for the Second Circuit, who is the Chair of the Advisory Committee on Criminal Rules, notified the Standing Committee on Rules of Practice and Procedure ("Standing Committee") in December 2013 that the DOJ had suggested an amendment to Rule 41. Memorandum from Judge Raggi to Standing Committee (Dec. 20, 2013) (SA:6-8). Judge Raggi indicated that the proposed amendment would "add an additional exception" to the territorial limitations on magistrates and enable law enforcement to obtain warrants to search computers in other districts. *Id.* (SA:8) The Rules Committee requested that the DOJ send sample search warrants for its review, and appointed a subcommittee to explore the matter further. January 2014 Standing Committee Minutes (SA:9)

3

The most notable issues examined by the subcommittee were in regard to particularity, forum or judge shopping, and notice. Memorandum from Sara Beale and Nancy King to Members of the Criminal Rules Advisory Committee (Mar. 17, 2014) (SA:13-14).

The Supreme Court adopted the change to Rule 41(b) and Chief Justice John G. Roberts transmitted the amendment to the Congress on April 28, 2016. (JA:205). The new rule went into effect on December 1, 2016. *See* G. Br:15.

## SUMMARY OF ARGUMENT

Suppression is the appropriate remedy for evidence seized from the defendant's computer in Massachusetts as the result of a search warrant issued without jurisdiction by a magistrate judge sitting in the Eastern District of Virginia.

*First*, the NIT Warrant was a general warrant that failed to comply with the Fourth Amendment's requirement that warrants describe with particularity the place to be searched. This level of generality is unprecedented in Fourth Amendment jurisprudence.

*Second*, the NIT Warrant was not authorized under Rule 41(b) or Section 636(a) because it was issued in Virginia and executed in Massachusetts. It also cannot be considered a tracking device employed pursuant to Rule 41(b)(4).

*Third*, suppression is appropriate because the NIT Warrant was void *ab initio* and therefore violated the defendant's Fourth

Amendment rights. The defendant suffered prejudice as a result of the violation because the search might not have occurred had Rule 41(b) been followed. The good-faith exception is inapplicable to a warrant that is void *ab initio*. The prosecution nonetheless failed to meet its burden of establishing that its officers acted in good-faith. Suppression is the appropriate remedy for a constitutional, prejudicial, violation that was not the result of good-faith. Suppression is the only remedy that will prevent federal law enforcement from acting based on what they believe the law should be rather than what the law is.

*Fourth*, suppression of the evidence is appropriate even if the violation of Rule 41 is deemed technical because the defendant suffered prejudice, and the agents were not acting in good faith in seeking the search warrant.

**ARGUMENT**

**I.    THE EVIDENCE SHOULD BE SUPPRESSED BECAUSE THE NIT WARRANT LACKED PARTICULARITY**

The Fourth Amendment requires that all warrants "particularly describe the place to be searched, and the things to be seized." *U.S. Const. Amend. IV*. The "manifest purpose of the particularity requirement of the Fourth Amendment is to prevent wide-ranging general searches by the police." *United States v. Bonner*, 808 F.2d 864, 866 (1st Cir. 1986). The

particularity requirement is firmly grounded in the Framer's experience with general warrants. *Steagald v. United States*, 451 U.S. 204, 220 (1981) (noting the dangers of general warrants which "specified only an offense . . . and left to the discretion of the executing officials the decision as to which persons should be arrested and which places should be searched.").

The NIT Warrant was a general warrant that failed to comply with the Fourth Amendment's particularity requirements. First, the NIT Warrant failed to describe with particularity the place to be searched. Second, this level of generality is unprecedented in Fourth Amendment jurisprudence.

The application for the NIT Warrant failed to describe with particularity the place to be searched. The application incorrectly stated that the place to be searched was located in the Eastern District of Virginia. NIT App. (Add:41). It then separately described the items to be seized as information from the "activating computers" of any users who accessed Playpen, as if the items seized could somehow be divorced from the place where they are located. *Id*. (Add:44). The NIT Warrant consequently authorized the search of an unlimited number of

computers with no geographical limitations as to where the search could be carried out.[3]

The NIT application is filled with references to the server in Virginia as if this were the place to be searched. NIT App. ¶¶28, 30, 32, 33, 36 (Add:66-70). The FBI already possessed the server and was free to search for any information located on the server that it pleased. *Id*. ¶¶28-29 (Add:65-66) (discussing the seizure and search of the server's contents and explaining that the data on the server would not help locate users). Not one piece of evidence sought by the NIT Warrant was known to be located in the Eastern District of Virginia at the time of the application. *Id*. ¶30 (Add:67) (explaining that purpose of NIT is to "locate and identify" users). Agents do not have authority to search a location if the warrant does not particularly describe the place to be searched. A search does not become valid by virtue of the fact that the items listed on the warrant happen to be found at a location that was not particularly described. *United States v. Alberts*, 721 F.2d 636, 639 (8th Cir. 1983) (finding warrant deficient where it authorized the search of effects thought to be contained in bags located at one residence when bags were in fact found at another). The NIT Warrant did

---

[3] Joseph Cox, *The FBI Hacked Over 8,000 Computers In 120 Countries Based on One Warrant*, MOTHERBOARD (Nov. 22, 2016, 06:18 PM), http://motherboard.vice.com/read/fbi-hacked-over-8000-computers-in-120-countries-based-on-one-warrant.

not authorize the search because the items seized were not located in the Eastern District of Virginia.

The generality of the NIT Warrant is unprecedented in Fourth Amendment jurisprudence. Prior cases upholding searches of more than one physical location or piece of property are limited to a few related items or locations. *See e.g., United States v. Pennington*, 287 F.3d 739, 744-45 (8th Cir. 2002) (three specific buildings on one property); *United States v. Johnson*, 26 F.3d 669, 694 (7th Cir. 1994). Members of the Rule 41 Subcommittee were concerned that the proposed amendment to 41(b) would be used to conduct searches of multiple computers in multiple districts. *See* Memorandum from Orin Kerr to Rule 41 Subcommittee (Feb. 3, 2014) (SA:17-19); Memorandum from Jonathan J. Wroblewski (DOJ) to Rule 41 Subcommittee (Mar. 5, 2014) (SA:20-25). Professor Orin Kerr[4] explained that "there is considerable authority to the effect that allowing a search of multiple locations not owned by the same person under a single warrant violates the particularity clause." Memorandum from Orin Kerr, (SA:19), citing Wayne R. LaFave, *2 Search & Seizure*, §

---

[4] Professor Orin S. Kerr is a nationally recognized scholar of criminal procedure and computer crime law. He is a former trial attorney in the Computer Crime and Intellectual Property Section at the Department of Justice. Chief Justice John G. Roberts appointed Professor Kerr to serve on the Advisory Committee for the Federal Rules of Criminal Procedure in 2013. Full biography available at: https://www.law.gwu.edu/orin-s-kerr.

4.5(c) at n.99 (5th ed.). The DOJ responded to these concerns by explaining:

> Even to the extent that current law does place limits on the number or combination of premises or pieces of property that may be searched pursuant to one warrant . . . our proposed amendment still offers the substantial advantage that the requisite number of warrant applications can all be simultaneously presented to the same magistrate.

Memorandum from Jonathan J. Wroblewski, (SA:23). The NIT Warrant authorized the search of thousands of computers in an unlimited number of unknown locations on the basis of a single warrant. This was done before Rule 41(b) was amended to permit the remote search of a computer in an unknown location. The Court should hold that the NIT Warrant failed to satisfy the Fourth Amendment's particularity requirements.

## II. THE MAGISTRATE JUDGE LACKED AUTHORITY UNDER FED. R. CRIM. P. 41(b) AND 28 U.S.C. § 636(a) TO ISSUE THE NIT WARRANT.

### A. Rule 41(b) did not authorize the NIT Warrant

At the time the NIT Warrant was issued, Rule 41(b)(4) provided:

> **(b)    Authority to Issue a Warrant.** At the request of a federal law enforcement officer or an attorney for the government:
>
> . . . .
>
> > **(4)**    a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the

> device to track the movement of a person or
> property located within the district, or
> both . . . .

Fed. R. Crim. P. 41(b)(4) (2015). The magistrate judge lacked authority to issue the NIT Warrant under Rule 41(b)(4) for two reasons.[5] The NIT is not a "tracking device," because it does not meet the definition provided by statute and rule, nor does it track movements. In addition, the NIT was "installed" on the defendant's computer located within in the District of Massachusetts — not the Eastern District of Virginia.

### 1. The NIT is not a tracking device.

The prosecution relies on *United States v. New York Tel. Co.*, 434 U.S. 159, 169 (1977), for the proposition that Rule 41 is to be interpreted "flexibly . . . to include within its scope electronic intrusions authorized upon a finding of probable cause." G. Br:24. Even a flexible reading of Rule 41(b) cannot authorize the NIT as a tracking device. It does not fit within the express statutory definition of a tracking device. "'[T]racking device' has the meaning set out in 18 U.S.C. § 3117(b)." Fed. R. Crim. P. 41(a)(2)(E). The term "'tracking device' means an electronic or mechanical device which permits the tracking of movement of a person or object. 18 U.S.C. §

---

[5] The prosecution only addresses whether the NIT Warrant was authorized under Rule 41(b)(4) and thus waives any argument that the NIT Warrant was authorized under other provisions of Rule 41(b). The defendant therefore does not address these issues.

3117(b). Moreover, the legislative history demonstrates that the NIT is not what Congress authorized when it gave federal law enforcement power to use "tracking devices":

> These are one-way radio communication devices that emit a signal on a specific radio frequency. This signal can be received by special tracking equipment, and allows the user to trace the geographical location of the transponder. Such 'homing' devices are used by law enforcement personnel to keep track of the physical whereabouts of the sending unit, which might be placed in an automobile, on a person, or in some other item.

S. REP. 99-541 (Electronic Communications Privacy Act of 1986) (Oct. 17, 1986) (SA:26).[6] Most importantly, "The Committee did not intend by this amendment [creating Rule 41(b)(4)] to expand or contract the definition of what might constitute a tracking device." Fed. R. Crim. P. 41, *Committee Notes on Rules—2006 Amendment*.

The prosecution's argument that "the Rule envisions that a tracking device may be . . . computer instructions embedded in digital content traveling on data highways[,]" G. Br:27, is a forbidden attempt to "expand" the definition of a tracking device. To the contrary, the definition of tracking device in Rule 41 is "intended to be all inclusive." *New York Tel. Co.*, 434 U.S. at 169 n.15.

---

[6] Available at: https://www.justice.gov/sites/default/files/jmd/legacy/2014/08/10/senaterept-99-541-1986.pdf.

The NIT is not a tracking device at all. The NIT seizes information; it does not track movements in any way.[7] NIT App. ¶34 (Add:69-70) (describing the function of the NIT as seizing information that "may assist in identifying the user's computer, its location, and the user of the computer"); *United States v. Croghan*, No. 15-CR-48, 2016 WL 4992195, at *4 (S.D. Iowa Sept. 19, 2016) ("The NIT . . . clearly did not track the movement of a person or object. Indeed, it did not track the movement of anything[]") (internal quotations omitted); *United States v. Workman*, No. 15-CR-00397, 2016 WL 5791209, at *4 (D. Colo. Sep. 6, 2016) (same).

Finally, there is no indication that anyone involved in seeking the warrant believed that the NIT was a tracking device. The agents submitted an "application for a search warrant" using form AO 106, and were then granted a form AO 93 "search and seizure warrant." Tracking devices, in contrast, are applied for using form AO 102, "application for a tracking warrant." A

---

[7] The FBI had no idea where the various defendants subjected to the search were located once the NIT caused the IP addresses and other information to be sent to back to the FBI. The IP address enabled the FBI to subpoena an internet service provider to determine a location with which the IP address was associated. An IP address alone does not track a location any more than a telephone number alone does not identify where the phone is located. Armed with a telephone number, the government may subpoena a telephone provider to learn identifying information about the account holder associated with that number. The telephone number itself, like the IP address, provides no tracking information whatsoever.

"tracking warrant" is issued on form AO 104.[8] This confirms why the agents, the attorneys from the DOJ, and the attorney from the USAO for the Eastern District of Virginia[9], as well as the magistrate judge, never characterized the NIT as a tracking device.

### 2. The NIT was not installed within the Eastern District of Virginia.

Another reason that Rule 41(b)(4) did not authorize the search is because the installation of the NIT occurred on the defendant's computer in Massachusetts — not on the server in the Eastern District of Virginia. Attempts to paint the defendant as taking a "virtual trip" into the Eastern District of Virginia are unavailing. *United States v. Torres*, No. 5:16-CR-285, 2016 WL 4821223, at *6 (W.D. Tex. Sept. 9, 2016) ("It is inappropriate for this Court to engage in a process of finesse justifying an ethereal presence of the defendant's computer in Virginia, where the plain language of the rule as now written does not provide jurisdiction under these circumstances."); *United States v. Michaud*, No. 3:15-CR-05351, 2016 WL 337263 at *6 (W.D. Wash. Jan. 28, 2016). The installation of the NIT "occurred not within the Eastern District of Virginia, where the

---

[8] The forms are available at: http://www.uscourts.gov/services-forms/forms.
[9] *United States v. Gaver*, No. 16-CR-088, Declaration of Special Agent Douglas MacFarlane, ¶5 (W.D. Ohio 2016) (SA:28) (declaring that attorneys from the DOJ and USAO reviewed the NIT Warrant).

server is located, but rather at the site of each defendant's computer." Dist. Ct. (Add:14-15 n.9).

Accordingly, the NIT was not authorized under Rule 41(b)(4) because it was neither a "tracking device" nor "installed" within the Eastern District of Virginia.

### B. Section 636(a) of Title 28 of the United States Code did not authorize the NIT Warrant.

The NIT Warrant was issued in violation of 28 U.S.C. § 636(a) of the Federal Magistrates Act. Section 636(a) establishes "*jurisdictional* limitations on the powers of magistrate judges[.]" *United States v. Krueger*, 809 F.3d 1109, 1122 (10th Cir. 2015) (Neil Gorsuch, J., concurring) (emphasis in original). It provides, in relevant part:

> **(a)** Each United States magistrate judge . . . shall have within the district in which sessions are held by the [district] court that appointed the magistrate judge, at other places where that [district] court may function, and elsewhere as authorized by law —
>
> > **(1)** all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure . . .

28 U.S.C. § 636(a)(1). There is no authority under Section 636(a) for the magistrate judge to issue a warrant to search property outside the Eastern District of Virginia, where the magistrate judge had been appointed. Dist. Ct. (Add:9). The Federal Magistrates Act incorporates the Rules of Criminal Procedure and restricts the power of a magistrate to act

14

strictly according to those Rules. 28 U.S.C. § 636(a)(1). Rule 41(b) did not authorize the search of the defendant's computer in Massachusetts. *See* § II.A *supra*. Additionally, "[t]he government points to no other 'law or . . . Rule[] of Criminal Procedure' on which the magistrate judge could have based its jurisdiction pursuant to Section 636(a)(1)." Dist. Ct. (Add:9).

The prosecution's reliance on *United States v. Villegas*, 899 F.2d 1324, 1334 (2d Cir. 1990), is misplaced. *See* G. Br:25. *Villegas* states that, "Given the Fourth Amendment's warrant requirements, and assuming no statutory prohibition, the courts must be deemed to have inherent power to issue a warrant when the requirements of that Amendment are met." 899 F.2d at 1334. The NIT Warrant was issued in violation of the statutory prohibitions contained in section 636(a), and thus cannot be justified by a court's inherent power to issue a warrant under the Fourth Amendment.

The prosecution contends that the provisions of Rule 41(b) that provide limited exceptions for a magistrate judge to issue a warrant for property outside her district "confirm that a magistrate judge's authority is not strictly limited by the geographic boundaries of her judicial district." G. Br:26. The foregoing analysis demonstrates that a magistrate judge is in fact strictly limited by the geographic boundaries of her judicial district in issuing a search warrant, except in the

15

specific exceptions provided for in Rule 41(b), none of which applies in the case at bar.

### III. THE VIOLATIONS OF RULE 41(b) AND SECTION 636(a) ARE SUBSTANTIVE AND REQUIRE SUPPRESSION.

A court evaluating a Rule 41 violation must first determine whether the violation is a substantive error or a technical error. A substantive error is one that rises to the level of a Fourth Amendment violation. *Krueger*, 809 F.3d at 1113. If the violation is not of constitutional import, it is considered a technical error, and the court must consider whether the defendant suffered prejudice as a result of the violation, and whether the non-compliance with the rule was intentional or in bad faith. *Id*. at 1114; *United States v. Marx*, 635 F.2d 436, 441 (1st Cir. 1981). An example of a substantive violation would be where a person who is not authorized by law to issue the search warrant nonetheless did so in violation of Rule 41(b). A warrant issued by an individual without authority to do so is void *ab initio*. *United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001). An example of a technical violation would be where law enforcement, in violation of Rule 41(f), fails to give a copy of the search warrant to the occupant. *Bonner*, 808 F.2d at 869.

The violation in the case at bar is a substantive one because Section 636(a) and Rule 41(b), as written on February 15, 2015, prohibited a magistrate judge from issuing a warrant

16

to be executed outside of her district. There were four exceptions, but none is applicable to this situation.[10] A substantive violation of Rule 41 mandates suppression because it violates the Fourth Amendment. *See § III A, infra.* Showing prejudice is not required where a substantive violation of Rule 41 has occurred, *see § III B, infra,* and good-faith in obtaining the warrant does not allow the evidence to be introduced at trial. *See § III C, infra.*

### A. The violations of Section 636(a) and Rule 41(b) were substantive.

Suppression is appropriate because the NIT was issued by a magistrate judge who did not have jurisdiction to do so. This is a substantive violation that violated the defendant's Fourth Amendment rights, because the NIT Warrant was not authorized under Rule 41(b) or Section 636(a), or the court's inherent power.

A valid warrant under the Fourth Amendment requires probable cause, particularity, and issuance by a neutral and detached magistrate. *Dalia v. United States*, 441 U.S. 238, 255. Issuance by a neutral and detached magistrate presupposes that

---

[10] The exceptions are Rule 41(b)(2) (item or person is within the district when the warrant issued but has moved from the district before the warrant could be executed); Rule 41(b)(3) (the warrant involves terrorism); Rule 41(b)(4) (the warrant is to install a tracking device); or Rule 41(b)(5) (the search will occur in a United States territory or at a diplomatic mission). Rule 41(b)(6) was not enacted until 2016, which was after the issuance of the NIT warrant.

the magistrate is authorized to issue the warrant. A search warrant is void *ab initio* if the magistrate judge lacks jurisdiction to issue the warrant. Dist. Ct. (Add:18-19); *United States v. Houston*, 965 F.Supp.2d 855, 902 n.12 (E.D. Tenn. 2013) ("A Search warrant issued by an individual without legal authority to do so is 'void *ab initio*'") (internal citations omitted); *United States v. Peltier*, 344 F.Supp.2d 539, 548 (E.D. Mich. 2004). Warrants issued without authority violate the Fourth Amendment. *United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010); *United States v. Barber*, 184 F.Supp.3d 1013, 1018 (D. Kan. 2016) (warrant issued without jurisdiction is a constitutional violation).

Judge Neil Gorsuch of the United States Court of Appeals for the Tenth Circuit has asserted that "Section 636(a)'s territorial restrictions are *jurisdictional* limitations on the power of magistrate judges and the Supreme Court has long taught that a violation of a statutory jurisdictional limitation — quite unlike the violation of a more prosaic rule or statute — is *per se* harmful." *Krueger*, 809 F.3d at 1122 (Neil Gorsuch, J., concurring) (emphasis in original). Indeed:

> Our whole legal system is predicated on the notion that good borders make for good government, that dividing government into separate pieces bounded both in their powers and geographic reach is of irreplaceable value when it comes to securing the liberty of the people.

18

*Id.* at 1125, citing *Bond v. United States*, 564 U.S. 211 (2011); The Federalist Nos. 28, 32 (Alexander Hamilton), Nos. 46, 51 (James Madison).

A Rule 41(b) violation constitutes a "jurisdictional flaw" and cannot "be excused as a 'technical defect.'". *United States v. Glover*, 736 F.3d 509, 515 (D.C. Cir. 2013). Rule 41(b) involves "substantive judicial authority" and unlike violations of other provisions of Rule 41, which may be characterized as ministerial or technical, the absence of authority to issue the NIT Warrant made it void *ab initio*. *See Krueger*, 809 F.3d at 1115 n.7; Dist. Ct. (Add:18).

### B. The defendant is not required to show prejudice for a substantive violation of Rule 41.

A court must determine whether the defendant has suffered prejudice as a result of a Rule 41 violation *only* where the violation can be characterized as a technical error. *Krueger*, 809 F.3d at 1114; *Bonner*, 808 F.2d at 869. The fact that the NIT warrant also violated the Federal Magistrates Act illustrates this point because the framework for evaluating Rule 41 violations is inapplicable to a claimed statutory violation. *Krueger*, 809 F.3d at 1118 (Neil Gorsuch, J., concurring) (the requirement to show prejudice applies only when a defendant claims a violation of Rule 41 and that "no similar duty [is imposed] on defendants claiming a violation of a statutory

command or the Fourth Amendment."). The prosecution does not assert in the case at bar that a defendant claiming a statutory violation must show prejudice.

### C. Even if the defendant were required to show prejudice, he has done so here.

Technical violations of Rule 41 warrant suppression where the defendant demonstrates that he was prejudiced by the violation. *Bonner*, 808 F.2d at 869; *Krueger*, 809 F.3d at 1117 ("[the defendant] met his burden of establishing prejudice . . . because suppression furthers the purpose of the exclusionary rule by deterring law enforcement from seeking and obtaining warrants that clearly violate Rule 41(b)(1)"). Prejudice means being "subjected to a search that might not have occurred or would not have been so abrasive" had the rules been followed. *United States v. Burgos-Montes*, 786 F.3d 92, 109 (1st Cir. 2015). It cannot be gainsaid that the Residential Warrant could not have issued in Massachusetts without the information obtained from the illegal search warrant issued in Virginia.

Investigators discovered the defendant's alleged IP address through the use of the NIT. Residential Warrant ¶27 (JA:33). The Residential Warrant was only obtained after agents used the IP address to obtain subscriber information from Verizon. *Id*. ¶29. There would have been no probable cause to support the Residential Warrant without the NIT. Title III Warrant ¶58

20

(JA:94) ("deployment of a NIT to attempt to identify actual IP addresses used by TARGET SUBJECTS . . . is the only available investigative technique with a reasonable likelihood of securing the evidence necessary to prove . . . the identity of the TARGET SUBJECTS."). Accordingly, the defendant was prejudiced because the search of his property conducted on August 12, 2015 might not have occurred had Rule 41(b) been followed. Dist. Ct. (Add:22-23); *Krueger*, 809 F.3d at 1116.

The prosecution asserts that the question of prejudice turns on whether there are any circumstances in which any magistrate judge could have issued the warrant. G. Br:44. That is, so long as there is probable cause, there is always some magistrate judge who *could* have issued the warrant. The district court correctly noted that "this is not the standard for determining prejudice, and the government directs the court to no authority to support its assertion." Dist. Ct. (Add:24).[11]

Nonetheless, the prosecution claims that the defendant was not prejudiced because the warrant would have issued had it been presented to a magistrate judge in the District of

---

[11] The government misquotes the First Circuit's prejudice test when it states that "[t]o establish prejudice from a Rule 41 violation, a defendant must show that he was 'subjected to a search that **would not** have occurred . . . had the rules been followed.'" *Id*. quoting *Burgos-Montes*, 786 F.3d at 109 (emphasis added). G. Br:43. *Burgos-Montes* actually provides that prejudice means being "subjected to a search that **might not** have occurred . . . had the rules been followed." 786 F.3d at 109 (emphasis added).

Massachusetts. G. Br:44. The agents could not have sought *this* NIT Warrant in the District of Massachusetts. They only learned that the defendant's computer was located in Massachusetts *after* executing the NIT. This highlights the initial problem — the FBI sought to search thousands of computers in unknown locations with a single warrant in which they wrongly described the place to be searched as a server in Virginia. The fact remains that no magistrate judge in the United States possessed the authority to issue *this* NIT Warrant.

### D. The good-faith exception is not applicable to a warrant that is void ab initio.

The good-faith exception is not applicable to a warrant issued by a person who did not have the authority to issue it because the warrant was void *ab initio*. Extending the good-faith exception to a warrant that is issued without statutory authority would impermissible expand the jurisdiction of a magistrate judge beyond the limitations imposed by the Federal Magistrates Act. A court is not free to this.

> As preliminary to any investigation of the merits of this motion, this court deems it proper to declare that it disclaims all jurisdiction not given by the constitution, or by the laws of the United States. Courts which originate in the common law possess a jurisdiction which must be regulated by the common law . . . but courts which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction. It is unnecessary to state the reasoning on which this opinion is founded, because it has been repeatedly given by this court; and with the decisions heretofore rendered on this

22

point, no member of the bench has, even for an
instant, been dissatisfied.

*Ex Parte Bollman and Ex Parte Swartwout*, 4 Cranch 75, 93 (1806)
(Marshall, C.J.). Suppression should be granted on this reason
alone.

It is imprudent to extend the good-faith exception to
warrants that are void *ab initio*. The Supreme Court has held
that suppression is not justified where evidence was seized
pursuant to a warrant that was later determined to be
unsupported by probable cause, but where the officers acted in
objectively reasonable reliance on the warrant's validity.
*United States v. Leon*, 468 U.S. 897, 922 (1984). The Court
explained that the good-faith exception is based on the premise
that "[r]easonable minds frequently may differ on the question
whether a particular affidavit establishes probable cause." *Id*.
at 914. The Court concluded that "the preference for warrants is
most appropriately effectuated by according great deference to a
magistrate's determination." *Id*. (internal quotation marks
omitted).

Nothing in the Supreme Court's decision in *Leon* or its
progeny leads to the conclusion that such deference ought to
extend "when magistrates judges determine their own
jurisdiction." Dist. Ct. (Add:25). *Leon* deals with a
"subsequently invalidated warrant" — not a warrant that was void

23

at its inception. Dist. Ct. (Add:25). The Supreme Court's post-*Leon* good-faith cases are also readily distinguishable from a situation involving a warrant that was void *ab initio*. *See, e.g., Davis v. United States*, 564 U.S. 229, 241 (2011) (warrantless search of a car's driver that was based on subsequently overruled binding legal precedent; *Illinois v. Krull*, 480 U.S. 340, 356-57 (1987) (warrantless search of a junkyard pursuant to a state statute that was later declared unconstitutional). The Court's conclusions — that the officers acted in reasonable reliance on then-existing authority — are inapposite to the present case where the magistrate judge *never* possessed the authority to issue the warrant in the first place.

The Supreme Court has applied the good-faith exception to cases involving once-valid arrest warrants that had been recalled or quashed, but were reasonably relied on due to negligence or error. *Herring v. United States*, 555 U.S. 135, 137-39 (2009); *Arizona v. Evans*, 514 U.S. 1, 15-16 (1995). Here, a valid warrant *never* existed. This is hardly analogous to "one-off mistakes of fact that implicate the validity of a warrant at the time of its execution." Dist. Ct. (Add:27 n.19).

The distinction between warrants "that are 'voidable' due to 'judicial error' and warrants that are 'void' due to the absence of 'judicial authority' is not "irrelevant" to the good-faith analysis. G. Br:50-51 (internal citations omitted). The

district court aptly equated warrants that are void *ab initio* to no warrant at all. Dist. Ct. (Add:30) quoting *United States v. Cruzi*, 867 F.2d 36, 44 (1st Cir. 1989) (declining to "recognize[] a good-faith exception in respect to warrantless searches."). The good-faith exception presupposes that the warrant was issued by an official who possessed authority. Dist. Ct. (Add:30-32); *United States v. Arterbury*, No. 15-cr-182, slip op. at *24-26 (N.D. Okla. Apr. 25, 2016, adopting the report and recommendation of the magistrate judge, ECF No. 42) (the good-faith exception to exclusionary rule is inapplicable to a warrant that is void *ab initio*); *Croghan*, 2016 WL 4992105, at *6 (same); *Workman*, 2016 WL 5791209, at *8 (same). "If a search warrant is void *ab initio*, the inquiry stops and all other issues pertaining to the validity of the search warrant, such as whether the purpose of the exclusionary rule is served, are moot." *State v. Vickers*, 290 Mont. 356, 964 P.2d 756, 762 (Mont. 1998).

Further support for declining to extend the good-faith exception to a warrant that is void *ab initio* can be found in the Supreme Court's decision in *Gomez v. United States*, 490 U.S. 858 (1989). In *Gomez*, the district court judge delegated the task of selecting the jury in a felony trial to a magistrate judge. *Id*. at 860. The defendant objected, but did not challenge any jurors. *Id*. at 861. The defendant argued on appeal that the

25

magistrate judge lacked authority under the Federal Magistrates Act to conduct *voir dire*, and the Court agreed. *Id*. It rejected the prosecution's argument that the delegation was appropriate under the provision of the Act which provides that "a magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." *Id*. at 874-76. The Court was unpersuaded that the harmless-error analysis should apply even when the defendant could not show prejudice. *Id*. at 875-76.

The argument against extending the good-faith exception in this case is even stronger than in *Gomez*. Rule 41(b) and the Magistrates Act explicitly prohibit a magistrate judge from issuing the NIT Warrant in this case. In contrast, the Magistrates Act contains no explicit prohibition on delegating jury selection. *Gomez*, 490 U.S. at 871-872 (discussing "additional duties clause" and concluding that Congress did not intend to include jury selection by magistrate judges in felony trials).

A warrant issued by a retired judge who lacked authority to do so was void *ab initio*. *Scott*, 260 F.3d at 515. The court concluded that, "[d]espite the dearth of case law, we are confident that *Leon* did not contemplate a situation where a warrant is issued by a person lacking the requisite legal authority." *Id*. *But see Master*, 614 F.3d at 242 (applying a

26

good-faith factor based in part on *Hudson v. Michigan*, 574 U.S. 586, 593 (2006)). The district court in the instant case was correct to adopt the reasoning in *Scott* because the *Master* court's interpretation "read the Supreme Court's recent good-faith cases too broadly." Dist. Ct. (Add:28-29). Although the Supreme Court in *Hudson* applied the good-faith exception to a violation of the knock-and-announce rule, it noted with respect to the warrant requirement that "until a valid warrant has issued, citizens are entitled to shield their persons, houses, papers and effects . . . from the government's scrutiny[,]" and that "[e]xclusion of the evidence obtained by a warrantless search vindicates that entitlement." *Hudson*, 574 U.S. at 593.

Other courts to interpret the scope of *Leon* have held or acknowledged that the good-faith exception is inapplicable to evidence seized pursuant to a warrant that is void *ab initio*. *See e.g., Barber*, 184 F.Supp.3d at 1018-19 (distinguishing between voidable warrants and warrants that are void at inception and finding good-faith exception inapplicable to the latter because suppression "serves the goal of deterring police from obtaining warrants from judges who lack jurisdiction to issue them."); *United States v. Evans*, 469 F.Supp.2d 893, 900 (D. Mont. 2007) (suppressing evidence where magistrate inadvertently forgot to sign otherwise valid warrant and holding that "[t]he *Leon* good faith exception may possibly excuse a

deficiency in the language of a warrant, but it does not apply to excuse the absence of a warrant."). Multiple state courts have also declined to extend the good-faith exception to warrants that are void *ab initio*. *See e.g.*, *State v. Wilson*, 618 N.W.2d 513, 520 (S.D. 2000); *State v. Nunez*, 634 F A.2d 1167, 1171 (R.I. 1993); *Commonwealth v. Shelton*, 766 S.W.2d 628, 629-30 (Ky. 1989). This Court should also declare that the good-faith exception should not apply to a warrant that was void *ab initio.*

### E. The prosecution has failed to meet its burden of showing that the agents acted in good-faith.

Even if the good-faith exception were applicable to this case, the conduct at issue constituted systemic error or reckless disregard of constitutional requirements. *Herring,* 555 U.S. at 147. The prosecution bears the heavy burden of showing that its officers acted with objective good-faith. *United States v. Syphers*, 426 F.3d 461, 468 (1st Cir. 2005); *United States v. Brunette*, 256 F.3d 14, 17 (1st Cir. 2001); *United States v. Vigeant*, 176 F.3d 565, 572 (1st Cir. 1999). In making this assessment, the court "evaluate[s] all of the attendant circumstances at the time of the warrant application and its execution." *Brunette*, 256 F.3d at 17 quoting *United States v. Ricciardelli*, 998 F.2d 8, 15-16 (1st Cir. 1993). Because the good-faith exception is grounded in an objective standard of

reasonableness, "an officer is required to have a 'reasonable knowledge of what the law prohibits.'" *United States v. Fuccillo*, 808 F.2d 173, 177 (1st Cir. 1987) quoting *Leon*, 468 U.S. at 920 n. 20.

The prosecution has failed to meet its burden of showing good-faith. First, the prosecution failed to establish good-faith — even after the district court invited it to supplement the record with evidence that could rectify this failing. Next, the Department of Justice was aware of the limitations posed by Rule 41 and chose to ignore them. Third, the agents may not pass the blame onto the magistrate judge where they misled the magistrate in the application to obtain the warrant. Finally, a balancing of the costs of suppression under *Herring* still calls for exclusion under these facts.

### 1. The prosecution failed to establish good-faith even after being invited to supplement the record.

The district court was troubled by the absence of good faith shown by the agents and lawyers who had submitted the application for a search warrant to the magistrate judge.

> It's not like the officers are acting alone, this is a program of the FBI. [T]hat's why I want to know how many of these warrants have issued. And it seems pretty clear to me that in the Justice Department this matter has been analyzed, they've brought it to the attention of Congress, they know very well that they're on very shaky ground here.

M.H. 16 (JA:172).

The court ordered the prosecution to provide it with data regarding the use of NIT warrants. *Id*. Such evidence would be relevant in determining if the prosecution was entitled to claim good-faith. *Id*. After being given adequate time to obtain the information, the prosecution informed the court that it would not comply with the order because the DOJ and other federal law enforcement agencies did not maintain a listing of when they have used NIT warrants.[12] *Response to Court Order* (JA:181). The prosecution further asserted that it was not authorized to reveal the requested information because NIT warrants are typically sealed. *Id*. (JA:182).[13] The prosecution may not rely on its assertion that only one application for a NIT warrant had been denied when the paucity of case data regarding the issue is due to the prosecution's choice to keep such matters under seal.

### 2. There is ample evidence that law enforcement was aware of the limitations imposed by Rule 41(b).

Suppression is appropriate where, notwithstanding the issuance of a warrant, "the law enforcement officer had knowledge, or may properly be charged with knowledge, that the

---

[12] The government's response to the court's order did include reference to three NIT warrants that were mentioned in its brief. *Id*. Two of the referenced NIT warrants dealt with domestic terrorism and were therefore authorized under Rule 41(b)(3) (terrorism exception). *Response to Court Order* (JA:181).
[13] The district court specifically informed the government that it did not want or require any of the details regarding the various NIT investigations. M.H. 13 (JA:169).

search was unconstitutional under the Fourth Amendment." *Ricciardelli*, 998 F.2d at 15. The agents and the DOJ were aware of the limitations and chose to proceed with the NIT warrant anyway. This is precisely the type of conduct that is worth deterring. It would be incongruous to view these officers' conduct in isolation:

> [S]urely it is unreal to treat the offending officer as a private malefactor who just happens to receive a government paycheck. It is the government that sends him out on the streets with the job of repressing crime and of gathering criminal evidence in order to repress it. It is the government that motivates him to conduct searches and seizures as part of his job, empower him and equips him to conduct them. If it also receives the products of those searches and seizures without regard to their constitutionality and uses them as the means of convicting people whom the officer conceives it to be his job to get convicted, it is not merely tolerating but inducing unconstitutional searches and seizures.

Dist. Ct. (Add:33 n.25) quoting Anthony G. Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn. L. Rev. 349, 432 (1974).

The collective-knowledge theory is crucial to determining good-faith because the NIT Warrant was the product of a large-scale operation that involved multiple branches and levels of law enforcement. The "collective-knowledge corollary of the fellow officer rule would seem to require, or at least presuppose, the flow of information from the officers with knowledge of facts tending to establish probable cause to those lacking that knowledge . . ." *United States v. Meade*, 110 F.3d

190, 194 (1st Cir. 1997) citing 2 Wayne R. LaFave, *Search and Seizure* § 3.5(b), at 260-61 n.53, § 3.5(c), at 266 n.72 (1996) (citing cases). The collective-knowledge theory may be used against law enforcement in making good-faith determinations. *United States v. Master*, 491 Fed.Appx. 593, 595 (6th Cir. 2012). The government has urged this Court to apply the collective-knowledge theory broadly to encompass law enforcement agencies as a whole. *Meade*, 110 F.3d at 194.

FBI Special Agent Daniel Alfin, one of the agents who executed the NIT, made several telling admissions during an evidentiary hearing in a related NIT case in the District of Massachusetts. *United States v. Anzalone*, 15-CR-101347, Evidentiary Hearing (E.H.), Oct. 14, 2016 (Dkt. 93) (SA:29-38). When asked if agents knew the NIT was going to be deployed throughout the United States and internationally, Agent Alfin responded "Well, the NIT is installed on the server in the Eastern District of Virginia . . . But, yes, we reasonably believed that there were members of the Playpen website throughout the country and the world." *Anzalone*, E.H. 46-47 (SA:29-38). Far from a lone agent conducting a small operation, the agents "worked very closely with the Department of Justice on this operation." *Id*. at 44 (SA:37-38). Indeed, the FBI partnered with the Department of Justice Child Exploitation and Obscenity Section as well as the Computer Crime and Intellectual

32

Property Section. *Id.* at 43-44 (SA:35). Moreover, lawyers from
the DOJ and the USAO reviewed the application for the NIT
Warrant prior to agents presenting it to the magistrate judge.[14]

Even more telling — the agents worked with attorneys from
the DOJ's Computer Crime and Intellectual Property Section
(hereinafter CCIPS). *Anzalone*, E.H. at 43-44 (SA:34-35). The
issues with the Rule 41(b) violation present in this case are
laid out in a 2009 CCIPS guide titled "Searching and Seizing
Computers and Obtaining Electronic Evidence in Criminal
Investigations." (CCIPS Guide) *See* CCIPS Guide at 84-86
(SA:28).[15] Six years before the issuance of the NIT Warrant, DOJ
lawyers wrote that "[a]lthough the courts have not directly
addressed the matter, the language of Rule 41 combined with the
Supreme Court's interpretation of 'property' may limit searches
of computer data to data that resides in the district in which
the warrant was issued." *Id.* at 84 (SA:34-35).

The CCIPS Guide continues by explaining the standard for
suppression for a Rule 41 violation and opines that suppression
is unlikely where agents "cannot know whether [the warrant]
violates Rule 41 either legally or factually." *Id.* at 85 (SA:39-
42). The reasoning is sound: "[C]ourts may conclude that agents

---

[14] *United States v. Gaver*, No. 16-CR-088, Declaration of Special
Agent Douglas MacFarlane, ¶5 (W.D. Ohio 2016) (SA:28).
[15] The guide refers to Rule 41(a), which was subsequently changed
to Rule 41(b) in the 2002 amendments to Rule 41. The Rule will
be referred to as 41(b) for purposes of clarity.

sitting in one district who search a computer in that district and *unintentionally* cause intangible information to be sent from a second district into the first have complied with Rule 41(b)." *Id.* (emphasis added).

Here, the agents *did* know that the NIT would seize data located outside the Eastern District of Virginia. Instead of "unintentionally" causing intangible information to be sent from various districts to the Eastern District of Virginia, the NIT was specifically "designed to cause the user's 'activating' computer to transmit certain information to a computer controlled by or known to the government." NIT App. ¶33 (Add:68). It is inaccurate to contend that the executing officers cannot be charged with the knowledge that the warrant was issued in violation of Rule 41(b).

The conduct at issue is all the more troubling when examined in light of the decision in *In re Warrant to Search a Target Computer at Premises Unknown*, and the DOJ's subsequent response. 958 F.Supp.2d 753. The court in *In re Warrant* denied a request to use a NIT to search a "target computer at premises unknown." *Id.* at 758. The court very clearly laid out the reasoning why such a warrant would fail to comply with any provision of Rule 41(b). *Id.* at 756-58. This prompted the DOJ to write a letter to the Advisory Committee on Criminal Rules seeking an amendment to 41(b) that would permit remote searches

34

where the target location is unknown. Letter from Acting
Attorney General Mythili Raman (SA:1-5) (explaining that the
amendment would enable investigators to obtain warrants where
the location of the computer to be searched is unknown and that
a magistrate judge may decline to issue such a warrant under the
current rule).

The NIT Warrant in this case was sought 17 months after the
DOJ described the limitations imposed by Rule 41(b) to the Rules
Committee. The DOJ was an active participant in the many
meetings and phone calls regarding the proposed amendment. Law
enforcement accurately described the place to be searched in *In
re Warrant* as the target computer in an unknown location. 958
F.Supp.2d at 755. Rather than risk another denial, the
application here wrongly described the place to be searched as
the server in the Eastern District of Virginia. It is telling
that law enforcement had described the place to be searched in a
similar NIT application prior to the denial in *In re Warrant* as
"Nebraska and elsewhere." *United States v. Cottom*, 13-CR-108 (D.
Neb. (2013) (Dkt. 122-1) (SA:43). The present application is
filled with references to the server being located in Virginia
as if this were the place where the search would occur. NIT App.
¶¶28, 30, 32, 33, 36 (Add:66-70). The *Cottom* warrant does not
contain such repeated references. *See* (SA:43-72)

The description provided to the magistrate was "almost calculated to mislead." *See United States v. Reilly*, 76 F.3d 1271, 1280 (2nd Cir. 1996). The FBI already possessed the server and was free to search for any information located on the server that it pleased. NIT App. ¶28 (Add:65-66). None of the evidence sought by the NIT Warrant was known to be located in the Eastern District of Virginia at the time of the application. The collective knowledge of the FBI and the DOJ makes it clear that they had an objectively reasonable belief that the Warrant ran afoul of Rule 41(b). This qualifies as "systemic error or reckless disregard of constitutional requirements." *Herring*, 555 U.S. at 147; Dist. Ct. (Add:34 n.26).

### 3. Blame cannot be placed on the magistrate judge.

The prosecution is not entitled to pass the blame onto the magistrate judge and claim good-faith because the agents and the lawyers knew that the magistrate judge did not possess authority to permit a global search of an unlimited number of computers. *Ricciardelli*, 998 F.2d at 16 ("government agents may not trespass beyond the bounds of well-defined Fourth Amendment procedures and then attempt to blunt the effects of their perorations by foisting the blame on the magistrate."); *Vigeant*, 176 F.3d at 574, quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1985); *Reilly*, 76 F.3d at 1280.

It is not objectively reasonable to believe that the agents acted in good-faith in relying on the magistrate judge's issuance of the NIT Warrant. The "defect" in the NIT Warrant "was largely, if not entirely, the result of the officers' incomplete account to the magistrate." *Ricciardelli*, 998 F.2d at 17. The agents' recklessness may be inferred because the information they were aware of was "clearly critical" to assessing the legality of the search. *See Reilly*, 76 F.3d at 1280. As one judge in a related NIT case rightly observed in excluding the NIT evidence, the magistrate judge may not have "understood that the NIT technology would search computers in other districts," and if she had, "probably would not have issued the NIT Warrant given the limitations of the Rule." *Workman*, 2016 WL 5791209, at *5.

### 4. Balancing under *Herring* still calls for suppression.

Suppression is appropriate because the "benefits of deterrence . . . outweigh the costs" of exclusion when the prosecution's error reflects "systemic error or reckless disregard of constitutional requirements." *Herring*, 555 U.S. at 141, 147.

This Court is not evaluating the conduct of a single, small-town police officer who got his hands on a piece of high-tech equipment and sought a warrant without any real knowledge as to

37

how the device would be deployed. Rather, this Court is examining the actions of an FBI Special Agent with 19 years of experience, who was working under the direction of multiple levels of the FBI, and who consulted with the United States Attorney's Office and several branches of Main Justice, including the Computer Crimes and Intellectual Property Section. This operation involved technology that law enforcement has possessed since at least 2007. The CCIPS Guide from 2009 says that this type of warrant is not permissible. The DOJ was actively seeking a change to Rule 41(b) because it was aware of the Rule's limitations. The agents knew that the NIT would be deployed nationwide and globally. At some point law enforcement, must be held to account for its actions in violation of a Federal statute and a Rule of Criminal Procedure promulgated by the United States Supreme Court.

The prosecution suggests that there would be no deterrent effect by suppressing the evidence obtained in this case because the amendment to Rule 41(b) now permits the search that took place in this case. G. Br:63 n.14. The opposite is true. Denying suppression would have the negative effect of telling law enforcement that it may exceed the scope of the law so long as it is actively engaged in trying to change it. *See* Dist. Ct. (Add:19-21) (explaining that there may be good reason to change the rule, but, "Today . . . no magistrate judge has the

authority to issue this NIT Warrant."). It is not for the DOJ to determine what it can and cannot do based on what it believes the law should allow, but doesn't.

Nor are the costs of suppression substantial. The prosecution's cry that suppression would result in many cases being thrown out is a problem of their own making. Additionally, the FBI's conduct of distributing child pornography to an unknown number of individuals with no way of getting it back is analogous to the ATF's "Fast and Furious" fiasco. The continuing harms of this hideous form of child abuse is the distribution of the photographs and videos in which the victim's appear. *See e.g.*, *United States v. Kearney*, 672 F.3d 81, 94 (1st Cir. 2012). The district court properly characterized this operation when it said "Unlike those undercover stings where the government buys contraband drugs to catch the dealers, here the government disseminated the child obscenity to catch the purchasers — something akin to the government itself selling drugs to make the sting." Dist. Ct. (Add:19 n.12).

Suppression of evidence is designed to deter law enforcement from acting outside the parameters of the law. The conduct at issue is analogous to a child who is denied permission to visit a friend's house by his mother and then turns around asks his father for permission without disclosing that his mother had already said no. This is precisely the type

of behavior that results in being sent to bed without dinner. Suppression of the evidence in this case is the only way to deter similar conduct in the future.

## IV.   SUPPRESSION IS REQUIRED IF THE VIOLATION OF RULE 41(b) IS CHARACTERIZED AS TECHNICAL WHERE THE DEFENDANT SUFFERED PREJUDICE OR WHERE THE AGENTS DID NOT ACT IN GOOD-FAITH.

Technical violations of Rule 41 warrant suppression where the defendant demonstrates prejudice, or alternatively that law enforcement's failure to comply with the rule was not done in good-faith. *Marx*, 635 F.2d at 441. The defendant in this case has demonstrated that he suffered prejudice. *See* § III.C., *supra*. This alone mandates suppression for a technical violation of Rule 41.

The defendant also has shown that the critical individuals involved in seeking the NIT warrant – the special agents, local AUSA, and specialized attorneys at the Department of Justice – all knew or reasonably should have known that the NIT warrant would violate 28 U.S.C. § 636(a) and Fed. Rule of Crim. P. 41(b)(1).

Therefore, even if the court characterizes the violation of Rule 41 to be a technical error, and not a substantive error, the result is the same: the evidence obtained must be suppressed.

## CONCLUSION

The defendant submits that the Court should affirm the district court's order suppressing the evidence seized from the defendant's computer in Massachusetts.

ALEX LEVIN
By his attorneys,

CARNEY & ASSOCIATES

*J. W. Carney, Jr.*
J. W. Carney, Jr.
B.B.O. # 074760

Nathaniel Dolcort-Silver
B.B.O. # 693968

On the brief:

John M. O'Hara
Northeastern University School of Law

February 2017

**CERTIFICATE OF COMPLIANCE WITH**
**Rule 32(a)**

**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed.
   R. App. P. 32(a)(7)(B)(i) because it is set forth in a
   monospaced face and contains not more than 1,000 lines of
   text (a principle brief is acceptable if it uses a
   monospaced face and contains no more than 1,300 lines of
   text), excluding the parts of the brief exempt by Fed. R.
   App. P. 32(f) (e.g., the corporate disclosure statement,
   table of contents, table of citations, addendum, and
   certificates of counsel).

2. This brief complies with the typeface requirements of Fed.
   R. App. P. 32(a)(5)(B) and type style requirements of Fed.
   R. App. P. 32(a)(6) because it has been prepared in a
   monospaced typeface using Courier New 12 point, in
   Microsoft Word 2007.

                                    */s/ J. W. Carney, Jr.*
                                    Counsel for Appellee
                                    J. W. Carney, Jr., Esq.

<u>**CERTIFICATE OF SERVICE**</u>

I, J. W. Carney, Jr., Esq., counsel for the Defendant-Appellee, hereby certify that on February __, 2017, I electronically served a copy of the foregoing document, as well as Appellee's Supplemental Appendix, on the following registered participants of the CM/ECF system: Kelly Begg Lawrence, AUSA, Office of the United States Attorney for the District of Massachusetts, John Joseph Moakley Courthouse, One Courthouse Way, Suite 9200, Boston, MA 02110.

<u>*/s/ J. W. Carney, Jr.*</u>
Counsel for Appellee
J. W. Carney, Jr., Esq.