**NO. 16-1567**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

**UNITED STATES OF AMERICA,**
**APPELLANT**

**V.**

**ALEX LEVIN,**
**DEFENDANT-APPELLEE**

---

**ON APPEAL FROM AN ORDER SUPPRESSING EVIDENCE IN A CRIMINAL CASE, ENTERED IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

---

# GOVERNMENT'S REPLY BRIEF

---

**WILLIAM D. WEINREB**
**ACTING UNITED STATES ATTORNEY**

**KELLY BEGG LAWRENCE**
**ASSISTANT U.S. ATTORNEY**
**JOHN JOSEPH MOAKLEY U.S. COURTHOUSE**
**1 COURTHOUSE WAY**
**SUITE 9200**
**BOSTON, MASSACHUSETTS 02210**
**(617) 748-3162**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THE GOOD-FAITH EXCEPTION APPLIES BECAUSE THE FBI REASONABLY RELIED ON THE NIT WARRANT .......... 2

A. The NIT Warrant was not void ab initio .......... 4

B. The FBI agents acted in objectively reasonable, good-faith reliance on the NIT Warrant .......... 9

II. THE NIT WARRANT WAS SUFFICIENTLY PARTICULAR .......... 16

III. RULE 41(b)(4) AUTHORIZED THE MAGISTRATE JUDGE TO ISSUE THE NIT WARRANT .......... 23

A. The NIT Warrant satisfied Rule 41(b)(4)'s requirements .......... 24

B. Suppression is inappropriate because the alleged Rule 41 violation was non-constitutional and non-prejudicial .......... 26

CONCLUSION .......... 27

CERTIFICATE OF COMPLIANCE .......... 28

CERTIFICATE OF SERVICE .......... 29

ADDENDUM

# TABLE OF AUTHORITIES

## CASES

*Alderman v. United States*,
394 U.S. 165 (1969) .......... 23

*Commonwealth v. Shelton*,
766 S.W.2d 628 (Ky. 1989) .......... 7

*Davis v. United States*,
564 U.S. 229 (2011) .......... 3, 5-7

*Gomez v. United States*,
490 U.S. 858 (1989) .......... 7

*Herring v. United States*,
555 U.S. 135 (2009) .......... 5-9

*Illinois v. Krull*,
480 U.S. 340 (1987) .......... 5

*In re Terrorist Bombings*,
552 F.3d 157 (2d Cir. 2008) .......... 23

*In re Warrant to Search a Target Computer at Premises Unknown*,
958 F. Supp. 2d 753 (S.D. Tex. 2013) .......... 12

*Kowalski v. Gagne*,
914 F.2d 299 (1st Cir. 1990) .......... 11

*Ms. S. v. Reg'l Sch. Unit 72*,
829 F.3d 95 (1st Cir. 2016) .......... 11

*State v. Nunez*,
634 A.2d 1167 (R.I. 1993) .......... 7

*State v. Vickers*,
290 Mont. 356, 964 P.2d 756 (1998) .......... 7

*State v. Wilson*,
2000 S.D. 133, 618 N.W.2d 513 (2000) .................................................. 7

*United States v. Acevedo-Lemus*,
No. 15-CR-137, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016)............17, 21

*United States v. Allain*,
No. 15-CR-10251, 2016 WL 5660452
(D. Mass. Sep. 29, 2016)..................................................6, 17, 19-20, 22

*United States v. Anzalone*,
No. 15-CR-10347, 2016 WL 5339723 (D. Mass. Sep. 22, 2016)....5, 17, 22

*United States v. Austin*,
No. 16-CR-68, 2017 WL 496374 (M.D. Tenn. Feb. 2, 2017) ................. 24

*United States v. Barber*,
184 F. Supp. 3d 1013 (D. Kan. 2016) ..................................................... 7

*United States v. Bee*,
No. 16-CR-2, 2017 WL 424905 (W.D. Mo. Jan. 13, 2017),
*report and recommendation adpoted,* 2017 WL 424889
(W.D. Mo. Jan. 31, 2017)........................................................................ 24

*United States v. Bonner*,
808 F.2d 864 (1st Cir. 1986)................................................................ 18

*United States v. Broy*,
No. 16-CR-10030, 2016 WL 5172853 (C.D. Ill. Sep. 21, 2016) ................ 4

*United States v. Burgos-Montes*,
786 F.3d 92 (1st Cir.),
*cert. denied*, 136 S. Ct. 599 (2015) ...................................................22, 26

*United States v. Darby*,
190 F. Supp. 3d 520 (E.D. Va. 2016)..................................... 3, 17, 21, 24

*United States v. Deichert*,
No. 16-CR-201, 2017 WL 398370 (E.D.N.C. Jan. 28, 2017)............17, 27

*United States v. Duncan*,
No. 15-CR-414, 2016 WL 7131475 (D. Or. Dec. 6, 2016).................. 5, 17

*United States v. Dzwonczyk*,
No. 15-CR-3134, 2016 WL 7428390 (D. Neb. Dec. 23, 2016).................. 5

*United States v. Epich*,
No. 15-CR-163, 2016 WL 953269 (E.D. Wisc. Mar. 14, 2016) .............. 17

*United States v. Evans*,
469 F. Supp. 2d 893 (D. Mont. 2007)..................................................... 7

*United States v. Grubbs*,
547 U.S. 90 (2006)................................................................................ 22

*United States v. Gurka*,
605 F.3d 40 (1st Cir. 2010)................................................................... 11

*United States v. Hammond*,
No. 16-CR-102, 2016 WL 7157762 (N.D. Cal. Dec. 8, 2016)............13, 17

*United States v. Henderson*,
No. 15-CR-565, 2016 WL 4549108 (N.D. Cal. Sep. 1, 2016) ............17, 21

*United States v. Jean*,
No. 15-CR-50087, 2016 WL 4771096,
(W.D. Ark. Sep. 13, 2016) ....................................................... 17, 24, 26

*United States v. Johnson*,
No 15-CR-340, 2016 WL 6136586 (W.D. Mo. Oct. 20, 2016) ............... 24

*United States v. Jones*,
No. 16-CR-26, 2017 WL 511883 (S.D. Ohio Feb. 2, 2017) .................... 24

*United States v. Karo*,
468 U.S. 705 (1984)............................................................................... 19

*United States v. Kienast*,
No. 16-CR-103, 2016 WL 6683481 (E.D. Wisc. Nov. 14, 2016) .......17, 24

*United States v. Kneitel*,
No. 16-CR-23, (D.158) (M.D. Fla. Jan. 3, 2017) .................................. 14

*United States v. Knowles*,
No. 15-CR-875, 2016 WL 6952109 (D.S.C. Sep. 14, 2016)................ 5, 17

*United States v. Krueger*,
809 F.3d 1109 (10th Cir. 2015) ....................................................... 4, 7-9

*United States v. Leon*,
468 U.S. 897 (1984)................................................................................ 2

*United States v. Li*,
206 F.3d 56 (1st Cir. 2000)................................................................ 23

*United States v. Libbey-Tipton*,
No. 16-CR-236, (D.19) (N.D. Ohio Oct. 19, 2016) ............................... 14

*United States v. Lough*,
No. 16-CR-18, 2016 WL 6834003 (N.D. W.Va. Nov. 18, 2016) ...6, 17, 24

*United States v. Mascetti*,
No. 16-CR-308, (D.29) (M.D.N.C. Oct. 24, 2016)................................ 24

*United States v. Master*,
614 F.3d 236 (6th Cir. 2010) .............................................................. 7-8

*United States v. Matish*,
193 F. Supp. 3d 585 (E.D. Va. 2016).................................... 14, 17, 24-25

*United States v. McLamb*,
No. 16-CR-92, 2016 WL 6963046 (E.D. Va. Nov. 28, 2016).................. 24

*United States v. McLellan*,
792 F.3d 200 (1st Cir.),
*cert. denied*, 136 S. Ct. 494 (2015)......................................................... 18

*United States v. Michaud*,
No. 14-CR-5351, 2016 WL 337263 (W.D. Wash. Jan. 28, 2016) ........... 17

*United States v. Monell*,
801 F.3d 34 (1st Cir. 2015),
*cert. denied,* 136 S. Ct. 864 (2016) .......................................................... 2

*United States v. Mousli*,
511 F.3d 7 (1st Cir. 2007) ..........................................................18, 21

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977) ................................................................ 25

*United States v. Owens*,
No. 16-CR-38, 2016 WL 7079609 (E.D. Wisc. Dec. 5, 2016) ................ 21

*United States v. Peltier*,
344 F. Supp. 2d 539 (E.D. Mich. 2004) .................................................. 7

*United States v. Rivera*,
No. 15-CR-266, (D.69) (E.D. La. July, 20 2016) ..............................14, 17

*United States v. Scott*,
260 F.3d 512 (6th Cir. 2001) .......................................................... 7

*United States v. Smith*,
No. 15-CR-467, (D.41) (S.D. Tex. Sep. 28, 2016) ............................17, 24

*United States v. Stepus*,
No. 15-CR-30028, 2016 WL 6518427 (D. Mass. Oct. 28, 2016) ............... 5

*United States v. Stokes*,
726 F.3d 880 (7th Cir. 2013) .......................................................... 23

*United States v. Sullivan*,
No. 16-CR-270, 2017 WL 201332 (N.D. Ohio Jan. 18, 2017) ...........17, 24

*United States v. Tiem Trinh*,
665 F.3d 1 (1st Cir. 2011) .......................................................... 18

*United States v. Tippens*,
No. 16-CR-5110, (D.106) (W.D. Wash. Nov. 30, 2016) .................... 5, 17

*United States v. Tran*,
No. 16-CR-10010, 2016 WL 7468005 (D. Mass. Dec. 28, 2016) .......11, 14

*United States v. Upham*,
168 F.3d 532 (1st Cir. 1999)............................................................ 18

*United States v. Verdugo-Urquidez*,
494 U.S. 259 (1990) ......................................................................... 23

*United States v. Vortman*,
No. 16-CR-210, 2016 WL 7324987 (N.D. Cal. Dec. 16, 2016).... 17, 19, 22

*United States v. Werdene*,
188 F. Supp. 3d 431 (E.D. Pa. 2016) .................................................. 14

## RULES

Fed. R. Crim. P. 41(b) ........................................................................ *passim*

Fed. R. Crim. P. 41(b)(1) ........................................................................ 8, 27

Fed. R. Crim. P. 41(b)(4) ........................................................................ *passim*

Fed. R. Crim. P. 41(b)(6) ........................................................................1-4, 16

## OTHER AUTHORITIES

The Honorable Reena Raggi,
Report of the Advisory Committee on Criminal Rules (May 6, 2015),
http://www.uscourts.gov/sites/default/files/2015-05-criminal_
rules_report_0.pdf ................................................................................ 3

## INTRODUCTION

In its opening brief, the government established that the district court erred in suppressing evidence derived from the NIT Warrant. That warrant was authorized by Federal Rule of Criminal Procedure 41(b)(4) and, in any event, the good-faith exception to the exclusionary rule applied. Two subsequent developments bolster these arguments. *First*, 21 more district courts have denied (and none has granted) suppression.[1] Forty-three courts thus now agree with the government's no-suppression position. *Second*, an amendment to Rule 41 went into effect on December 1, 2016, that places the validity of warrants like the NIT Warrant beyond reproach. Rule 41(b)(6) now provides magistrate judges with explicit authority to issue warrants when the location of electronic media or information "has been concealed through technological means." Addendum at 1. This provision confirms application of the good-faith exception here because it proves there is nothing unreasonable about the search that took place and there is no deterrence benefit to be gained by sanctioning law enforcement conduct that the Federal Rules' drafters, Congress, and the Supreme Court have concluded is appropriate.

[1] For the Court's convenience, these decisions are listed and reprinted in Volume III of the Joint Appendix (NIT Decisions), filed herewith.

## ARGUMENT

### I. THE GOOD-FAITH EXCEPTION APPLIES BECAUSE THE FBI REASONABLY RELIED ON THE NIT WARRANT.

As *Leon* teaches, this Court may forgo assessing the validity of the NIT Warrant and "turn[] immediately to a consideration of the officers' good faith." *United States v. Leon*, 468 U.S. 897, 925 (1984); *United States v. Monell*, 801 F.3d 34, 41 (1st Cir. 2015), *cert. denied*, 136 S. Ct. 864 (2016). The government maintains that the NIT Warrant was validly issued pursuant to Rule 41(b)(4), but the Court need not reach that issue in this case, where evidence of good faith is manifest. In addition to the arguments made in the government's opening brief, the Rule 41(b)(6) amendment plainly demonstrates that the FBI's reliance on the NIT Warrant was objectively reasonable, and there is no deterrence benefit to suppression.

In April 2016, the Supreme Court approved Rule 41(b)(6), which provides magistrate judges "in any district where activities related to a crime may have occurred" with the authority to issue warrants "to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district" if the district "where the media or information is located has been concealed through technological means." Addendum at 1. This Rule 41 provision was intended, in part, to address the

fact that "child abusers sharing child pornography may use proxy services designed to hide their true IP addresses,"[2] which is what Levin did when he used Tor to mask the location of his illegal activities. Congress had the opportunity to reject Rule 41(b)(6)'s grant of authority, but declined to do so, and the amendment went into effect on December 1, 2016.

This "amendment is evidence that the drafters of the Federal Rules do not believe that there is anything unreasonable about a magistrate issuing this type of warrant; the Rules had simply failed to keep up with technological changes." *United States v. Darby*, 190 F. Supp. 3d 520, 538 (E.D. Va. 2016). "That is, there is nothing unreasonable about the scope of the warrant itself," *id.*, and the FBI agents acted with the objectively reasonable belief that the NIT Warrant comported with the Fourth Amendment. Moreover, suppression is a remedy of last resort, to be used for the "sole" purpose of deterring "future" violations by law enforcement. *Davis v. United States*, 564 U.S. 229, 236-37 (2011). Thus, even if Rule 41(b)(4) did not authorize the issuance of the NIT Warrant, future law-enforcement officers clearly may apply for and obtain such a warrant pursuant to Rule 41(b)(6). Accordingly, a Rule 41(b) violation is unlikely to recur and

---

[2] The Honorable Reena Raggi, Report of the Advisory Committee on Criminal Rules (May 6, 2015), *available at* http://www.uscourts.gov/sites/default/files/2015-05-criminal_rules_report_0.pdf.

suppression here will have no deterrent effect. *See United States v. Broy*, No. 16-CR-10030, 2016 WL 5172853, at *9 (C.D. Ill. Sep. 21, 2016) (the "only benefit to suppression in this case would be ensuring magistrate judges are more careful about issuing NIT warrants in the future," but that "benefit would not last for long" because of Rule 41(b)(6)'s December 1 effective date; moreover, the "exclusionary rule is designed to control the conduct of *law enforcement*, not the conduct of federal judges") (emphasis in original).

**A. <u>The NIT Warrant was not void ab initio.</u>**

In arguing that the good-faith exception to the exclusionary rule is inapplicable, Levin invokes Judge Gorsuch's concurrence in *United States v. Krueger*, 809 F.3d 1109 (10th Cir. 2015), and asserts that the NIT Warrant was void ab initio because the magistrate judge lacked territorial authority, or "jurisdiction," to issue it. Def. Brief at 18-19. And, Levin contends, the good-faith exception does not apply to warrants that are void ab initio. This argument fails for several reasons.

*First*, Levin nowhere addresses the point made in the government's opening brief that the magistrate judge "plainly had authority—and thus jurisdiction—to issue the NIT Warrant for searches of activating computers *within* her district." Gov. Brief at 38 n.13. Thus, as numerous courts have

concluded, the suggestion that the NIT Warrant was *wholly* void and *entirely* lacking judicial approval is untenable. *See United States v. Duncan*, No. 15-CR-414, 2016 WL 7131475, at *3 (D. Or. Dec. 6, 2016) ("warrant itself was not wholly without statutory authority, so it was not void when it was issued").[3]

*Second*, the Supreme Court has repeatedly invoked the good-faith exception in similar situations where, for example, law-enforcement officers acted in objectively reasonable reliance on: a subsequently invalidated arrest warrant, *Herring v. United States*, 555 U.S. 135 (2009); a later-overruled legal precedent, *Davis*, 564 U.S. at 241; or a statute ultimately deemed unconstitutional, *Illinois v. Krull*, 480 U.S. 340 (1987). Levin tries to distinguish these cases, claiming those officers had at least relied on an "authority"—the warrant, legal precedent, or statute—that was valid at one point, as opposed to here, where "a valid warrant *never* existed." Def. Brief at 24 (emphasis in original). Levin's focus on *when* the warrant or statute was invalidated misses the point of *Herring* and *Davis*, which instruct that the exclusionary rule should

[3] *See also, e.g., United States v. Dzwonczyk*, No. 15-CR-3134, 2016 WL 7428390, at *12 (D. Neb. Dec. 23, 2016); *United States v. Tippens*, No. 16-CR-5110, D.106 at 18 (W.D. Wash. Nov. 30, 2016); *United States v. Stepus*, No. 15-CR-30028, 2016 WL 6518427, at *2 (D. Mass. Oct. 28, 2016); *United States v. Anzalone*, No. 15-CR-10347, 2016 WL 5339723, at *11 (D. Mass. Sep. 22, 2016); *United States v. Knowles*, 15-CR-875, 2016 WL 6952109, at *10 (D.S.C. Sep. 14, 2016).

be applied only when law enforcement are so culpable that exclusion can achieve meaningful deterrence that is worth the price paid by the justice system in suppressing evidence. The legal status of a warrant under the Fourth Amendment—whether void at the outset or "recalled five months" before it was executed, as in *Herring*, 555 U.S. at 137-38—is not what determines application of the good-faith exception. Indeed, adherence to a rule that depends solely on whether the magistrate judge had Rule 41(b) authority to issue the NIT Warrant at the outset would lead to absurd results: "evidence obtained through a warrant that was supported by probable cause, but that ran afoul of a jurisdictional statute, must be suppressed, but . . . evidence seized pursuant to a warrant later found not to be supported by probable cause, an issue of constitutional dimension, can be preserved by a finding of good faith." *United States v. Allain*, No. 15-CR-10251, 2016 WL 5660452, at *11 n.8 (D. Mass. Sep. 29, 2016); *see also United States v. Lough*, No. 16-CR-18, 2016 WL 6834003, at *10 n.12 (N.D. W.Va. Nov. 18, 2016) ("justifying exclusion when a warrant is void *ab initio*, but inclusion when a warrant is non-existent, as in *Herring*, would require some semantic gymnastics").

The cases cited by Levin in support of his no-good-faith-for-void-warrants argument are not persuasive. Most pre-date *Herring* and *Davis* and thus provide

little, if any, guidance on the proper scope of the good-faith exception. *See, e.g.*, *United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001); *United States v. Evans*, 469 F. Supp. 2d 893, 900 (D. Mont. 2007); *United States v. Peltier*, 344 F. Supp. 2d 539, 548 (E.D. Mich. 2004); *State v. Wilson*, 2000 S.D. 133, 618 N.W.2d 513 (2000); *State v. Vickers*, 290 Mont. 356, 964 P.2d 756 (1998); *State v. Nunez*, 634 A.2d 1167 (R.I. 1993); *Commonwealth v. Shelton*, 766 S.W.2d 628 (Ky. 1989). To the extent certain cases rely on *Scott*'s now-invalidated reasoning, they are in tension with *Herring* and *Davis* and, in any event, cannot be considered authoritative in the aftermath of *United States v. Master*, 614 F.3d 236 (6th Cir. 2010), which effectively overruled *Scott* by applying the good-faith exception to a void warrant. *See, e.g., United States v. Barber*, 184 F. Supp. 3d 1013, 1018 (D. Kan. 2016). And Levin's reliance on *Gomez v. United States*, 490 U.S. 858 (1989), is misplaced, as *Gomez* did not discuss the Fourth Amendment or the exclusionary rule at all, but instead addressed the consequences of an error involving jury selection, which the Supreme Court deemed structural and not subject to harmless-error analysis. 490 U.S. at 876.

*Third*, even Levin's primary authority for the proposition that the warrant was void ab initio—the 10th Circuit's decision in *Krueger*—ultimately "ha[d] no occasion" to consider whether the good-faith exception could have applied

because the government had waived that argument. 809 F.3d at 1113 n.5. And, in fact, the majority's analysis indicated that the question of good faith is normally an important consideration when evaluating the appropriate remedy for a Rule 41(b) violation. The *Krueger* majority noted that the warrant in that case "clearly violate[d] Rule 41(b)(1)," *id.* at 1117, but then cited *Herring* with approval and contrasted the circumstances present in *Krueger* with those in the Sixth Circuit's decision in *Master*, where "'officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate.'" *Krueger*, 809 F.3d at 1117 & n.10 (quoting *Master*, 614 F.3d at 242-43). *Master* declined to exclude the evidence, finding "at first blush" that "'the benefits of deterrence'" did not "'outweigh the costs.'" 614 F.3d at 243 (quoting *Herring*, 555 U.S. at 141). *Krueger* also cited Tenth Circuit precedent that "explain[ed] that the exclusionary rule is appropriate only if the law enforcement activity at issue was not objectively reasonable." 809 F.3d at 1117. If anything, then, the majority's analysis in *Krueger* suggests that the good-faith exception remains available in a factual setting such as this case. Moreover, in Judge Gorsuch's *Krueger* concurrence—the primary support for Levin's void-ab-initio argument—Judge Gorsuch himself recognized that the good-faith exception could apply to warrants deemed void ab initio, declaring that whether "we lack a valid warrant

. . . doesn't quite finish the story" because the "Fourth Amendment, after all, doesn't prohibit unwarranted searches but unreasonable ones." *Id.* at 1125. And, "[e]ven when an unreasonable search does exist," the court "must be persuaded that 'appreciable deterrence' of police misconduct can be had before choosing suppression as the right remedy." *Id.* (quoting *Herring*, 555 U.S. at 141).

**B. The FBI agents acted in objectively reasonable, good-faith reliance on the NIT Warrant.**

Levin contends (at page 29) that the government "failed to meet its burden of showing good-faith," but the record soundly refutes that contention.

*First*, Levin's attack (at pages 29-30) on the government's alleged failure to "supplement the record" with data regarding its use of NIT warrants in other investigations falls well short of its mark. As noted in its opening brief (at pages 58-59), the government provided the district court with information about the approved use of NITs in three cases and explained that it was not authorized to provide information about matters that remained under seal. The district court then acknowledged in its suppression ruling (at page 34 n.26) that "[i]t is difficult to ascertain the frequency with which similar warrants . . . are granted, since these warrants are typically issued and remain under seal. Nonetheless, it is clear to the Court that this is far from the sole instance in which the government has

sought and obtained an NIT Warrant."[4] The government thus established that, at the time the FBI sought judicial approval for this NIT Warrant, it had received judicial approval to use NITs in several other cases. This fact, together with the rulings of 13 district courts that have since held this NIT Warrant valid under Rule 41(b)(4) (*see* cases cited *infra* at page 24 & n.11), demonstrate that the FBI had an objectively reasonable basis for believing the NIT Warrant was valid at the time of its issuance and thus acted in good faith.

*Second*, regarding the FBI's "collective knowledge" of the validity of the NIT Warrant, the record demonstrates objectively reasonable reliance. Levin claims that, because FBI agents consulted with lawyers from the Child Exploitation and Obscenity Section ("CEOS") and Computer Crime and Intellectual Property Section ("CCIPS") of the Department of Justice ("DOJ") during the Playpen investigation, they were "aware of the limitations imposed by Rule 41(b)." Def. Brief at 30-33. The government does not deny—and has no reason to deny—that the FBI consulted with DOJ lawyers, as well as prosecutors from the United States Attorney's Office in the Eastern District of

[4] Since the opening brief was filed, three additional NIT warrants have been unsealed. These were authorized in the District of Maryland before the FBI applied for the present NIT Warrant. *See* 13-MJ-1744, -1745, & -1746. Thus, at the time of this NIT Warrant application, at least seven warrants authorizing remote searches of computers whose location was unknown had been approved.

Virginia, prior to submitting the NIT Warrant to the magistrate judge.[5] Such legal consultation by law enforcement ought to be encouraged, and that it occurred in this case is compelling evidence of good, not bad, faith. *United States v. Tran*, No. 16-CR-10010, 2016 WL 7468005, at *6 (D. Mass. Dec. 28, 2016) ("A high-level vetting is evidence of good faith, not bad faith because the law is now clear as to whether Rule 41 would be violated in light of the novel nature of the technology.").

The fact that government lawyers recognized that searches of computers whose location has been concealed through technological means presented unique challenges within the existing framework of Rule 41(b) is by no means proof that the FBI agents acted in bad faith in seeking a warrant similar in kind and scope to other warrants that had already been approved.[6] Nor is the fact that

---

[5] The documents upon which Levin relies for this claim—the testimony of FBI Special Agents Alfin and MacFarlane in other Playpen/NIT Warrant cases (Supp. App. at 27-38) and a 2009 CCIPS guide on computer searches and seizures (Supp. App. at 39-42)—were not presented to the district court and thus are not part of the record on appeal in this case. *See United States v. Gurka*, 605 F.3d 40, 43 (1st Cir. 2010). Nevertheless, they are publicly available documents of which the Court may elect to take judicial notice. *See, e.g.*, *Ms. S. v. Reg'l Sch. Unit 72*, 829 F.3d 95, 103 n.4 (1st Cir. 2016) (taking judicial notice of agency's publicly available proposed rules); *Kowalski v. Gagne*, 914 F.2d 299, 305–06 (1st Cir. 1990) (taking judicial notice of other federal court proceedings).

[6] Contrary to Levin's suggestion (at page 38), the CCIPS Guide from 2009 does not say that a NIT warrant authorizing a remote search for information

one magistrate judge had rejected an application for a warrant to use a NIT in very different circumstances of any moment. *See In re Warrant to Search a Target Computer at Premises Unknown*, 958 F. Supp. 2d 753 (S.D. Tex. 2013). The government in that investigation had no basis for reliance on Rule 41(b)(4), as the government sought to email the NIT to the target, unlike in this case where investigative targets all reached into the issuing district to obtain information stored on a server there. Also, the NIT in that case was far more invasive than the one used here. The adverse decision prompted the government to seek clarification of the scope of Rule 41(b), by seeking to have it amended to specifically authorize warrants for remote searches of computers whose location is unknown because it was concealed through technological means. Supp. App. at 1-5.

Levin attempts to impute a nefarious motive to the FBI for seeking approval of the NIT Warrant while the DOJ was seeking approval of the Rule

---

whose location is unknown "is not permissible." Rather, the guidance recognizes that a "strict" reading of Rule 41 may place territorial limits on such a search, and therefore recommends that, if the location of the computer to be searched is known in advance, a warrant should be obtained in that district. Supp. App. at 40-41. The guidance further advises, however, that where, as here, "agents do not and even cannot know that data searched from one district is actually located outside the district, evidence seized remotely from another district ordinarily should not lead to suppression." *Id.* at 41.

41(b) amendment, but the two courses of action are not incongruous. On the one hand, the government sought to ensure that Rule 41(b) was in step with modern technology; and on the other hand, the government sought to apprehend technologically savvy criminals within the existing framework of Rule 41(b). *United States v. Hammond*, No. 16-CR-102, 2016 WL 7157762, at *5 (N.D. Cal. Dec. 8, 2016) (the Rule 41 amendment "effort shows nothing more than an intention on the part of the Judicial Conference's Committee on Rules of Practice and Procedure to keep the rules more current with the times"). Having received judicial approval under Rule 41(b) to use NITs to locate criminals hiding behind technological barriers in other cases, the FBI continued to seek such warrants while the rule-amendment process unfolded over the course of more than three years. During that time, as far as the government is aware, no federal court rejected an application for a warrant authorizing the use of a NIT. It therefore cannot be said that the FBI acted in bad faith in seeking approval of the NIT Warrant simply because it thought Rule 41(b) might be amended to confirm that magistrate judges possessed authority to issue warrants of the sort they already were issuing.

*Third*, the FBI did not "mislead" the magistrate judge by describing "the place to be searched as the server in the Eastern District of Virginia," as Levin

repeatedly asserts. Def. Brief at 6-7, 35-36. The NIT Warrant application declared that the "property" identified in Attachment A was located in the Eastern District of Virginia. Attachment A, in turn, identified the "Place to be Searched" by reference to: (a) the NIT "to be deployed on" the computer server "operating the Tor network child pornography website," which was then located "at a government facility in the Eastern District of Virginia"; and (b) the "activating computers," *i.e.*, the computers "of any user or administrator who logs into" Playpen. The warrant affidavit further explained that the search warrant would authorize the NIT to "cause an activating computer—wherever located—to send to a computer controlled by or known to the government, network level messages containing information that may assist in identifying the computer." NIT Aff. ¶46. Thus, as every federal court to have considered this issue has concluded, the FBI "did not mislead the magistrate judge but was instead up front about the NIT's method and scope." *United States v. Werdene*, 188 F. Supp. 3d 431, 447 (E.D. Pa. 2016).[7]

[7] *See also, e.g., United States v. Kneitel*, No. 16-CR-23, D.158 at 3 (M.D. Fla. Jan. 3, 2017); *Tran*, 2016 WL 7468005, at *4-5; *United States v. Libbey-Tipton*, No. 16-CR-236, D.19 at 11 (N.D. Ohio Oct. 19, 2016); *United States v. Rivera*, No. 15-CR-266, D.69 at 9-10 (E.D. La. July 20, 2016); *United States v. Matish*, 193 F. Supp. 3d 585, 622 (E.D. Va. 2016).

Contrary to Levin's assertion, the FBI did not act in bad faith in seeking approval for the NIT Warrant. Faced with the task of piercing Tor's anonymous veil, and having received prior judicial approval to use NITs to remotely search computers in unknown locations for evidence that would assist in locating and identifying criminals, the FBI presented a detailed and accurate warrant application—supported by probable cause and describing the place to be searched with particularity—to a neutral and detached magistrate judge for approval. The warrant application contains no false or misleading information, and the record contains no evidence of intentional deception or bad faith. The FBI agents were thus entitled, objectively and reasonably, to rely on the judicial approval they properly sought and were granted.

*Finally*, suppression is not appropriate here because the benefits of deterrence, which are now nonexistent, do not outweigh the substantial cost to society and the judicial system of letting Levin, and potentially hundreds of child pornography offenders like him, go free. Levin's claim that deterrence is necessary to prevent the government from "determin[ing] what it can and cannot do based on what it believes the law should allow, but doesn't" is baseless. Def. Brief at 39. Foremost, the magistrate judge, and not FBI agents or government lawyers, determined that the NIT Warrant satisfied the

requirements of the Fourth Amendment and Rule 41(b). The FBI properly sought judicial approval for its use of the NIT, and any error in the issuance of the warrant in this case can only be ascribed to the magistrate judge. The exclusionary rule does not operate to deter mistakes by judicial officers, and thus it should not be invoked here. Moreover, even assuming the NIT Warrant is invalid, and further assuming the FBI are in any way responsible, there is no future misconduct to deter now that Rule 41(b)(6) authorizes the very search that occurred in this case.

Furthermore, the costs of suppression are substantial. While the exclusionary rule may be necessary to deter flagrant and deliberate law enforcement misconduct in some cases, this is not one of them. Allowing Levin and other creators, distributors, and viewers of child pornography to evade prosecution and continue abusing children in the dark shadows of Tor, simply because the magistrate judge allegedly misapprehended her authority, would be repugnant to justice.

## II. THE NIT WARRANT WAS SUFFICIENTLY PARTICULAR.

On appeal, Levin reasserts his claim that the NIT Warrant "failed to comply with the Fourth Amendment's particularity requirements" because it "failed to describe with particularity the place to be searched." Def. Brief at 6.

As noted in the opening brief (at page 16), the district court did not reach this issue, but stated (at page 38 of its ruling) that "at least two courts have determined that *this precise warrant* was sufficiently particular to pass constitutional muster." In fact, "[e]very court to consider this question has found the NIT search warrant sufficiently particular." *Anzalone*, 2016 WL 5339723, at *7.[8] For the reasons stated in the government's opening brief (at page 36 n.11) and below, Levin's lack-of-particularity claim fails.

A warrant meets the Fourth Amendment's particularity requirement if "the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort such that no other premises might be

[8] *United States v. Deichert*, No. 16-CR-201, 2017 WL 398370, at *6-7 (E.D.N.C. Jan. 28, 2017); *United States v. Sullivan*, No. 16-CR-270, 2017 WL 201332, at *6 n.4 (N.D. Ohio Jan. 18, 2017); *United States v. Vortman*, No. 16-CR-210, 2016 WL 7324987, at *9 (N.D. Cal. Dec. 16, 2016); *Hammond*, 2016 WL 7157762, at *3; *Duncan*, 2016 WL 7131475, at *3; *Lough*, 2016 WL 6834003, at *6; *United States v. Kienast*, No. 16-CR-103, 2016 WL 6683481, at *4 (E.D. Wisc. Nov. 14, 2016); *Tippens*, D.106 at 11, 14; *Allain*, 2016 WL 5660452, at *9; *United States v. Smith*, No. 15-CR-467, D.41 at 7-8 (S.D. Tex. Sep. 28, 2016); *Knowles*, 2016 WL 6952109, at *11-12; *United States v. Jean*, No. 15-CR-50087, 2016 WL 4771096, at *11-12 (W.D. Ark. Sep. 13, 2016); *United States v. Henderson*, No. 15-CR-565, 2016 WL 4549108, at *4 (N.D. Cal. Sep. 1, 2016); *United States v. Acevedo-Lemus*, No. 15-CR-137, 2016 WL 4208436, at *7 n.4 (C.D. Cal. Aug. 8, 2016); *Rivera*, No. 15-CR-266, D.69 at 11-13; *Matish*, 193 F. Supp. 3d at 608-09; *Darby*, 190 F. Supp. 3d at 533; *United States v. Epich*, No. 15-CR-163, 2016 WL 953269, at *2 (E.D. Wisc. Mar. 14, 2016); *United States v. Michaud*, No. 14-CR-5351, 2016 WL 337263, at *4-5 (W.D. Wash. Jan. 28, 2016).

mistakenly searched." *United States v. McLellan*, 792 F.3d 200, 212 (1st Cir.), *cert. denied*, 136 S. Ct. 494 (2015) (internal quotations and citation omitted). It must also sufficiently "inform the person subject to the search and seizure what the officers are entitled to take." *United States v. Tiem Trinh*, 665 F.3d 1, 15 (1st Cir. 2011) (internal quotations and citation omitted). These requirements serve the animating purpose of the particularity requirement—"to prevent wide-ranging general searches by the police," *United States v. Bonner*, 808 F.2d 864, 866-67 (1st Cir. 1986)—by ensuring that the executing officer's discretion is sufficiently constrained that the search will not reach "items that should not be seized." *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999). The validity of a search warrant is "considered in a commonsense manner" and assessed based on information available to law enforcement at the time they acted. *United States v. Mousli*, 511 F.3d 7, 13 (1st Cir. 2007). Accordingly, even a facially broad warrant satisfies the particularity requirement if its directive "is easily administered based on objective criteria" and the authorized search "was about the narrowest definable search and seizure reasonably likely to obtain [the evidence sought]." *Upham*, 168 F.3d at 535.

Levin claims that particularity was lacking because the NIT Warrant "incorrectly stated that the place to be searched was located in the Eastern

District of Virginia." Def. Brief at 6. Not so. As discussed above, Attachment A of the NIT Warrant identifies the deployment site for the NIT as the Playpen server residing in Virginia and the place to be searched by the NIT as "activating computers . . . of any user or administrator who logs into [Playpen] by entering a username and password"; further, the affidavit clearly explains that, because Tor masks the identity and location of Playpen users, the FBI was seeking permission to use the NIT to search "activating computer[s]—wherever located." Attachment B of the NIT Warrant also specifically describes the things to be seized—seven pieces of information obtained from the activating computers. Read in a commonsense manner, the NIT Warrant made pellucid that the places to be searched were "activating computer[s]—wherever located," from which seven specific pieces of information would be seized. The NIT Warrant therefore "only permitted the government to collect a specific, limited set of data from 'activating computers,' which [we]re defined as computers of any individual who logs into Playpen with a username and password." *Vortman*, 2016 WL 7324987, at *9. The NIT Warrant's descriptions were constitutionally sufficient because they "limited which computers could be searched and what information could be obtained as a result of that search." *Allain*, 2016 WL 5660452, at *9; *cf. United States v. Karo*, 468 U.S. 705, 718 (1984) (explaining that

a warrant to install a beeper need not specifically "describe the 'place' to be searched" as long as it "describe[s] the object into which the beeper is to be placed, the circumstances that led agents to wish to install the beeper, and the length of time for which beeper surveillance is requested").

Levin, and *amici curiae* Electronic Frontier Foundation ("EFF") and the American Civil Liberties Union ("ACLU") of Massachusetts, also contend that the warrant was overbroad because it "authorized the search of thousands of computers in an unlimited number of unknown locations on the basis of a single warrant." Def. Brief at 9; *see* EFF & ACLU Brief at 11-12. However, "[i]t is irrelevant how many computers were covered by the warrant, given that there was probable cause to search each one. Likewise, it is irrelevant that the warrant could have been narrower, given that the warrant as actually issued was sufficiently narrow to limit searches to computers for which there was probable cause to search." *Allain*, 2016 WL 5660452, at *8-9. The existence of probable cause—which Levin does not dispute—dooms his particularity claim. Numerous courts that have addressed similar over-breadth arguments have reached the same conclusion: the large number of potential criminal targets does not render the warrant insufficiently particular because the warrant established probable cause to search all activating computers. Courts have reasoned that,

given the unique nature of Tor, and the numerous affirmative steps required to access Playpen, it was "highly unlikely" the site "would be stumbled upon accidentally." *Acevedo-Lemus*, 2016 WL 4208436, at *7 n.4. The warrant further limited the search to "activating computers," which were "limited only to individuals that log onto the Playpen website using a username and password." *Henderson*, 2016 WL 4549108, at *4.

"The fact that Playpen facilitated rampant criminality," *Darby*, 190 F. Supp. 3d at 533, wherein thousands of individuals logged into the site from numerous locations to illegally view and distribute child pornography, does not transform the NIT Warrant into a "general warrant." Rather, the NIT Warrant was sufficiently particular because, notwithstanding the large number of criminal suspects, an officer "executing the warrant would know exactly what he was authorized to search (computers of users who logged into Playpen) and seize (the seven pieces of information described [in Attachment B])." *United States v. Owens*, No. 16-CR-38, 2016 WL 7079609, at *7-8 (E.D. Wisc. Dec. 5, 2016). Moreover, because the targets of the search used Tor to mask their identity and location, it was impossible for the NIT Warrant to more specifically describe the place to be searched. *Mousli*, 511 F.3d at 13 (warrant sufficiently particular where police "made considerable efforts" and "used all of the

information reasonably available to them to secure as particularized a warrant as possible"); *cf. United States v. Burgos-Montes*, 786 F.3d 92, 108 (1st Cir.) (where "the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility," the warrant "can only be expected to describe the generic class of items" sought), *cert. denied*, 136 S. Ct. 599 (2015).[9] In short, the NIT Warrant did not authorize a "general search," but a constitutionally particularized search for specific information based on probable

[9] *Amici*'s contention (EFF & ACLU Brief at 13-14) that the government was required to limit the search to users who posted or accessed specific information on Playpen, or visited the site frequently, is unavailing. Because every individual who took the affirmative steps of installing the Tor browser, finding the Playpen hidden service, and logging into Playpen by entering a username and password was attempting to access illegal child pornography, there was probable cause to search every activating computer, and the "government was not required to only target administrators" or frequent users. *Vortman*, 2016 WL 7324987, at *9. Nor is there any merit to *amici*'s claim (at pages 20-22) that the NIT Warrant did not sufficiently establish a connection between the anticipated condition and the specific place to be searched. The "triggering event" for deployment of the NIT was the entry of a username and password to log into Playpen, which gave the user access to Playpen's illegal content; at that point, and not before, the NIT embedded with the requested Playpen content traveled through the Tor network and back to the activating computer, where it searched for and seized the information identified in Attachment B. *See Anzalone*, 2016 WL 5339723, at *8 (finding NIT Warrant satisfied test for anticipatory warrants set forth in *United States v. Grubbs*, 547 U.S. 90 (2006), as triggering event occurred upon login); *Allain*, 2016 WL 5660452, at *8 n.6 (similar).

cause to believe that each and every user of an activating computer who logged onto Playpen did so with the intent to view or distribute child pornography.[10]

## III. RULE 41(b)(4) AUTHORIZED THE MAGISTRATE JUDGE TO ISSUE THE NIT WARRANT.

As stated above, the Court need not address the validity of the NIT Warrant because the FBI's reliance upon the warrant was objectively reasonable. But if the Court considers that question, it should conclude that the NIT Warrant was authorized by Rule 41(b)(4).

---

[10] *Amicus* Privacy International (at pages 16-25) claims the NIT Warrant was invalid because it authorized the government to undertake extraterritorial action. The NIT Warrant did not do so, because a warrant issued by a United States court is "a dead letter outside the United States." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 274 (1990). No warrant is required for searches outside of the United States, even of United States persons. *See United States v. Stokes*, 726 F.3d 880, 890-93 (7th Cir. 2013); *In re Terrorist Bombings*, 552 F.3d 157, 170-71 (2d Cir. 2008). Instead, such searches are evaluated under the Fourth Amendment's reasonableness requirement.

The Court need not reach this issue, for the search of Levin's computer, which was located in Massachusetts, did not implicate any of the concerns animating Privacy International's claim. *See Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted"). But even assuming the NIT Warrant was invalid for the reasons asserted by Privacy International, suppression is not an appropriate remedy. *See, e.g., United States v. Li*, 206 F.3d 56, 60 (1st Cir. 2000).

### A. <u>The NIT Warrant satisfied Rule 41(b)(4)'s requirements.</u>

Rule 41(b)(4) gives magistrate judges the authority to issue warrants for tracking devices to be installed in their districts. Once installed, such a tracking device may continue to operate even if the object being tracked moves outside the district. As numerous district courts have correctly concluded, this is "exactly analogous to what the NIT Warrant authorized." *Darby*, 190 F. Supp. 3d at 536.[11]

The NIT tracked the flow of intangible property—that is, the information contained on the Playpen website. Specifically, the NIT augmented the digital content requested by Playpen users from the government-controlled server operating in Virginia and, once the user's computer downloaded the requested content and the NIT, the NIT revealed to the government "registry-type information"—most importantly, an IP address, which allowed the government

[11] *See also United States v. Austin*, No. 16-CR-68, 2017 WL 496374, at *4-6 (M.D. Tenn. Feb. 2, 2017); *United States v. Jones*, No. 16-CR-26, 2017 WL 511883, at *4 (S.D. Ohio Feb. 2, 2017); *Sullivan*, 2017 WL 201332, at *5-6; *United States v. Bee*, No. 16-CR-2, 2017 WL 424905, at *3-4 (W.D. Mo. Jan. 13, 2017), *report and recommendation adopted*, 2017 WL 424889 (W.D. Mo. Jan. 31, 2017); *United States v. McLamb*, No. 16-CR-92, 2016 WL 6963046, at *6 (E.D. Va. Nov. 28, 2016); *Lough*, 2016 WL 6834003, at *4-6; *Kienast*, 2016 WL 6683481, at *4; *United States v. Mascetti*, No. 16-CR-308, D.29 at 15-17 (M.D.N.C. Oct. 24, 2016); *United States v. Johnson*, No 15-CR-340, 2016 WL 6136586, at *4-7 (W.D. Mo. Oct. 20, 2016); *Smith*, D.41 at 14-15; *Jean*, 2016 WL 4771096, at *13-18; *Matish*, 193 F. Supp. 3d at 612-13.

to determine the location of that computer. NIT Aff. ¶¶33-34. Moreover, consistent with Rule 41(b)(4), the NIT was installed in the Eastern District of Virginia when the FBI agents configured the government-controlled server with the NIT code, thus setting the trap for Playpen users who thereafter requested content from the Playpen website.

Levin, and *amici* EFF, ACLU, and Privacy International, insist that the NIT was not a tracking device at all, because it did not track the movement of information, but merely seized it. This highly technical view of the NIT should be rejected, as it is inconsistent with the flexible interpretation of Rule 41(b) endorsed by the Supreme Court. *United States v. New York Tel. Co.*, 434 U.S. 159, 169 & n.16 (1977). In facilitating the identification of anonymous Tor users who accessed Playpen to download and view child pornography, the NIT worked to determine the activating computer's location, "just as traditional tracking devices inform law enforcement of a target's location." *Matish*, 193 F. Supp. 3d at 613. A tracking device that pings (if you will) just once upon coming to rest is still a tracking device. Indeed, the fact "that the NIT was purposely designed to allow the FBI to electronically trace the activating computer by causing it to return location identifying information from outside the Eastern District of

Virginia—is not only authorized by Rule 41(b)(4), but is the very purpose intended by the exception." *Jean*, 2016 WL 4771096, at *17.

### B. Suppression is inappropriate because the alleged Rule 41 violation was non-constitutional and non-prejudicial.

As established in the opening brief (at pages 33-45), the alleged Rule 41 violation was a non-constitutional, technical violation that did not prejudice Levin or reflect deliberate disregard of the rule. Levin argues otherwise, repeating his contentions that the violation was constitutional, or substantive, in nature because the NIT Warrant "was issued by a magistrate judge who did not have jurisdiction to do so" and was therefore "void ab initio." Def. Brief at 17-18. For the reasons discussed above, this contention lacks merit.

Levin also contends that, even if the Rule 41 violation was not constitutional, it prejudiced him because "no magistrate judge in the United States possessed the authority to issue *this* NIT warrant." Def. Brief at 22. This contention is essentially the same as his first—namely, that no magistrate judge had jurisdiction to issue the warrant—and it fails for the same reasons. Regardless, in the Rule 41 context, this Court measures prejudice by examining whether the defendant was "subjected to a search that might not have occurred or would not have been so abrasive had the rules been followed." *Burgos-Montes*, 786 F.3d at 109 (quotations and citation omitted). This test certainly permits an

assessment of whether a different judge could have issued the warrant in compliance with Rule 41. And, when the potential Rule 41 prejudice is properly measured by this Court's test, it is clear the search would have still occurred had the NIT Warrant been presented to a federal magistrate judge in the District of Massachusetts. *See* Fed. R. Crim. P. 41(b)(1); *see also Deichert*, 2017 WL 398370, at *9 (finding no prejudice from alleged Rule 41 violation because "there is no reason to doubt that a magistrate judge in [this district] would have issued the same warrant").

## CONCLUSION

For these reasons, and those set forth in the government's opening brief, the government respectfully requests that the Court reverse the district court's orders suppressing evidence and denying reconsideration.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By: *<u>/s/ Kelly Begg Lawrence</u>*
KELLY BEGG LAWRENCE
Assistant U.S. Attorney

**CERTIFICATE OF COMPLIANCE WITH Rule 32(a)**

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6,491** words (an opening or answering brief may not exceed 13,000 words, a reply brief may not exceed 6,500 words), excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Calisto MT 14 point, in Microsoft Word version 2016.

*/s/ Kelly Begg Lawrence*
AUSA KELLY BEGG LAWRENCE
Dated: March 17, 2017

## CERTIFICATE OF SERVICE

I, Kelly Begg Lawrence, Assistant U.S. Attorney, hereby certify that on March 17, 2017, I electronically served a copy of the foregoing document and a copy of Volume III of the Joint Appendix, on the following:

**Counsel for the defendant:**
J. W. Carney, Jr.
Nathaniel Dolcort-Silver
J. W. Carney, Jr. & Associates
20 Park Plaza, Suite 1405
Boston, MA 02116; Mark Rumold.

**Counsel for *amicus curiae* Electronic Frontier Foundation:**
Mark Thomas Rumold
Andrew Gellis Crocker
815 Eddy Street
San Francisco, CA 94109

**Counsel for *amicus curiae* American Civil Liberties Union of Massachusetts:**
Jessie J. Rossman
211 Congress Street
Boston, MA 02100

**Counsel for *amicus curiae* Privacy International:**
Caroline Wilson Palow
Scarlet Kim
62 Britton Street
London EC1M 5UY
United Kingdom

*/s/ Kelly Begg Lawrence*
KELLY BEGG LAWRENCE

**No. 16-1567**

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

**UNITED STATES OF AMERICA,**
**Appellant**

**v.**

**ALEX LEVIN,**
**Defendant-Appellee**

---

## Addendum Table of Contents

1. Federal Rule of Criminal Procedure 41(b)(6) (Dec. 1, 2016) .......... Add.1

**18 USC App Fed R Crim P Rule 41: Search and Seizure**

**From Title 18-Appendix**
FEDERAL RULES OF CRIMINAL PROCEDURE
TITLE VIII-SUPPLEMENTARY AND SPECIAL PROCEEDINGS
**Jump To:**
**Source Credit**
**Miscellaneous**
**Amendments**
**Effective Date**

## Rule 41. Search and Seizure

(a) Scope and Definitions.

(1) *Scope.* This rule does not modify any statute regulating search or seizure, or the issuance and execution of a search warrant in special circumstances.

(2) *Definitions.* The following definitions apply under this rule:

(A) "Property" includes documents, books, papers, any other tangible objects, and information.

(B) "Daytime" means the hours between 6:00 a.m. and 10:00 p.m. according to local time.

(C) "Federal law enforcement officer" means a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant.

(D) "Domestic terrorism" and "international terrorism" have the meanings set out in 18 U.S.C. §2331.

(E) "Tracking device" has the meaning set out in 18 U.S.C. §3117(b).

(b) Venue for a Warrant Application. At the request of a federal law enforcement officer or an attorney for the government:

(1) a magistrate judge with authority in the district-or if none is reasonably available, a judge of a state court of record in the district-has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

(3) a magistrate judge-in an investigation of domestic terrorism or international terrorism-with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district;

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both; and

(5) a magistrate judge having authority in any district where activities related to the crime may have occurred, or in the District of Columbia, may issue a warrant for property that is located outside the jurisdiction of any state or district, but within any of the following:

(A) a United States territory, possession, or commonwealth;

(B) the premises-no matter who owns them-of a United States diplomatic or consular mission in a foreign state, including any appurtenant building, part of a building, or land used for the mission's purposes; or

(C) a residence and any appurtenant land owned or leased by the United States and used by United States personnel assigned to a United States diplomatic or consular mission in a foreign state.

(6) a magistrate judge with authority in any district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and to seize or copy electronically stored information located within or outside that district if:

(A) the district where the media or information is located has been concealed through technological means; or

(B) in an investigation of a violation of 18 U.S.C. §1030(a)(5), the media are protected computers that have been damaged without authorization and are located in five or more districts.

(c) Persons or Property Subject to Search or Seizure. A warrant may be issued for any of the following:

(1) evidence of a crime;

(2) contraband, fruits of crime, or other items illegally possessed;
(3) property designed for use, intended for use, or used in committing a crime; or
(4) a person to be arrested or a person who is unlawfully restrained.

(d) Obtaining a Warrant.
(1) *In General.* After receiving an affidavit or other information, a magistrate judge-or if authorized by Rule 41(b), a judge of a state court of record-must issue the warrant if there is probable cause to search for and seize a person or property or to install and use a tracking device.
(2) *Requesting a Warrant in the Presence of a Judge.*
(A) *Warrant on an Affidavit.* When a federal law enforcement officer or an attorney for the government presents an affidavit in support of a warrant, the judge may require the affiant to appear personally and may examine under oath the affiant and any witness the affiant produces.
(B) *Warrant on Sworn Testimony.* The judge may wholly or partially dispense with a written affidavit and base a warrant on sworn testimony if doing so is reasonable under the circumstances.
(C) *Recording Testimony.* Testimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit.

(3) *Requesting a Warrant by Telephonic or Other Reliable Electronic Means.* In accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means.

(e) Issuing the Warrant.
(1) *In General.* The magistrate judge or a judge of a state court of record must issue the warrant to an officer authorized to execute it.
(2) *Contents of the Warrant.*
(A) *Warrant to Search for and Seize a Person or Property.* Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:
(i) execute the warrant within a specified time no longer than 14 days;
(ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and
(iii) return the warrant to the magistrate judge designated in the warrant.

(B) *Warrant Seeking Electronically Stored Information.* A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.
(C) *Warrant for a Tracking Device.* A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used. The time must not exceed 45 days from the date the warrant was issued. The court may, for good cause, grant one or more extensions for a reasonable period not to exceed 45 days each. The warrant must command the officer to:
(i) complete any installation authorized by the warrant within a specified time no longer than 10 days;
(ii) perform any installation authorized by the warrant during the daytime, unless the judge for good cause expressly authorizes installation at another time; and
(iii) return the warrant to the judge designated in the warrant.

(f) Executing and Returning the Warrant.
(1) *Warrant to Search for and Seize a Person or Property.*
(A) *Noting the Time.* The officer executing the warrant must enter on it the exact date and time it was executed.
(B) *Inventory.* An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person. In a case involving the seizure of electronic storage media or the seizure or copying of electronically stored

information, the inventory may be limited to describing the physical storage media that were seized or copied. The officer may retain a copy of the electronically stored information that was seized or copied.

(C) *Receipt*. The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property. For a warrant to use remote access to search electronic storage media and seize or copy electronically stored information, the officer must make reasonable efforts to serve a copy of the warrant and receipt on the person whose property was searched or who possessed the information that was seized or copied. Service may be accomplished by any means, including electronic means, reasonably calculated to reach that person.

(D) *Return*. The officer executing the warrant must promptly return it-together with a copy of the inventory-to the magistrate judge designated on the warrant. The officer may do so by reliable electronic means. The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

(2) *Warrant for a Tracking Device*.

(A) *Noting the Time*. The officer executing a tracking-device warrant must enter on it the exact date and time the device was installed and the period during which it was used.

(B) *Return*. Within 10 days after the use of the tracking device has ended, the officer executing the warrant must return it to the judge designated in the warrant. The officer may do so by reliable electronic means.

(C) *Service*. Within 10 days after the use of the tracking device has ended, the officer executing a tracking-device warrant must serve a copy of the warrant on the person who was tracked or whose property was tracked. Service may be accomplished by delivering a copy to the person who, or whose property, was tracked; or by leaving a copy at the person's residence or usual place of abode with an individual of suitable age and discretion who resides at that location and by mailing a copy to the person's last known address. Upon request of the government, the judge may delay notice as provided in Rule 41(f)(3).

(3) *Delayed Notice*. Upon the government's request, a magistrate judge-or if authorized by Rule 41(b), a judge of a state court of record-may delay any notice required by this rule if the delay is authorized by statute.

(g) Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

(h) Motion to Suppress. A defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides.

(i) Forwarding Papers to the Clerk. The magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized.

(As amended Dec. 27, 1948, eff. Oct. 20, 1949; Apr. 9, 1956, eff. July 8, 1956; Apr. 24, 1972, eff. Oct. 1, 1972; Mar. 18, 1974, eff. July 1, 1974; Apr. 26 and July 8, 1976, eff. Aug. 1, 1976; Pub. L. 95–78, §2(e), July 30, 1977, 91 Stat. 320 , eff. Oct. 1, 1977; Apr. 30, 1979, eff. Aug. 1, 1979; Mar. 9, 1987, eff. Aug. 1, 1987; Apr. 25, 1989, eff. Dec. 1, 1989; May 1, 1990, eff. Dec. 1, 1990; Apr. 22, 1993, eff. Dec. 1, 1993; Pub. L. 107–56, title II, §219, Oct. 26, 2001, 115 Stat. 291 ; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 12, 2006, eff. Dec. 1, 2006; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 26, 2011, eff. Dec. 1, 2011; Apr. 28, 2016, eff. Dec. 1, 2016.)

## NOTES OF ADVISORY COMMITTEE ON RULES-1944

This rule is a codification of existing law and practice.

*Note to Subdivision* (a). This rule is a restatement of existing law, 18 U.S.C. [former] 611.

*Note to Subdivision* (b). This rule is a restatement of existing law, 18 U.S.C. [former] 612; *Conyer v. United States*, 80 F.2d 292 (C.C.A. 6th). This provision does not supersede or repeal special statutory provisions permitting the issuance of search warrants in specific circumstances. See Subdivision (g) and Note thereto, *infra*.

*Note to Subdivision* (c). This rule is a restatement of existing law, 18 U.S.C. [former] 613–616, 620; *Dumbra v. United States*, 268 U.S. 435.

*Note to Subdivision* (d). This rule is a restatement of existing law, 18 U.S.C. [former] 621–624.

*Note to Subdivision* (e). This rule is a restatement of existing law and practice, with the exception hereafter noted, 18 U.S.C. [former] 625, 626; *Weeks v. United States*, 232 U.S. 383; *Silverthorne Lumber Co. v. United States*, 251 U.S. 385; *Agello v. United States*, 269 U.S. 20; *Gouled v. United States*, 255 U.S. 298. While under existing law a motion to suppress evidence or to compel return of property obtained by an illegal search and seizure may be made either before a commissioner subject to review by the court on motion, or before the court, the rule provides that such motion may be made only before the court. The purpose is to prevent multiplication of proceedings and to bring the matter before the court in the first instance. While during the life of the Eighteenth Amendment when such motions were numerous it was a common practice in some districts for commissioners to hear such motions, the prevailing practice at the present time is to make such motions before the district court. This practice, which is deemed to be preferable, is embodied in the rule.

*Note to Subdivision* (f). This rule is a restatement of existing law, 18 U.S.C. [former] 627; Cf. Rule 5(c) (last sentence).

*Note to Subdivision* (g). While Rule 41 supersedes the general provisions of 18 U.S.C. 611–626 [now 18 U.S.C. 3105, 3109], relating to search warrants, it does not supersede, but preserves, all other statutory provisions permitting searches and seizures in specific situations. Among such statutes are the following:

U.S.C., Title 18:
Section 287 [former] (Search warrant for suspected counterfeiture)

U.S.C., Title 19:
Section 1595 (Customs duties; searches and seizures)

U.S.C., Title 26:
Section 3117 [now 5557] (Officers and agents authorized to investigate, issue search warrants, and prosecute for violations)

For statutes which incorporate by reference 18 U.S.C. [former] 98, and therefore are now controlled by this rule, see, e. g.:

U.S.C., Title 18:
Section 12 [former] (Subversive activities; undermining loyalty, discipline, or morale of armed forces; searches and seizures)

U.S.C., Title 26:
Section 3116 [now 7302] (Forfeitures and seizures)

Statutory provision for a warrant for detention of war materials seized under certain circumstances is found in 22 U.S.C. 402 [see 401] (Seizure of war materials intended for unlawful export.)

Other statutes providing for searches and seizures or entry without warrants are the following:

U.S.C., Title 19:
Section 482 (Search of vehicles and persons)

U.S.C., Title 25:
Section 246 [now 18 U.S.C. 3113] (Searches and seizures)

U.S.C., Title 26:
Section 3601 [now 7606] (Entry of premises for examination of taxable objects)

U.S.C., Title 29:
Section 211 (Investigations, inspections, and records)

U.S.C., Title 49:

Section 781 [now 80302] (Unlawful use of vessels, vehicles, and aircrafts; contraband article defined)
Section 782 [now 80303] (Seizure and forfeiture)
Section 784 [now 80306] (Application of related laws)

### Notes of Advisory Committee on Rules-1948 Amendment

Subdivision (b)(3).-The amendment is to substitute proper reference to Title 18 in place of the repealed acts.

Subdivision (g).-To eliminate reference to sections of the Act of June 15, 1917, c. 30, which have been repealed by the Act of June 25, 1948, c. 645, which enacted Title 18.

### Notes of Advisory Committee on Rules-1972 Amendment

Subdivision (a) is amended to provide that a search warrant may be issued only upon the request of a federal law enforcement officer or an attorney for the government. The phrase "federal law enforcement officer" is defined in subdivision (h) in a way which will allow the Attorney General to designate the category of officers who are authorized to make application for a search warrant. The phrase "attorney for the government" is defined in rule 54.

The title to subdivision (b) is changed to make it conform more accurately to the content of the subdivision. Subdivision (b) is also changed to modernize the language used to describe the property which may be seized with a lawfully issued search warrant and to take account of a recent Supreme Court decision (*Warden v. Haden*, 387 U.S. 294 (1967)) and recent congressional action (18 U.S.C. §3103a) which authorize the issuance of a search warrant to search for items of solely evidential value. 18 U.S.C. §3103a provides that "a warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense. . . ."

Recent state legislation authorizes the issuance of a search warrant for evidence of crime. See, *e.g.*, Cal. Penal Code §1524(4) (West Supp. 1968); Ill.Rev.Stat. ch. 38, §108–3 (1965); LSA C.Cr.P. art. 161 (1967); N.Y. CPL §690.10(4) (McKinney, 1971); Ore.Rev.Stat. §141.010 (1969); Wis.Stat. §968.13(2) (1969).

The general weight of recent text and law review comment has been in favor of allowing a search for evidence. 8 Wigmore, Evidence §2184a. (McNaughton rev. 1961); Kamisar. The Wiretapping-Eavesdropping Problem: A professor's View, 44 Minn.L.Rev. 891 (1960); Kaplan, Search and Seizure: A No-Man's Land in the Criminal Law, 49 Calif.L.Rev. 474 (1961); Comments: 66 Colum.L.Rev. 355 (1966), 45 N.C.L.Rev. 512 (1967), 20 U.Chi.L.Rev. 319 (1953).

There is no intention to limit the protection of the fifth amendment against compulsory self-incrimination, so items which are solely "testimonial" or "communicative" in nature might well be inadmissible on those grounds. *Schmerber v. California*, 384 U.S. 757 (1966). The court referred to the possible fifth amendment limitation in *Warden v. Hayden, supra:*

This case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure. [387 U.S. at 303].

See ALI Model Code of Pre-Arraignment Procedure §551.03(2) and commentary at pp. 3–5 (April 30, 1971).

It seems preferable to allow the fifth amendment limitation to develop as cases arise rather than attempt to articulate the constitutional doctrine as part of the rule itself.

The amendment to subdivision (c) is intended to make clear that a search warrant may properly be based upon a finding of probable cause based upon hearsay. That a search warrant may properly be issued on the basis of hearsay is current law. See, *e.g., Jones v. United States*, 362 U.S. 257 (1960); *Spinelli v. United States*, 393 U.S. 410 (1969). See also *State v. Beal*, 40 Wis.2d 607, 162 N.W.2d 640 (1968), reversing prior Wisconsin cases which held that a search warrant could not properly issue on the basis of hearsay evidence.

The provision in subdivision (c) that the magistrate may examine the affiant or witnesses under oath is intended to assure him an opportunity to make a careful decision as to whether there is probable cause. It seems desirable to do this as an incident to the issuance of the

warrant rather than having the issue raised only later on a motion to suppress the evidence. See L. Tiffany, D. McIntyre, and D. Rotenberg, Detection of Crime 118 (1967). If testimony is taken it must be recorded, transcribed, and made part of the affidavit or affidavits. This is to insure an adequate basis for determining the sufficiency of the evidentiary grounds for the issuance of the search warrant if that question should later arise.

The requirement that the warrant itself state the grounds for its issuance and the names of any affiants, is eliminated as unnecessary paper work. There is no comparable requirement for an arrest warrant in rule 4. A person who wishes to challenge the validity of a search warrant has access to the affidavits upon which the warrant was issued.

The former requirement that the warrant require that the search be conducted "forthwith" is changed to read "within a specified period of time not to exceed 10 days." The former rule contained an inconsistency between subdivision (c) requiring that the search be conducted "forthwith" and subdivision (d) requiring execution "within 10 days after its date." The amendment resolves this ambiguity and confers discretion upon the issuing magistrate to specify the time within which the search may be conducted to meet the needs of the particular case.

The rule is also changed to allow the magistrate to authorize a search at a time other than "daytime," where there is "reasonable cause shown" for doing so. To make clear what "daytime" means, the term is defined in subdivision (h).

Subdivision (d) is amended to conform its language to the Federal Magistrates Act. The language "The warrant may be executed and returned only within 10 days after its date" is omitted as unnecessary. The matter is now covered adequately in proposed subdivision (c) which gives the issuing officer authority to fix the time within which the warrant is to be executed.

The amendment to subdivision (e) and the addition of subdivision (f) are intended to require the motion to suppress evidence to be made in the trial court rather than in the district in which the evidence was seized as now allowed by the rule. In *DiBella v. United States*, 369 U.S. 121 (1962), the court, in effect, discouraged motions to suppress in the district in which the property was seized:

There is a decision in the Second Circuit, *United States v. Klapholz*, 230 F.2d 494 (1956), allowing the Government an appeal from an order granting a post-indictment motion to suppress, apparently for the single reason that the motion was filed in the district of seizure rather than of trial; but the case was soon thereafter taken by a District Court to have counseled declining jurisdiction of such motions for reasons persuasive against allowing the appeal: "This course will avoid a needless duplication of effort by two courts and provide a more expeditious resolution of the controversy besides avoiding the risk of determining prematurely and inadequately the admissibility of evidence at the trial. . . . A piecemeal adjudication such as that which would necessarily follow from a disposition of the motion here might conceivably result in prejudice either to the Government or the defendants, or both." *United States v. Lester*, 21 F.R.D. 30, 31 (D.C.S.D.N.Y. 1957). Rule 41(e), of course, specifically provides for making of the motion in the district of seizure On a summary hearing, however, the ruling there is likely always to be tentative. We think it accords most satisfactorily with sound administration of the Rules to treat such rulings as interlocutory. [369 U.S. at 132–133.]

As amended, subdivision (e) provides for a return of the property if (1) the person is entitled to lawful possession *and* (2) the seizure was illegal. This means that the judge in the district of seizure does not have to decide the legality of the seizure in cases involving contraband which, even if seized illegally, is not to be returned.

The five grounds for returning the property, presently listed in the rule, are dropped for two reasons-(1) substantive grounds for objecting to illegally obtained evidence (*e.g., Miranda*) are not ordinarily codified in the rules and (2) the categories are not entirely accurate. See *United States v. Howard*, 138 F.Supp. 376, 380 (D.Md. 1956).

A sentence is added to subdivision (e) to provide that a motion for return of property, made in the district of trial, shall be treated also as a motion to suppress under rule 12. This change is intended to further the objective of rule 12 which is to have all pretrial motions disposed of in a

single court appearance rather than to have a series of pretrial motions made on different dates, causing undue delay in administration.

Subdivision (f) is new and reflects the position that it is best to have the motion to suppress made in the court of the district of trial rather than in the court of the district in which the seizure occurred. The motion to suppress in the district of trial should be made in accordance with the provisions of rule 12.

Subdivision (g) is changed to conform to subdivision (c) which requires the return to be made before a federal judicial officer even though the search warrant may have been issued by a nonfederal magistrate.

Subdivision (h) is former rule 41(g) with the addition of a definition of the term "daytime" and the phrase "federal law enforcement officer."

### NOTES OF ADVISORY COMMITTEE ON RULES-1974 AMENDMENT

The amendment restores the words "court of record" which were inadvertently omitted from the amended text of the subdivision which was transmitted by the Judicial Conference to the Supreme Court and prescribed by the Court on April 24, 1972.

### NOTES OF ADVISORY COMMITTEE ON RULES-1977 AMENDMENT

Rule 41(c)(2) is added to establish a procedure for the issuance of a search warrant when it is not reasonably practicable for the person obtaining the warrant to present a written affidavit to a magistrate or a state judge as required by subdivision (c)(1). At least two states have adopted a similar procedure, Ariz.Rev.Stat. Ann. §§13–1444(c)–1445(c) (Supp. 1973); Cal.Pen. Code §§1526(b), 1528(b) (West Supp. 1974), and comparable amendments are under consideration in other jurisdictions. See Israel, Legislative Regulation of Searches and Seizures: The Michigan Proposals, 73 Mich.L.Rev. 221, 258–63 (1975); Nakell, Proposed Revisions of North Carolina's Search and Seizure Law, 52 N.Car.L.Rev. 277, 306–11 (1973). It has been strongly recommended that "every State enact legislation that provides for the issuance of search warrants pursuant to telephoned petitions and affidavits from police officers." National Advisory Commission on Criminal Justice Standards and Goals, Report on Police 95 (1973). Experience with the procedure has been most favorable. Miller, Telephonic Search Warrants: The San Diego Experience, 9 The Prosecutor 385 (1974).

The trend of recent Supreme Court decisions has been to give greater priority to the use of a search warrant as the proper way of making a lawful search:

> It is a cardinal rule that, in seizing goods and articles, law enforcement agents must secure and use search warrants whenever reasonably practicable. . . . This rule rests upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed upon such activities. *Trupiano v. United States*, 334 U.S. 699, 705 (1948), quoted with approval in *Chimel v. California*, 395 U.S. 752, 758 (1969).

See also *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); Note, Chambers v. Maroney: New Dimensions in the Law of Search and Seizure, 46 Indiana L.J. 257, 262 (1971).

Use of search warrants can best be encouraged by making it administratively feasible to obtain a warrant when one is needed. One reason for the nonuse of the warrant has been the administrative difficulties involved in getting a warrant, particularly at times of the day when a judicial officer is ordinarily unavailable. See L. Tiffany, D. McIntyre, and D. Rotenberg, Detection of Crime 105–116 (1967); LaFave, Improving Police Performance Through the Exclusionary Rule, 30 Mo.L.Rev. 391, 411 (1965). Federal law enforcement officers are not infrequently confronted with situations in which the circumstances are not sufficiently "exigent" to justify the serious step of conducting a warrantless search of private premises, but yet there exists a significant possibility that critical evidence would be lost in the time it would take to obtain a search warrant by traditional means. See, e.g., *United States v. Johnson*,-F.2d-(D.C. Cir. June 16, 1975).

Subdivision (c)(2) provides that a warrant may be issued on the basis of an oral statement of a person not in the physical presence of the federal magistrate. Telephone, radio, or other

electronic methods of communication are contemplated. For the warrant to properly issue, four requirements must be met:

(1) The applicant-a federal law enforcement officer or an attorney for the government, as required by subdivision (a)-must persuade the magistrate that the circumstances of time and place make it reasonable to request the magistrate to issue a warrant on the basis of oral testimony. This restriction on the issuance of a warrant recognizes the inherent limitations of an oral warrant procedure, the lack of demeanor evidence, and the lack of a written record for the reviewing magistrate to consider before issuing the warrant. See Comment, Oral Search Warrants: A New Standard of Warrant Availability, 21 U.C.L.A. Law Review 691, 701 (1974). Circumstances making it reasonable to obtain a warrant on oral testimony exist if delay in obtaining the warrant might result in the destruction or disappearance of the property [see *Chimel v. California*, 395 U.S. 752, 773–774 (1969) (White, dissenting); Landynski, The Supreme Court's Search for Fourth Amendment Standards: The Warrantless Search, 45 Conn.B.J. 2, 25 (1971)]; or because of the time when the warrant is sought, the distance from the magistrate of the person seeking the warrant, or both.

(2) The applicant must orally state facts sufficient to satisfy the probable cause requirement for the issuance of the search warrant. (See subdivision (c)(1).) This information may come from either the applicant federal law enforcement officer or the attorney for the government or a witness willing to make an oral statement. The oral testimony must be recorded at this time so that the transcribed affidavit will provide an adequate basis for determining the sufficiency of the evidence if that issue should later arise. See Kipperman. Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence, 84 Harv.L.Rev. 825 (1971). It is contemplated that the recording of the oral testimony will be made by a court reporter, by a mechanical recording device, or by a verbatim contemporaneous writing by the magistrate. Recording a telephone conversation is no longer difficult with many easily operated recorders available. See 86:2 L.A. Daily Journal 1 (1973); Miller, Telephonic Search Warrants: The San Diego Experience, 9 The Prosecutor 385, 386 (1974).

(3) The applicant must read the contents of the warrant to the federal magistrate in order to enable the magistrate to know whether the requirements of certainty in the warrant are satisfied. The magistrate may direct that changes be made in the warrant. If the magistrate approves the warrant as requested or as modified by the magistrate, he then issues the warrant by directing the applicant to sign the magistrate's name to the duplicate original warrant. The magistrate then causes to be made a written copy of the approved warrant. This constitutes the original warrant. The magistrate enters the time of issuance of the duplicate original warrant on the face of the original warrant.

(4) Return of the duplicate original warrant and the original warrant must conform to subdivision (d). The transcript of the sworn oral testimony setting forth the grounds for issuance of the warrant must be signed by affiant in the presence of the magistrate and filed with the court.

Because federal magistrates are likely to be accessible through the use of the telephone or other electronic devices, it is unnecessary to authorize state judges to issue warrants under subdivision (c)(2).

Although the procedure set out in subdivision (c)(2) contemplates resort to technology which did not exist when the Fourth Amendment was adopted, the Advisory Committee is of the view that the procedure complies with all of the requirements of the Amendment. The telephonic search warrant process has been upheld as constitutional by the courts, e.g., *People v. Peck*, 38 Cal.App.3d 993, 113 Cal.Rptr. 806 (1974), and has consistently been so viewed by commentators. See Israel, Legislative Regulation of Searches and Seizures: The Michigan Proposals, 73 Mich.L.Rev. 221, 260 (1975); Nakell, Proposed Revisions of North Carolina's Search and Seizure Law, 52 N.Car.L.Rev. 277, 310 (1973); Comment, Oral Search Warrants: A New Standard of Warrant Availability, 21 U.C.L.A.Rev. 691, 697 (1973).

Reliance upon oral testimony as a basis for issuing a search warrant is permissible under the Fourth Amendment. *Campbell v. Minnesota*, 487 F.2d 1 (8th Cir. 1973); *United States ex rel. Gaugler v. Brierley*, 477 F.2d 516 (3d Cir. 1973); *Tabasko v. Barton*, 472 F.2d 871 (6th Cir. 1972); *Frazier v.*

*Roberts*, 441 F.2d 1224 (8th Cir. 1971). Thus, the procedure authorized under subdivision (c)(2) is not objectionable on the ground that the oral statement is not transcribed in advance of the issuance of the warrant. *People v. Peck*, 38 Cal.App.3d 993, 113 Cal.Rptr. 806 (1974). Although it has been questioned whether oral testimony will suffice under the Fourth Amendment if some kind of contemporaneous record is not made of that testimony, see dissent from denial of certiorari in *Christofferson v. Washington*, 393 U.S. 1090 (1969), this problem is not present under the procedure set out in subdivision (c)(2).

The Fourth Amendment requires that warrants issue "upon probable cause, supported by Oath or affirmation." The significance of the oath requirement is "that someone must take the responsibility for the facts alleged, giving rise to the probable cause for the issuance of a warrant." *United States ex rel. Pugh v. Pate*, 401 F.2d 6 (7th Cir. 1968); See also *Frazier v. Roberts*, 441 F.2d 1224 (8th Cir. 1971). This is accomplished under the procedure required by subdivision (c)(2); the need for an oath under the Fourth Amendment does not "require a face to face confrontation between the magistrate and the affiant." *People v. Chavaz*, 27 Cal.App.3d 883, 104 Cal.Rptr. 247 (1972). See also *People v. Aguirre*, 26 Cal.App.3d 7, 103 Cal.Rptr. 153 (1972), noting it is unnecessary that "oral statements [be] taken in the physical presence of the magistrate."

The availability of the procedure authorized by subdivision (c)(2) will minimize the necessity of federal law enforcement officers engaging in other practices which, at least on occasion, might threaten to a greater extent those values protected by the Fourth Amendment. Although it is permissible for an officer in the field to relay his information by radio or telephone to another officer who has more ready access to a magistrate and who will thus act as the affiant, *Lopez v. United States*, 370 F.2d 8 (5th Cir. 1966); *State v. Banks*, 250 N.C. 728, 110 S.E.2d 322 (1959), that procedure is less desirable than that permitted under subdivision (c)(2), for it deprives "the magistrate of the opportunity to examine the officer at the scene, who is in a much better position to answer questions relating to probable cause and the requisite scope of the search." Israel, Legislative Regulation of Searches and Seizures: The Michigan Proposals, 73 Mich.L.Rev. 221, 260 (1975). Or, in the absence of the subdivision (c)(2) procedure, officers might take "protective custody" of the premises and occupants for a significant period of time while a search warrant was sought by traditional means. The extent to which the "protective custody" procedure may be employed consistent with the Fourth Amendment is uncertain at best; see Griswold, Criminal Procedure, 1969-Is It a Means or an End?, 29 Md.L.Rev. 307, 317 (1969). The unavailability of the subdivision (c)(2) procedure also makes more tempting an immediate resort to a warrantless search in the hope that the circumstances will later be found to have been sufficiently "exigent" to justify such a step. See Miller, Telephonic Search Warrants: The San Diego Experience, 9 The Prosecutor 385, 386 (1974), noting a dramatic increase in police utilization of the warrant process following enactment of a telephonic warrant statute.

## NOTES OF COMMITTEE ON THE JUDICIARY, SENATE REPORT NO. 95–354; 1977 AMENDMENTS PROPOSED BY THE SUPREME COURT

The committee agrees with the Supreme Court that it is desirable to encourage Federal law enforcement officers to seek search warrants in situations where they might otherwise conduct warrantless searches by providing for a telephone search warrant procedure with the basic characteristics suggested in the proposed Rule 41(c)(2). As the Supreme Court has observed, "It is a cardinal rule that, in seizing goods and articles, law enforcement agents must secure and use search warrants whenever reasonably practicable." After consideration of the Supreme Court version and a proposal set forth in H.R. 7888, the committee decided to use the language of the House bill as the vehicle, with certain modifications.

A new provision, as indicated in subparagraph (c)(2)(A), is added to establish a procedure for the issuance of a search warrant where the circumstances make it reasonable to dispense with a written affidavit to be presented in person to a magistrate. At least two States have adopted a similar procedure-Arizona and California-and comparable amendments are under consideration in other jurisdictions. Such a procedure has been strongly recommended by the National

Advisory Commission on Criminal Justice Standards and Goals and State experience with the procedure has been favorable. The telephone search warrant process has been upheld as constitutional by the courts and has consistently been so viewed by commentators.

In recommending a telephone search warrant procedure, the Advisory Committee note on the Supreme Court proposal points out that the preferred method of conducting a search is with a search warrant. The note indicates that the rationale for the proposed change is to encourage Federal law enforcement officers to seek search warrants in situations when they might otherwise conduct warrantless searches. "Federal law enforcement officers are not infrequently confronted with situations in which the circumstances are not sufficiently 'exigent' to justify the serious step of conducting a warrantless search of private premises, but yet there exists a significant possibility that critical evidence would be lost in the time it would take to obtain a search warrant by traditional means."

Subparagraph (c)(2)(B) provides that the person requesting the warrant shall prepare a "duplicate original warrant" which will be read and recorded verbatim by the magistrate on an "original warrant." The magistrate may direct that the warrant be modified.

Subparagraph (c)(2)(C) provides that, if the magistrate is satisfied that the circumstances are such as to make it reasonable to dispense with a written affidavit and that grounds for the application exist or there is probable cause to believe that they exist, he shall order the issuance of the warrant by directing the requestor to sign the magistrate's name on the duplicate original warrant. The magistrate is required to sign the original warrant and enter the time of issuance thereon. The finding of probable cause may be based on the same type of evidence appropriate for a warrant upon affidavit.

Subparagraph (c)(2)(D) requires the magistrate to place the requestor and any witness under oath and, if a voice recording device is available, to record the proceeding. If a voice recording is not available, the proceeding must be recorded verbatim stenographically or in longhand. Verified copies must be filed with the court as specified.

Subparagraph (c)(2)(E) provides that the contents of the warrant upon oral testimony shall be the same as the contents of a warrant upon affidavit.

Subparagraph (c)(2)(F) provides that the person who executes the warrant shall enter the exact time of execution on the face of the duplicate original warrant. Unlike H.R. 7888, this subparagraph does not require the person who executes the warrant to have physical possession of the duplicate original warrant at the time of the execution of the warrant. The committee believes this would make an unwise and unnecessary distinction between execution of regular warrants issued on written affidavits and warrants issued by telephone that would limit the flexibility and utility of this procedure for no useful purpose.

Finally, subparagraph (c)(2)(G) makes it clear that, absent a finding of bad faith by the government, the magistrate's judgment that the circumstances made it reasonable to dispense with a written affidavit-a decision that does not go to the core question of whether there was probable cause to issue a warrant-is not a ground for granting a motion to suppress evidence.

### Congressional Modification of Proposed 1977 Amendment

Pub. L. 95–78, §2(e), July 30, 1977, 91 Stat. 320 , provided in part that the amendment by the Supreme Court [in its order of Apr. 26, 1976] to subdivision (c) of rule 41 of the Federal Rules of Criminal Procedure [subd. (c) of this rule] is approved in a modified form.

### Notes of Advisory Committee on Rules-1979 Amendment

This amendment to Rule 41 is intended to make it possible for a search warrant to issue to search *for* a person under two circumstances: (i) when there is probable cause to arrest that person; or (ii) when that person is being unlawfully restrained. There may be instances in which a search warrant would be required to conduct a search in either of these circumstances. Even when a search warrant would not be required to enter a place to search for a person, a procedure for obtaining a warrant should be available so that law enforcement officers will be encouraged to resort to the preferred alternative of acquiring "an objective predetermination of probable cause" *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), in this

instance, that the person sought is at the place to be searched.

That part of the amendment which authorizes issuance of a search warrant to search for a person unlawfully restrained is consistent with ALI Model Code of Pre-Arraignment Procedure §SS 210.3(1)(d) (Proposed Official Draft, 1975), which specifies that a search warrant may issue to search for "an individual * * * who is unlawfully held in confinement or other restraint." As noted in the Commentary thereto, id. at p. 507:

Ordinarily such persons will be held against their will and in that case the persons are, of course, not subject to "seizure." But they are, in a sense, "evidence" of crime, and the use of search warrants for these purposes presents no conceptual difficulties.

Some state search warrant provisions also provide for issuance of a warrant in these circumstances. See, e. g., Ill.Rev.Stat. ch. 38, §108–3 ("Any person who has been kidnapped in violation of the laws of this State, or who has been kidnapped in another jurisdiction and is now concealed within this State").

It may be that very often exigent circumstances, especially the need to act very promptly to protect the life or well-being of the kidnap victim, would justify an immediate warrantless search for the person restrained. But this is not inevitably the case. Moreover, as noted above there should be available a process whereby law enforcement agents may acquire in advance a judicial determination that they have cause to intrude upon the privacy of those at the place where the victim is thought to be located.

That part of the amendment which authorizes issuance of a search warrant to search for a person to be arrested is also consistent with ALI Model Code of Pre-Arraignment Procedure §SS 210.3(1)(d) (Proposed Official Draft, 1975), which states that a search warrant may issue to search for "an individual for whose arrest there is reasonable cause." As noted in the Commentary thereto, id. at p. 507, it is desirable that there be "explicit statutory authority for such searches." Some state search warrant provisions also expressly provide for the issuance of a search warrant to search for a person to be arrested. See, e. g., Del.Code Ann. tit. 11, §2305 ("Persons for whom a warrant of arrest has been issued"). This part of the amendment to Rule 41 covers a defendant or witness for whom an arrest warrant has theretofore issued, or a defendant for whom grounds to arrest exist even though no arrest warrant has theretofore issued. It also covers the arrest of a deportable alien under 8 U.S.C. §1252, whose presence at a certain place might be important evidence of criminal conduct by another person, such as the harboring of undocumented aliens under 8 U.S.C. §1324(a)(3).

In *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the Court once again alluded to "the still unsettled question" of whether, absent exigent circumstances, officers acting without a warrant may enter private premises to make an arrest. Some courts have indicated that probable cause alone ordinarily is sufficient to support an arrest entry. *United States v. Fernandez*, 480 F.2d 726 (2d Cir. 1973); *United States ex rel. Wright v. Woods*, 432 F.2d 1143 (7th Cir. 1970). There exists some authority, however, that except under exigent circumstances a warrant is required to enter the defendant's own premises, *United States v. Calhoun*, 542 F.2d 1094 (9th Cir. 1976); *United States v. Lindsay*, 506 F.2d 166 (D.C.Cir. 1974); *Dorman v. United States*, 435 F.2d 385 (D.C.Cir. 1970), or, at least, to enter the premises of a third party, *Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974); *Fisher v. Volz*, 496 F.2d 333 (3d Cir. 1974); *Huotari v. Vanderport*, 380 F.Supp. 645 (D.Minn. 1974).

It is also unclear, assuming a need for a warrant, what kind of warrant is required, although it is sometimes assumed that an arrest warrant will suffice, e. g., *United States v. Calhoun*, supra; *United States v. James*, 528 F.2d 999 (5th Cir. 1976). There is a growing body of authority, however, that what is needed to justify entry of the premises of a third party to arrest is a search warrant, e. g., *Virgin Islands v. Gereau*, supra; *Fisher v. Volz*, supra. The theory is that if the privacy of this third party is to be protected adequately, what is needed is a probable cause determination by a magistrate that the wanted person is presently within that party's premises. "A warrant for the arrest of a suspect may indicate that the police officer has probable cause to believe the suspect committed the crime; it affords no basis to believe the suspect is in some stranger's home." *Fisher v. Volz*, supra.

It has sometimes been contended that a search warrant should be required for a nonexigent

entry to arrest even when the premises to be entered are those of the person to be arrested. Rotenberg & Tanzer, Searching for the Person to be Seized, 35 Ohio St.L.J. 56, 69 (1974). Case authority in support is lacking, and it may be that the protections of a search warrant are less important in such a situation because ordinarily "rudimentary police procedure dictates that a suspect's residence be eliminated as a possible hiding place before a search is conducted elsewhere." *People v. Sprovieri*, 95 Ill.App.2d 10, 238 N.E.2d 115 (1968).

Despite these uncertainties, the fact remains that in some circuits under some circumstances a search warrant is required to enter private premises to arrest. Moreover, the law on this subject is in a sufficient state of uncertainty that this position may be taken by other courts. It is thus important that Rule 41 clearly express that a search warrant for this purpose may issue. And even if future decisions head the other direction, the need for the amendment would still exist. It is clear that law enforcement officers "may not constitutionally enter the home of a private individual to search for another person, though he be named in a valid arrest warrant in their possession, absent probable cause to believe that the named suspect is present within at the time." *Fisher v. Volz*, supra. The cautious officer is entitled to a procedure whereby he may have this probable cause determination made by a neutral and detached magistrate in advance of the entry.

## NOTES OF ADVISORY COMMITTEE ON RULES-1987 AMENDMENT

The amendments are technical. No substantive change is intended.

## NOTES OF ADVISORY COMMITTEE ON RULES-1989 AMENDMENT

The amendment to Rule 41(e) conforms the rule to the practice in most districts and eliminates language that is somewhat confusing. The Supreme Court has upheld warrants for the search and seizure of property in the possession of persons who are not suspected of criminal activity. See, e.g., *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978). Before the amendment, Rule 41(e) permitted such persons to seek return of their property if they were aggrieved by an unlawful search and seizure. But, the rule failed to address the harm that may result from the interference with the lawful use of property by persons who are not suspected of wrongdoing. Courts have recognized that once the government no longer has a need to use evidence, it should be returned. See, e.g., *United States v. Wilson*, 540 F.2d 1100 (D.C. Cir. 1976). Prior to the amendment, Rule 41(e) did not explicitly recognize a right of a property owner to obtain return of lawfully seized property even though the government might be able to protect its legitimate law enforcement interests in the property despite its return-e.g., by copying documents or by conditioning the return on government access to the property at a future time. As amended, Rule 41(e) provides that an aggrieved person may seek return of property that has been unlawfully seized, and a person whose property has been lawfully seized may seek return of property when aggrieved by the government's continued possession of it.

No standard is set forth in the rule to govern the determination of whether property should be returned to a person aggrieved either by an unlawful seizure or by deprivation of the property. The fourth amendment protects people from unreasonable seizures as well as unreasonable searches, *United States v. Place*, 462 U.S. 696, 701 (1983), and reasonableness under all of the circumstances must be the test when a person seeks to obtain the return of property. If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable.

The amendment deletes language dating from 1944 stating that evidence shall not be admissible at a hearing or at a trial if the court grants the motion to return property under Rule 41(e). This language has not kept pace with the development of exclusionary rule doctrine and is currently only confusing. The Supreme Court has now held that evidence seized in violation of the fourth amendment, but in good faith pursuant to a warrant, may be used even against a person aggrieved by the constitutional violation. *United States v. Leon*, 468 U.S. 897 (1984). The Court has also held that illegally seized evidence may be admissible against persons who are

not personally aggrieved by an illegal search or seizure. *Rakas v. Illinois*, 439 U.S. 128 (1978). Property that is inadmissible for one purpose (e.g., as part of the government's case-in-chief) may be admissible for another purpose (e.g., impeachment, *United States v. Havens*, 446 U.S. 620 (1980)). Federal courts have relied upon these decisions and permitted the government to retain and to use evidence as permitted by the fourth amendment.

Rule 41(e) is not intended to deny the United States the use of evidence permitted by the fourth amendment and federal statutes, even if the evidence might have been unlawfully seized. See, e.g., *United States v. Calandra*, 414 U.S. 338, 349 n.6 (1978) ("Rule 41(e) does not constitute a statutory expansion of the exclusionary rule."); *United States v. Roberts*, 852 F.2d 671 (2nd Cir. 1988) (exceptions to exclusionary rule applicable to Rule 41(e)). Thus, the exclusionary provision is deleted, and the scope of the exclusionary rule is reserved for judicial decisions.

In opting for a reasonableness approach and in deleting the exclusionary language, the Committee rejects the analysis of *Sovereign News Co. v. United States*, 690 F.2d 569 (6th Cir. 1982), cert. denied, 464 U.S. 814 (1983), which held that the United States must return photocopies of lawfully seized business records unless it could demonstrate that the records were "necessary for a specific investigation." As long as the government has a law enforcement purpose in copying records, there is no reason why it should be saddled with a heavy burden of justifying the copying. Although some cases have held that the government must return copies of records where the originals were illegally seized-See, e.g., *United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 801 (1948); *Goodman v. United States*, 369 F.2d 166 (9th Cir. 1966)-these holdings are questionable in situations in which the government is permitted under Supreme Court decisions to use illegally seized evidence, and their reasoning does not apply to legally seized evidence.

As amended, Rule 41(e) avoids an all or nothing approach whereby the government must either return records and make no copies or keep originals notwithstanding the hardship to their owner. The amended rule recognizes that reasonable accommodations might protect both the law enforcement interests of the United States and the property rights of property owners and holders. In many instances documents and records that are relevant to ongoing or contemplated investigations and prosecutions may be returned to their owner as long as the government preserves a copy for future use. In some circumstances, however, equitable considerations might justify an order requiring the government to return or destroy all copies of records that it has seized. See, e.g., *Paton v. LaPrade*, 524 F.2d 862, 867–69 (3rd Cir. 1975). The amended rule contemplates judicial action that will respect both possessory and law enforcement interests.

The word "judge" is changed to "court" in the second sentence of subdivision (e) to clarify that a magistrate may receive evidence in the course of making a finding or a proposed finding for consideration by the district judge.

## NOTES OF ADVISORY COMMITTEE ON RULES-1990 AMENDMENT

Rule 41(a). The amendment to Rule 41(a) serves several purposes. First, it furthers the constitutional preference for warrants by providing a mechanism whereby a warrant may be issued in a district for a person or property that is moving into or through a district or might move outside the district while the warrant is sought or executed. Second, it clarifies the authority of federal magistrates to issue search warrants for property that is relevant to criminal investigation being conducted in a district and, although located outside the United States, that is in a place where the United States may lawfully conduct a search.

The amendment is not intended to expand the class of persons authorized to request a warrant and the language "upon request of a federal law enforcement officer," modifies all warrants covered by Rule 41. The amendment is intended to make clear that judges of state courts of record within a federal district may issue search warrants for persons or property located within that district. The amendment does not prescribe the circumstances in which a warrant is required and is not intended to change the law concerning warrant requirements. Rather the rule provides a mechanism for the issuance of a warrant when one is required, or when a law enforcement officer desires to seek a warrant even though warrantless activity is

permissible.

Rule 41(a)(1) permits anticipatory warrants by omitting the words "is located," which in the past required that in all instances the object of the search had to be located within the district at the time the warrant was issued. Now a search for property or a person within the district, or expected to be within the district, is valid if it otherwise complies with the rule.

Rule 41(a)(2) authorizes execution of search warrants in another district under limited circumstances. Because these searches are unusual, the rule limits to federal magistrates the authority to issue such warrants. The rule permits a federal magistrate to issue a search warrant for property within the district which is moving or may move outside the district. The amendment recognizes that there are inevitable delays between the application for a warrant and its authorization, on the one hand, and the execution of the warrant, on the other hand. The amendment also recognizes that when property is in motion, there may be good reason to delay execution until the property comes to rest. The amendment provides a practical tool for federal law enforcement officers that avoids the necessity of their either seeking several warrants in different districts for the same property or their relying on an exception to the warrant requirement for search of property or a person that has moved outside a district.

The amendment affords a useful warrant procedure to cover familiar fact patterns, like the one typified by *United States v. Chadwick*, 433 U.S. 1 (1976). In *Chadwick*, agents in San Diego observed suspicious activities involving a footlocker carried onto a train. When the train arrived in Boston, the agents made an arrest and conducted a warrantless search of the footlocker (which the Supreme Court held was invalid). Under the amended rule, agents who have probable cause in San Diego would be able to obtain a warrant for a search of the footlocker even though it is moving outside the district. Agents, who will not be sure exactly where the footlocker will be unloaded from the train, may execute the warrant when the journey ends. *See also United States v. Karo*, 468 U.S. 705 (1984) (rejecting argument that obtaining warrant to monitor beeper would not comply with requirement of particularity because its final destination may not be known); *United States v. Knotts*, 460 U.S. 276 (1983) (agents followed beeper across state lines). The Supreme Court's holding in *Chadwick* permits law enforcement officers to seize and hold an object like a footlocker while seeking a warrant. Although the amended rule would not disturb this holding, it provides a mechanism for agents to seek a probable cause determination and a warrant before interfering with the property and seizing it. It encourages reliance on warrants.

The amendment is not intended to abrogate the requirements of probable cause and prompt execution. At some point, a warrant issued in one district might become stale when executed in another district. But staleness can be a problem even when a warrant is executed in the district in which it was issued. *See generally United States v. Harris*, 403 U.S. 573, 579, 589 (1971). And at some point, an intervening event might make execution of a warrant unreasonable. *Cf. Illinois v. Andreas*, 463 U.S. 765, 772 (1983). Evaluations of the execution of a warrant must, in the nature of things, be made after the warrant is issued.

Nor does the amendment abrogate the requirement of particularity. Thus, it does not authorize searches of premises other than a particular place. As recognized by the Supreme Court in *Karo, supra*, although agents may not know exactly where moving property will come to rest, they can still describe with particularity the object to be searched.

The amendment would authorize the search of a particular object or container provided that law enforcement officials were otherwise in a lawful position to execute the search without making an impermissible intrusion. For example, it would authorize the search of luggage moving aboard a plane.

Rule 41(a)(3) [The Supreme Court did not adopt the addition of a subsection (3) to Rule 41 (a)] provides for warrants to search property outside the United States. No provision for search warrants for persons is made lest the rule be read as a substitute for extradition proceedings. As with the provision for searches outside a district, *supra*, this provision is limited to search warrants issued by federal magistrates. The phrase "relevant to criminal investigation" is intended to encompass all of the types of property that are covered by Rule 41(b), which is unchanged by the amendment. That phrase also is intended to include those investigations

which begin with the request for the search warrant.

Some searches and seizures by federal officers outside the territory of the United States may be governed by the fourth amendment. *See generally* Saltzburg, the Reach of the Bill of Rights Beyond the Terra Firma of the United States, 20 Va. J. Int'l L. 741 (1980). Prior to the amendment of the rule, it was unclear how federal officers might obtain warrants authorizing searches outside the district of the issuing magistrate. Military Rule of Evidence 315 provided guidance for searches of military personnel and property and nonmilitary property in a foreign country. But it had no civilian counterpart. *See generally* S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 274–95 (2d ed. 1986).

Although the amendment rests on the assumption that the Constitution applies to some extraterritorial searches, *cf United States v. Verdugo-Urquidez*, 110 S. Ct. 1056, 494 U.S. 259 (1990) (fourth amendment inapplicable to extraterritorial searches of property owned by nonresident aliens), it does not address the question of when the Constitution requires a warrant. Nor does it address the issue of whether international agreements or treaties or the law of a foreign nation might be applicable. *See United States v. Patterson*, 812 F. 2d 486 (9th Cir. 1987). Instead, the amendment is intended to provide necessary clarification as to how a warrant may be obtained when law enforcement officials are required, or find it desirable, to do so.

### Notes of Advisory Committee on Rules-1993 Amendment

The amendment to Rule 41(c)(2)(A) is intended to expand the authority of magistrates and judges in considering oral requests for search warrants. It also recognizes the value of, and the public's increased dependence on facsimile machines to transmit written information efficiently and accurately. As amended, the Rule should thus encourage law enforcement officers to seek a warrant, especially when it is necessary, or desirable, to supplement oral telephonic communications by written materials which may now be transmitted electronically as well. The magistrate issuing the warrant may require that the original affidavit be ultimately filed. The Committee considered, but rejected, amendments to the Rule which would have permitted other means of electronic transmission, such as the use of computer modems. In its view, facsimile transmissions provide some method of assuring the authenticity of the writing transmitted by the affiant.

The Committee considered amendments to Rule 41(c)(2)(B), Application, Rule 41(c)(2)(C), Issuance, and Rule 41(g), Return of Papers to Clerk, but determined that allowing use of facsimile transmissions in those instances would not save time and would present problems and questions concerning the need to preserve facsimile copies.

The Rule is also amended to conform to the Judicial Improvements Act of 1990 [P.L. 101–650, Title III, Section 321] which provides that each United States magistrate appointed under section 631 of title 28, United States Code, shall be known as a United States magistrate judge.

### Committee Notes on Rules-2002 Amendment

The language of Rule 41 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except as otherwise noted below. Rule 41 has been completely reorganized to make it easier to read and apply its key provisions.

Rule 41(b)(3) is a new provision that incorporates a congressional amendment to Rule 41 as a part of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001. The provision explicitly addresses the authority of a magistrate judge to issue a search warrant in an investigation of domestic or international terrorism. As long as the magistrate judge has authority in a district where activities related to terrorism may have occurred, the magistrate judge may issue a warrant for persons or property not only within the district, but outside the district as well.

Current Rule 41(c)(1), which refers to the fact that hearsay evidence may be used to support probable cause, has been deleted. That language was added to the rule in 1972, apparently to

reflect emerging federal case law. *See* Advisory Committee Note to 1972 Amendments to Rule 41 (citing cases). Similar language was added to Rule 4 in 1974. In the intervening years, however, the case law has become perfectly clear on that proposition. Thus, the Committee believed that the reference to hearsay was no longer necessary. Furthermore, the limited reference to hearsay evidence was misleading to the extent that it might have suggested that other forms of inadmissible evidence could not be considered. For example, the rule made no reference to considering a defendant's prior criminal record, which clearly may be considered in deciding whether probable cause exists. *See, e.g., Brinegar v. United States*, 338 U.S. 160 (1949) (officer's knowledge of defendant's prior criminal activity). Rather than address that issue, or any other similar issues, the Committee believed that the matter was best addressed in Rule 1101(d)(3), Federal Rules of Evidence. That rule explicitly provides that the Federal Rules of Evidence do not apply to "preliminary examinations in criminal cases, . . . issuance of warrants for arrest, criminal summonses, and search warrants . . . ." The Advisory Committee Note accompanying that rule recognizes that: "The nature of the proceedings makes application of the formal rules of evidence inappropriate and impracticable." The Committee did not intend to make any substantive changes in practice by deleting the reference to hearsay evidence.

Current Rule 41(d) provides that the officer taking the property under the warrant must provide a receipt for the property and complete an inventory. The revised rule indicates that the inventory may be completed by an officer present during the execution of the warrant, and not necessarily the officer actually executing the warrant.

## COMMITTEE NOTES ON RULES-2006 AMENDMENT

The amendments to Rule 41 address three issues: first, procedures for issuing tracking device warrants; second, a provision for delaying any notice required by the rule; and third, a provision permitting a magistrate judge to use reliable electronic means to issue warrants.

*Subdivision (a).* Amended Rule 41(a)(2) includes two new definitional provisions. The first, in Rule 41(a)(2)(D), addresses the definitions of "domestic terrorism" and "international terrorism," terms used in Rule 41(b)(2). The second, in Rule 41(a)(2)(E), addresses the definition of "tracking device."

*Subdivision (b).* Amended Rule 41(b)(4) is a new provision, designed to address the use of tracking devices. Such searches are recognized both by statute, *see* 18 U.S.C. §3117(a) and by caselaw, *see, e.g., United States v. Karo*, 468 U.S. 705 (1984); *United States v. Knotts*, 460 U.S. 276 (1983). Warrants may be required to monitor tracking devices when they are used to monitor persons or property in areas where there is a reasonable expectation of privacy. *See, e.g., United States v. Karo, supra* (although no probable cause was required to install beeper, officers' monitoring of its location in defendant's home raised Fourth Amendment concerns). Nonetheless, there is no procedural guidance in current Rule 41 for those judicial officers who are asked to issue tracking device warrants. As with traditional search warrants for persons or property, tracking device warrants may implicate law enforcement interests in multiple districts.

The amendment provides that a magistrate judge may issue a warrant, if he or she has the authority to do so in the district, to install and use a tracking device, as that term is defined in 18 U.S.C. §3117(b). The magistrate judge's authority under this rule includes the authority to permit entry into an area where there is a reasonable expectation of privacy, installation of the tracking device, and maintenance and removal of the device. The Committee did not intend by this amendment to expand or contract the definition of what might constitute a tracking device. The amendment is based on the understanding that the device will assist officers only in tracking the movements of a person or property. The warrant may authorize officers to track the person or property within the district of issuance, or outside the district.

Because the authorized tracking may involve more than one district or state, the Committee believes that only federal judicial officers should be authorized to issue this type of warrant. Even where officers have no reason to believe initially that a person or property will move outside the district of issuance, issuing a warrant to authorize tracking both inside and outside the district avoids the necessity of obtaining multiple warrants if the property or person later crosses district or state lines.

The amendment reflects the view that if the officers intend to install or use the device in a constitutionally protected area, they must obtain judicial approval to do so. If, on the other hand, the officers intend to install and use the device without implicating any Fourth Amendment rights, there is no need to obtain the warrant. *See, e.g., United States v. Knotts, supra*, where the officers' actions in installing and following tracking device did not amount to a search under the Fourth Amendment.

*Subdivision (d).* Amended Rule 41(d) includes new language on tracking devices. The tracking device statute, 18 U.S.C. §3117, does not specify the standard an applicant must meet to install a tracking device. The Supreme Court has acknowledged that the standard for installation of a tracking device is unresolved, and has reserved ruling on the issue until it is squarely presented by the facts of a case. *See United States v. Karo*, 468 U.S. 705, 718 n. 5 (1984). The amendment to Rule 41 does not resolve this issue or hold that such warrants may issue only on a showing of probable cause. Instead, it simply provides that if probable cause is shown, the magistrate judge must issue the warrant. And the warrant is only needed if the device is installed (for example, in the trunk of the defendant's car) or monitored (for example, while the car is in the defendant's garage) in an area in which the person being monitored has a reasonable expectation of privacy.

*Subdivision (e).* Rule 41(e) has been amended to permit magistrate judges to use reliable electronic means to issue warrants. Currently, the rule makes no provision for using such media. The amendment parallels similar changes to Rules 5 and 32.1(a)(5)(B)(i).

The amendment recognizes the significant improvements in technology. First, more counsel, courts, and magistrate judges now routinely use facsimile transmissions of documents. And many courts and magistrate judges are now equipped to receive filings by electronic means. Indeed, some courts encourage or require that certain documents be filed by electronic means. Second, the technology has advanced to the state where such filings may be sent from, and received at, locations outside the courthouse. Third, electronic media can now provide improved quality of transmission and security measures. In short, in a particular case, using facsimiles and electronic media to transmit a warrant can be both reliable and efficient use of judicial resources.

The term "electronic" is used to provide some flexibility to the rule and make allowance for further technological advances in transmitting data. Although facsimile transmissions are not specifically identified, the Committee envisions that facsimile transmissions would fall within the meaning of "electronic means."

While the rule does not impose any special requirements on use of facsimile transmissions, neither does it presume that those transmissions are reliable. The rule treats all electronic transmissions in a similar fashion. Whatever the mode, the means used must be "reliable." While the rule does not further define that term, the Committee envisions that a court or magistrate judge would make that determination as a local matter. In deciding whether a particular electronic means, or media, would be reliable, the court might consider first, the expected quality and clarity of the transmission. For example, is it possible to read the contents of the warrant in its entirety, as though it were the original or a clean photocopy? Second, the court may consider whether security measures are available to insure that the transmission is not compromised. In this regard, most courts are now equipped to require that certain documents contain a digital signature, or some other similar system for restricting access. Third, the court may consider whether there are reliable means of preserving the document for later use.

Amended Rule 41(e)(2)(B) is a new provision intended to address the contents of tracking device warrants. To avoid open-ended monitoring of tracking devices, the revised rule requires the magistrate judge to specify in the warrant the length of time for using the device. Although the initial time stated in the warrant may not exceed 45 days, extensions of time may be granted for good cause. The rule further specifies that any installation of a tracking device authorized by the warrant must be made within ten calendar days and, unless otherwise provided, that any installation occur during daylight hours.

*Subdivision (f).* Current Rule 41(f) has been completely revised to accommodate new

provisions dealing with tracking device warrants. First, current Rule 41(f)(1) has been revised to address execution and delivery of warrants to search for and seize a person or property; no substantive change has been made to that provision. New Rule 41(f)(2) addresses execution and delivery of tracking device warrants. That provision generally tracks the structure of revised Rule 41(f)(1), with appropriate adjustments for the particular requirements of tracking device warrants. Under Rule 41(f)(2)(A) the officer must note on the warrant the time the device was installed and the period during which the device was used. And under new Rule 41(f)(2)(B), the officer must return the tracking device warrant to the magistrate judge designated in the warrant, within 10 calendar days after use of the device has ended.

Amended Rule 41(f)(2)(C) addresses the particular problems of serving a copy of a tracking device warrant on the person who has been tracked, or whose property has been tracked. In the case of other warrants, current Rule 41 envisions that the subjects of the search typically know that they have been searched, usually within a short period of time after the search has taken place. Tracking device warrants, on the other hand, are by their nature covert intrusions and can be successfully used only when the person being investigated is unaware that a tracking device is being used. The amendment requires that the officer must serve a copy of the tracking device warrant on the person within 10 calendar days after the tracking has ended. That service may be accomplished by either personally serving the person, or both by leaving a copy at the person's residence or usual abode and by sending a copy by mail. The Rule also provides, however, that the officer may (for good cause) obtain the court's permission to delay further service of the warrant. That might be appropriate, for example, where the owner of the tracked property is undetermined, or where the officer establishes that the investigation is ongoing and that disclosure of the warrant will compromise that investigation.

Use of a tracking device is to be distinguished from other continuous monitoring or observations that are governed by statutory provisions or caselaw. *See* Title III, Omnibus Crime Control and Safe Streets Act of 1968, *as amended* by Title I of the 1986 Electronic Communications Privacy Act [Electronic Communications Privacy Act of 1986], 18 U.S.C. §§2510–2520 [sic]; *United States v. Biasucci*, 786 F.2d 504 (2d Cir. 1986) (video camera); *United States v. Torres*, 751 F.2d 875 (7th Cir. 1984) (television surveillance).

Finally, amended Rule 41(f)(3) is a new provision that permits the government to request, and the magistrate judge to grant, a delay in any notice required in Rule 41. The amendment is co-extensive with 18 U.S.C. §3103a(b). That new provision, added as part of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT) Act of 2001, authorizes a court to delay any notice required in conjunction with the issuance of any search warrants.

*Changes Made After Publication and Comment.* The Committee agreed with the NADCL [sic] proposal that the words "has authority" should be inserted in Rule 41(c)(3), and (4) to parallel similar language in Rule 41(c)(1) and (2). The Committee also considered, but rejected, a proposal from NADCL [sic] to completely redraft Rule 41(d), regarding the finding of probable cause. The Committee also made minor clarifying changes in the Committee Note.

## Committee Notes on Rules-2008 Amendment

*Subdivision (b)(5).* Rule 41(b)(5) authorizes a magistrate judge to issue a search warrant for property located within certain delineated parts of United States jurisdiction that are outside of any State or any federal judicial district. The locations covered by the rule include United States territories, possessions, and commonwealths not within a federal judicial district as well as certain premises associated with United States diplomatic and consular missions. These are locations in which the United States has a legally cognizable interest or in which it exerts lawful authority and control. The rule is intended to authorize a magistrate judge to issue a search warrant in any of the locations for which 18 U.S.C. §7(9) provides jurisdiction. The difference between the language in this rule and the statute reflect the style conventions used in these rules, rather than any intention to alter the scope of the legal authority conferred. Under the rule, a warrant may be issued by a magistrate judge in any district in which activities related to the crime under investigation may have occurred, or in the District of Columbia, which serves as the

default district for venue under 18 U.S.C. §3238.

Rule 41(b)(5) provides the authority to issue warrants for the seizure of property in the designated locations when law enforcement officials are required or find it desirable to obtain such warrants. The Committee takes no position on the question whether the Constitution requires a warrant for searches covered by the rule, or whether any international agreements, treaties, or laws of a foreign nation might be applicable. The rule does not address warrants for persons, which could be viewed as inconsistent with extradition requirements.

*Changes Made to Proposed Amendment Released for Public Comment*. With the assistance of the Style Consultant, the Committee revised (b)(5)(B) and (C) for greater clarity and compliance with the style conventions governing these rules. Because the language no longer tracks precisely the statute, the Committee Note was revised to state that the proposed rule is intended to have the same scope as the jurisdictional provision upon which it was based, 18 U.S.C. §7(9).

## Committee Notes on Rules-2009 Amendment

The time set in the former rule at 10 days has been revised to 14 days. See the Committee Note to Rule 45(a).

*Subdivision (e)(2)*. Computers and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location. This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant.

The term "electronically stored information" is drawn from Rule 34(a) of the Federal Rules of Civil Procedure, which states that it includes "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained." The 2006 Committee Note to Rule 34(a) explains that the description is intended to cover all current types of computer-based information and to encompass future changes and developments. The same broad and flexible description is intended under Rule 41.

In addition to addressing the two-step process inherent in searches for electronically stored information, the Rule limits the 10 [14] day execution period to the actual execution of the warrant and the on-site activity. While consideration was given to a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a "one size fits all" presumptive period. A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs. The rule does not prevent a judge from imposing a deadline for the return of the storage media or access to the electronically stored information at the time the warrant is issued. However, to arbitrarily set a presumptive time period for the return could result in frequent petitions to the court for additional time.

It was not the intent of the amendment to leave the property owner without an expectation of the timing for return of the property, excluding contraband or instrumentalities of crime, or a remedy. Current Rule 41(g) already provides a process for the "person aggrieved" to seek an order from the court for a return of the property, including storage media or electronically stored information, under reasonable circumstances.

Where the "person aggrieved" requires access to the storage media or the electronically stored information earlier than anticipated by law enforcement or ordered by the court, the court on a case by case basis can fashion an appropriate remedy, taking into account the time needed to image and search the data and any prejudice to the aggrieved party.

The amended rule does not address the specificity of description that the Fourth Amendment may require in a warrant for electronically stored information, leaving the application of this and other constitutional standards concerning both the seizure and the search to ongoing case law development.

*Subdivision (f)(1).* Current Rule 41(f)(1) does not address the question of whether the inventory should include a description of the electronically stored information contained in the media seized. Where it is impractical to record a description of the electronically stored information at the scene, the inventory may list the physical storage media seized. Recording a description of the electronically stored information at the scene is likely to be the exception, and not the rule, given the large amounts of information contained on electronic storage media and the impracticality for law enforcement to image and review all of the information during the execution of the warrant. This is consistent with practice in the "paper world." In circumstances where filing cabinets of documents are seized, routine practice is to list the storage devices, i.e., the cabinets, on the inventory, as opposed to making a document by document list of the contents.

*Changes Made to Proposed Amendment Released for Public Comment.* The words "copying or" were added to the last line of Rule 41(e)(2)(B) to clarify that copying as well as review may take place off-site.

The Committee Note was amended to reflect the change to the text and to clarify that the amended Rule does not speak to constitutional questions concerning warrants for electronic information. Issues of particularity and search protocol are presently working their way through the courts. *Compare United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999) (finding warrant authorizing search for "documentary evidence pertaining to the sale and distribution of controlled substances" to prohibit opening of files with a .jpg suffix) *and United States v. Fleet Management Ltd.*, 521 F. Supp. 2d 436 (E.D. Pa. 2007) (warrant invalid when it "did not even attempt to differentiate between data that there was probable cause to seize and data that was completely unrelated to any relevant criminal activity") *with United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir. 2008) (the government had no reason to confine its search to key words; "computer files are easy to disguise or rename, and were we to limit the warrant to such a specific search protocol, much evidence could escape discovery simply because of [the defendants'] labeling of the files"); *United States v. Brooks*, 427 F.3d 1246 (10th Cir. 2005) (rejecting requirement that warrant describe specific search methodology).

Minor changes were also made to conform to style conventions.

## Committee Notes on Rules-2011 Amendment

*Subdivisions (d)(3) and (e)(3).* The amendment deletes the provisions that govern the application for and issuance of warrants by telephone or other reliable electronic means. These provisions have been transferred to new Rule 4.1, which governs complaints and warrants under Rules 3, 4, 9, and 41.

*Subdivision (e)(2).* The amendment eliminates unnecessary references to "calendar" days. As amended effective December 1, 2009, Rule 45(a)(1) provides that all periods of time stated in days include "every day, including intermediate Saturdays, Sundays, and legal holidays[.]"

*Subdivisions (f)(1) and (2).* The amendment permits any warrant return to be made by reliable electronic means. Requiring an in-person return can be burdensome on law enforcement, particularly in large districts when the return can require a great deal of time and travel. In contrast, no interest of the accused is affected by allowing what is normally a ministerial act to be done electronically. Additionally, in subdivision (f)(2) the amendment eliminates unnecessary references to "calendar" days. As amended effective December 1, 2009, Rule 45(a)(1) provides that all periods of time stated in days include "every day, including intermediate Saturdays, Sundays, and legal holidays[.]"

*Changes Made to Proposed Amendment Released for Public Comment.* Obsolescent references to "calendar" days were deleted by a technical and conforming amendment not included in the rule as published. No other changes were made after publication.

## Committee Notes on Rules-2016 Amendment

*Subdivision (b).* The revision to the caption is not substantive. Adding the word "venue" makes clear that Rule 41(b) identifies the courts that may consider an application for a warrant, not the constitutional requirements for the issuance of a warrant, which must still be met.

*Subdivision (b)(6)*. The amendment provides that in two specific circumstances a magistrate judge in a district where activities related to a crime may have occurred has authority to issue a warrant to use remote access to search electronic storage media and seize or copy electronically stored information even when that media or information is or may be located outside of the district.

First, subparagraph (b)(6)(A) provides authority to issue a warrant to use remote access within or outside that district when the district in which the media or information is located is not known because of the use of technology such as anonymizing software.

Second, (b)(6)(B) allows a warrant to use remote access within or outside the district in an investigation of a violation of 18 U.S.C. §1030(a)(5) if the media to be searched are protected computers that have been damaged without authorization, and they are located in many districts. Criminal activity under 18 U.S.C. §1030(a)(5) (such as the creation and control of "botnets") may target multiple computers in several districts. In investigations of this nature, the amendment would eliminate the burden of attempting to secure multiple warrants in numerous districts, and allow a single judge to oversee the investigation.

As used in this rule, the terms "protected computer" and "damage" have the meaning provided in 18 U.S.C. §1030(e)(2) & (8).

The amendment does not address constitutional questions, such as the specificity of description that the Fourth Amendment may require in a warrant for remotely searching electronic storage media or seizing or copying electronically stored information, leaving the application of this and other constitutional standards to ongoing case law development.

*Subdivision (f)(1)(C)*. The amendment is intended to ensure that reasonable efforts are made to provide notice of the search, seizure, or copying, as well as a receipt for any information that was seized or copied, to the person whose property was searched or who possessed the information that was seized or copied. Rule 41(f)(3) allows delayed notice only "if the delay is authorized by statute." See 18 U.S.C. §3103a (authorizing delayed notice in limited circumstances).

## Amendment by Public Law

**2001**-Subd. (a). Pub. L. 107–56 inserted before period at end "and (3) in an investigation of domestic terrorism or international terrorism (as defined in section 2331 of title 18, United States Code), by a Federal magistrate judge in any district in which activities related to the terrorism may have occurred, for a search of property or for a person within or outside the district".

## Effective Date of 1977 Amendment

Amendment of this rule by order of the United States Supreme Court on Apr. 26, 1976, modified and approved by Pub. L. 95–78, effective Oct. 1, 1977, see section 4 of Pub. L. 95–78, set out as an Effective Date of Pub. L. 95–78 note under section 2074 of Title 28, Judiciary and Judicial Procedure.

## Effective Date of 1976 Amendment

Amendment of subd. (c)(1) by order of the United States Supreme Court of Apr. 26, 1976, effective Aug. 1, 1976, see section 1 of Pub. L. 94–349, set out as a note under section 2074 of Title 28, Judiciary and Judicial Procedure.

## Effective Date of 1956 Amendment

Amendment by Order of April 9, 1956, became effective 90 days thereafter.