

**U.S. Department of Justice**

*William D. Weinreb*
*Acting United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*           *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

July 21, 2017

<u>Filed Electronically</u>

Margaret Carter, Esq.
Clerk of Court
Court of Appeals for the First Circuit
John Joseph Moakley United States Courthouse
One Courthouse Way, Suite 2500
Boston, Massachusetts 02210

      Re:    *United States v. Levin*
                  **Appeal No. 16-1567**

Dear Ms. Carter:

      This case was argued on May 3, 2017, before a panel of Judges Torruella, Selya, and Lynch. I write pursuant to FRAP 28(j) to bring to the Court's attention an opinion decided today.

      In *United States v. Workman*, No. 16-1401, *slip opinion* (10th Cir. July 21, 2017), the Tenth Circuit reversed the district court's order suppressing evidence of child pornography obtained from the execution of the same NIT Warrant at issue in this appeal. Assuming without deciding that the federal magistrate judge in the Eastern District of Virginia lacked authority to issue the NIT Warrant, resulting in a prejudicial violation of either the Federal Magistrates Act or Rule 41(b), or both, the Tenth Circuit held that suppression was not required pursuant to the *Leon* good-faith exception because the executing agents had "acted with an objectively reasonable belief in the validity of the warrant." *Slip op.* at page 13; *see also* pages 6-17.

      The Tenth Circuit's reasoning in *Workman* supports the government's good-faith arguments, set forth at pages 45-64 of its opening brief and pages 2-16 of its reply brief. The government respectfully requests that this Court reverse the district court's order suppressing evidence of child pornography seized from the defendant's computer.

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By:     */s/ Kelly Begg Lawrence*
KELLY BEGG LAWRENCE
Assistant U.S. Attorney

encl.     *United States v. Workman*, No. 16-1401, *slip op.* (10th Cir. July 21, 2017)

cc:     J. W. Carney, Jr., Esq.
Nathaniel Dolcort-Silver, Esq.
J. W. Carney, Jr. & Associates
20 Park Plaza, Suite 1405
Boston, MA 02116

2

FILED
United States Court of Appeals
Tenth Circuit

July 21, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.                                                                No. 16-1401

ANDREW JOSEPH WORKMAN,

      Defendant - Appellee.

_____

ELECTRONIC FRONTIER
FOUNDATION,

      Amicus Curiae.
_____

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:15-CR-00397-RBJ-1)
_____

John P. Taddei, Attorney (Robert C. Troyer, Acting United States
Attorney, Robert M. Russel, Assistant United States Attorney, Leslie R.
Caldwell, Assistant Attorney General, and Sung-Hee Suh, Deputy Assistant
Attorney General, with him on the briefs), Office of the United States
Attorney, Denver, Colorado, for Plaintiff-Appellant.

Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady,
Federal Public Defender, with him on the brief), Office of the Federal
Public Defender, Denver, Colorado, for Defendant-Appellee.

Mark Rumold and Andrew Crocker, Electronic Frontier Foundation, San
Francisco, California, filed a brief for Amicus Curiae Electronic Frontier
Foundation.

———————————————————

Before **LUCERO**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.

———————————————————

**BACHARACH**, Circuit Judge.

———————————————————

The advent of the internet created new opportunities for viewers of child pornography, allowing immediate access to illicit websites. Use of these sites frequently leaves a computerized trail, allowing the FBI to find viewers of child pornography. But technological advances have allowed viewers of child pornography to access illicit websites without leaving a trail. To monitor access to one such website, the FBI has tried to keep up; in this case, the FBI seized and assumed control, using malware to identify and find the individuals accessing child pornography.

Though the FBI controlled the website, users lived throughout the nation. To find the users, the FBI needed a warrant. But, a paradox existed. The FBI maintained the website in the Eastern District of Virginia, but users were spread out all over the country. Finding those users could prove difficult because of geographic constraints on the FBI's ability to obtain a warrant. Notwithstanding these constraints, the FBI obtained a warrant that led to the discovery of hundreds of viewers of child pornography. One was the defendant, who faced prosecution in the District of Colorado.

2

In this prosecution, the district court held that the warrant was invalid and suppressed evidence resulting from the search. We reverse this ruling. Even when a search warrant is invalid, the resulting evidence should not be suppressed if the executing agents could reasonably rely on the warrant. Here, we may assume for the sake of argument that the warrant was invalid. But in our view, the executing agents acted in an objectively reasonable manner. Thus, the evidence should not have been suppressed.

## I.    The FBI finds Mr. Workman by seizing the website.

The website was named "Playpen," and it contained thousands of images and videos of child pornography. Unlike many websites, Playpen made it difficult to detect its users.

Detection is often possible from communication of a user's Internet Protocol address when accessing a website. But such communication did not take place with Playpen. To access this website, a user had to employ software that routed the connections through third-party computers called "nodes." With connections routed through a series of nodes, users could access Playpen without communicating their Internet Protocol addresses.

But the FBI set out to find the users who were viewing child pornography on Playpen. The FBI carried out this effort by

- seizing the internet server that hosted Playpen,

3

- loading the contents onto a government server in the Eastern District of Virginia,

- arresting the administrator of Playpen, and

- hosting Playpen from the government's server.

Even with these steps, the FBI remained unable to identify and locate the individuals accessing Playpen.

To find these individuals, the FBI obtained a warrant from a magistrate judge in the Eastern District of Virginia. This warrant allowed the FBI to install software onto the Playpen server. When Playpen was accessed, the software would automatically install malware onto the user's computer. This malware would search the user's computer for identifying information, such as the Internet Protocol address, and transmit this information to the FBI.

The FBI executed the warrant by installing this software on the government's Playpen server in the Eastern District of Virginia. With this software, the FBI learned that Playpen was being accessed by someone in Colorado. With this user's Internet Protocol address, the FBI identified the user as Andrew Joseph Workman and obtained a search warrant in the District of Colorado to search Mr. Workman's computer.



Executing the warrant, FBI agents found Mr. Workman at home in the act of downloading child pornography onto his computer. He confessed and was indicted for receiving and possessing child pornography. *See* 18 U.S.C. § 2252A(a)(2), (a)(5)(B).

## II.  Mr. Workman successfully obtains suppression of his confession and the evidence found on his computer.

Mr. Workman moved to suppress the evidence consisting of his confession and the child pornography found on his computer. For this motion, Mr. Workman challenged the validity of the warrant issued by the

magistrate judge in the Eastern District of Virginia. Mr. Workman did not

question the existence of probable cause; instead, he argued that the

warrant had been inadequately particularized and that the magistrate judge

had lacked territorial jurisdiction under Rule 41(b) of the Federal Rules of

Criminal Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(a).

But evidence illegally obtained can be admitted in some

circumstances when the executing agents rely in good faith on a warrant

subsequently determined to be invalid. Mr. Workman insisted that these

circumstances were absent here, requiring suppression of the incriminating

evidence. The district court agreed and suppressed the evidence, prompting

the government to appeal.

## III.  Even if the warrant had been invalid, the *Leon* exception would still apply.

To justify suppression based on a violation of Rule 41(b) or 28

U.S.C. § 636(a), Mr. Workman had to prove that

- the magistrate judge in the Eastern District of Virginia lacked authority to issue the warrant and

- the resulting search violated the U.S. Constitution or led to prejudice.

*United States v. Krueger*, 809 F.3d 1109, 1113-14 (10th Cir. 2015).

But even improperly obtained evidence can often be considered

admissible under the so-called "*Leon* exception." Under this exception,

evidence can be considered admissible if the executing agents could reasonably believe that the warrant was valid. The district court concluded that this exception did not apply, and Mr. Workman defends that conclusion. We disagree. In our view, the *Leon* exception applies.

For the sake of argument, we assume that (1) the magistrate judge in the Eastern District of Virginia lacked authority to issue the warrant and (2) the resulting search was unconstitutional or a prejudicial violation of federal law or a federal rule. *See United States v. Potts*, 586 F.3d 823, 832 (10th Cir. 2009) (assuming a constitutional violation and holding that the evidence would remain admissible under the *Leon* exception). According to Mr. Workman, these assumptions would essentially result in a warrantless search, where the *Leon* exception does not apply. We disagree with Mr. Workman.

We engage in de novo review on the overarching ruling on a motion to suppress. *United States v. Krueger*, 809 F.3d 1109, 1113 (10th Cir. 2015). In this case, the correctness of that ruling turns on application of the *Leon* exception. On this issue, we also engage in de novo review. *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000).

Under the *Leon* exception, improperly obtained evidence remains admissible when the executing agents "act with an objectively 'reasonable good-faith belief' that their conduct is lawful or when their conduct

involves only simple, 'isolated' negligence . . . ." *Davis v. United States*, 564 U.S. 229, 238 (2011) (citations omitted) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984) and *Herring v. United States*, 555 U.S. 135, 137 (2009)). The Supreme Court has identified five situations where the exception does not apply:

1. the affiant obtains the warrant by recklessly or intentionally supplying false information to the judge,

2. the judge abandons his or her judicial role,

3. the executing officers cannot reasonably believe that probable cause existed,

4. the warrant is facially deficient, and

5. the warrant is based on a "'bare bones' affidavit" and the officers "then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search."

*Leon*, 468 U.S. at 923 & n.24.

The present case does not fit any of these five situations. But Mr. Workman argues that

- the *Leon* exception applies only when a warrant is issued and

- a warrant is essentially non-existent (void ab initio) when the judge lacks authority to issue the warrant.

In our view, however, this argument is foreclosed by the Supreme Court's opinions in *Herring v. United States*, 555 U.S. 135 (2009), and *Arizona v. Evans*, 514 U.S. 1 (1995).

8

In *Herring*, the issue was whether the *Leon* exception applied when officers had mistakenly relied on a warrant even though it had been earlier recalled. This issue arose when a clerk mistakenly told a law enforcement officer that an arrest warrant had been issued for a named individual. 555 U.S. at 137. With this information, the officer arrested the individual. *Id.* The arrest led the officer to search the individual, finding methamphetamine in his pocket. *Id.*

The clerk's error was eventually discovered, and the government argued that evidence of the methamphetamine was admissible even though the officer was relying on the existence of a warrant that had been recalled months earlier. *Id.* at 138. The Supreme Court agreed, explaining that improperly obtained evidence is ordinarily excluded only to deter official misconduct, and here there was nothing to deter because the officer was acting based on the clerk's record-keeping error. *Id.* at 144-48. As a result, the Supreme Court applied the *Leon* exception even though the warrant had no longer existed at the time of the search. *Id.* at 147-48.

*Arizona v. Evans* was similar. There too a law enforcement officer arrested an individual based on computerized information showing an outstanding arrest warrant. 514 U.S. at 4. The arrest led to a search, which revealed marijuana in the individual's possession. *Id.* Authorities later learned that the computerized entry was a mistake, as the prior arrest

warrant had been quashed. *Id.* Even though the warrant had been quashed, the Supreme Court held that the evidence was admissible because the arresting officer had reasonably relied on the computerized entry showing an outstanding warrant. *Id.* at 11-16.

Under *Herring* and *Evans*, the *Leon* exception applies even if the magistrate judge had exceeded geographic constraints in issuing the warrant. In these circumstances, the executing agents could reasonably have relied on the warrant, just as the agents had relied in *Herring* and *Evans* on warrants that had been recalled or quashed.

In *Herring* and *Evans*, the absence of a valid warrant[1] did not preclude application of the *Leon* exception because there was no misconduct to deter. *Herring*, 555 U.S. at 147-48; *Evans*, 514 U.S. at 15-16.[2] Here too there was nothing to deter if the agents had mistakenly relied

---

[1]    Mr. Workman argues that the warrant here was void ab initio and that a valid warrant had earlier existed in *Herring* and *Evans*. This distinction is invalid for two reasons. First, the warrant here was not void ab initio, for the warrant could validly be executed by extracting data from computers within the magistrate judge's district (the Eastern District of Virginia). *E.g.*, *United States v. Anzalone*, 208 F. Supp. 3d 358, 372 (D. Mass. 2016). Second, in *Herring* and *Evans*, the warrants were no longer in existence by the time of the searches. The prior existence of the warrants had no bearing on the applicability of the *Leon* exception. For both reasons, we reject Mr. Workman's effort to distinguish *Herring* and *Evans*.

[2]    Prior to *Herring*, the Sixth Circuit Court of Appeals had held that the *Leon* exception did not apply when the judge lacked legal authority to issue

on the magistrate judge's authority to issue the warrant. As a result, *Herring* and *Evans* would require us to apply the *Leon* exception even if we were to conclude that the warrant had exceeded geographical constraints.[3]

Mr. Workman attempts to distinguish *Herring* and *Evans*, arguing that in these cases, "there was no question that the third party lawfully exercised its power in taking whatever action the officers relied on." Appellee's Resp. Br. at 38. This distinction is questionable and immaterial.

The distinction is questionable because

- in *Herring*, the third party stated that an outstanding warrant existed even though it had been recalled and

- in *Evans*, the third party programmed information into a computer stating that a warrant had remained even though it hadn't.

---

the warrant. *United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001). The court later held that this approach was no longer viable after *Herring*. *United States v. Master*, 614 F.3d 236, 242-43 (6th Cir. 2010).

[3]     In *United States v. Krueger*, 809 F.3d 1109 (10th Cir. 2015), we upheld suppression of evidence when a magistrate judge authorized a search in another district. In upholding the district court's ruling, we stated that "suppression furthers the purpose of the exclusionary rule by deterring law enforcement from seeking and obtaining warrants that clearly violate Rule 41(b)(1)." 809 F.3d at 1117 (citations omitted). But we did not consider the *Leon* exception because the government had waived the issue. *Id.* at 1113 n.5.

*See* pp. 9-10, above. Mr. Workman does not explain why he believes that the third parties had lawful authority to communicate the existence of outstanding warrants when they had already been terminated.

Mr. Workman's distinction is also immaterial. Even if the third parties in *Herring* and *Evans* had lawful authority to communicate misinformation to law enforcement officers, the misinformation would still have constituted mistakes just like the mistake that we have assumed here.

Mr. Workman suggests that the mistake in our case rendered the warrant void because the magistrate judge had exceeded geographic constraints. Let's assume, for the sake of argument, that Mr. Workman is right and that the warrant lacked any legal effect. In *Herring* and *Evans*, law enforcement officers had based the searches on warrants that were no longer in existence. How can we say that an agent is unable to rely on a warrant exceeding a magistrate judge's reach if the agent is able to rely on a warrant that doesn't even exist?

In our view, *Herring* and *Evans* govern, requiring application of the *Leon* exception when the search is based on a warrant exceeding the issuing judge's authority.

**IV.   The agents acted with an objectively reasonable belief in the validity of the warrant.**

The district court did not apply the *Leon* exception, mistakenly thinking that it did not apply. Thus, we must consider this exception in the first instance. To apply this exception, we consider whether a reasonably well-trained agent would have known that the warrant was invalid despite the magistrate judge's authorization. *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984).[4]

We start with the presumption that the executing agents "acted in good-faith reliance upon the warrant." *United States v. Campbell*, 603 F.3d 1218, 1225 (10th Cir. 2010). This presumption is bolstered by what the executing agents would have known:

1.   The software was installed in a government server located in the Eastern District of Virginia.

2.   The magistrate judge, who issued the warrant, was in the Eastern District of Virginia.

3.   All of the information yielded from the search would be retrieved in the Eastern District of Virginia.

---

[4]     Mr. Workman and the amicus curiae also argue that the search was unconstitutional because the warrant lacked particularity. But Mr. Workman and the amicus curiae do not question the executing agents' objective reasonableness in regarding the warrant as adequately particularized.

With these facts, the executing agents could reasonably rely on the magistrate judge's authority to issue a warrant authorizing installation of software and retrieval of information in the Eastern District of Virginia.

If the executing agents had sophisticated legal training, they might have recognized geographic constraints that had escaped the notice of the magistrate judge. These geographic constraints exist in both the Federal Magistrates Act and the Federal Rules of Criminal Procedure.

One potential problem involved the Federal Magistrates Act. Under this statute, the magistrate judge issuing the warrant had authority only in the Eastern District of Virginia. 28 U.S.C. § 636(a). But this magistrate judge authorized installation of software only in the Eastern District of Virginia. For many downloads, the data would move among districts, but the executing agents lacked precedent on whether magistrate judges could authorize a search of electronic data when it moves across other districts. *See United States v. Rowland*, 145 F.3d 1194, 1207 (10th Cir. 1998) (holding that the *Leon* exception was satisfied because the absence of Tenth Circuit precedent made it reasonable for the executing officers to rely on the magistrate judge's authorization).

A second potential problem involved Rule 41(b) of the Rules of Criminal Procedure. The parties appear to agree that Rule 41(b) was

14

satisfied if the FBI's method of extracting the data constituted a "tracking device." Mr. Workman insists that

- the affiant did not identify the FBI's method of extracting data as a "tracking device" and

- the FBI's method of extracting the data did not operate as a tracking device.

It is true that the affiant and magistrate judge never mentioned the term "tracking device," and the FBI's method differs from more conventional tracking devices. But the executing agents lacked precedents on these issues and could reasonably defer to the magistrate judge on these nuanced legal issues. *See Rowland*, 145 F.3d at 1207.

We expect agents executing warrants to be "reasonably well-trained," but we do not expect them to understand legal nuances the way that an attorney would. *See United States v. Corral-Corral*, 899 F.2d 927, 938-39 (10th Cir. 1990) (stating that for the *Leon* exception, we do not require law enforcement officers to appreciate "'constitutional intricacies'" under "'the standards applicable to lawyers'" (quoting *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985))); *see United States v. Leary*, 846 F.2d 592, 609 (10th Cir. 1988) ("[W]e are not expecting the [executing agents] to anticipate legal determinations or resolve ambiguities in the law."). "[B]ecause a reasonable jurist has more legal training than a reasonably well-trained officer, what would be reasonable for a well-trained officer is

15

not necessarily the same as what would be reasonable for a jurist." *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). Thus, objective reasonableness sometimes turns on the clarity of existing law. *See United States v. Barajas*, 710 F.3d 1102, 1111 (10th Cir. 2013) (holding that the *Leon* exception applied in part because the law was "very much unsettled").

For purposes of our discussion, we assume (without deciding) that the extraction of data from a user's computer in another district would violate the Federal Magistrates Act and the Federal Rules of Criminal Procedure. But if a violation took place, it has escaped the notice of eight federal judges who have held that the same warrant complied with federal law and the federal rules even though data was being extracted from computers outside the Eastern District of Virginia.[5] *See United States v.*

---

[5]     *See United States v. Jones*, ___ F. Supp. 3d ___, 2017 WL 511883, at *4 (S.D. Ohio Feb. 2, 2017) (holding that issuance of the same warrant was authorized by Rule 41(b)(4)); *United States v. Austin*, ___F. Supp. 3d ___, 2017 WL 496374, at *4 (M.D. Tenn. Feb. 2, 2017) (same); *United States v. Sullivan*, ___ F. Supp. 3d ___, 2017 WL 201332, at *6 (N.D. Ohio Jan. 18, 2017) (same); *United States v. Bee*, No. 16-00002-01-CR-W-GAF, 2017 WL 424905, at *4 (W.D. Mo. Jan. 13, 2017) (unpublished) (report and recommendation by magistrate judge, concluding that issuance of the same warrant was authorized by Rule 41(b)(4)), *adopted* 2017 WL 424889 (W.D. Mo. Jan. 31, 2017) (unpublished); *United States v. Lough*, 221 F. Supp. 3d 770, 777 (N.D. W. Va. 2016) (holding that issuance of the same warrant was authorized by Rule 41(b)(4)); *United States v. Smith*, No. 15-CR-00467, slip op. at 14-15 (S.D. Tex. Sept. 28, 2016) (unpublished) (same);

*Falso*, 544 F.3d 110, 128-29 (2d Cir. 2008) (stating that a split among panel members shows that reasonable minds could differ, indicating satisfaction of the *Leon* exception).

These eight federal judges would have been mistaken if the warrant here were invalid. But executing agents could reasonably have made the same mistake and reasonably relied on the magistrate judge's decision to issue the warrant. *See United States v. Gonzales*, 399 F.3d 1225, 1228-29 (10th Cir. 2005) ("[O]fficers are generally not required to second-guess the magistrate's decision in granting a warrant.").[6] Thus, the district court erred in granting the motion to suppress.

Reversed with instructions to deny the motion to suppress.

---

*United States v. Jean*, 207 F. Supp. 3d 920, 942-43 (W.D. Ark. 2016) (same).

[6]    The government also argues that the affiant could reasonably rely on prior warrants authorizing the same investigative method. We need not consider this argument.

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

July 21, 2017

Chris Wolpert
Chief Deputy Clerk

Mr. Robert Mark Russel
Mr. David A. Tonini
Mr. Robert Campbell Troyer
Office of the United States Attorney
District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

Mr. John Patrick Taddei
United States Department of Justice
Criminal Division, Appellate Section
950 Pennsylvania Avenue, NW
Washington, DC 20530

RE:     **16-1401, United States v. Workman**
        Dist/Ag docket: 1:15-CR-00397-RBJ-1

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:     Andrew Gellis Crocker
        Matthew C. Golla
        Mark Thomas Rumold
        O. Dean Sanderford

EAS/sds